FILED by **VT** D.C.
ELECTRONIC

**JULY 15, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT IN
AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: CIV

## 08-61109-Zloch-Snow

PETER LETTERESE, Individually and
CREATIVE DESPERATION, INC., (CDI)
A Florida corporation f/k/a PETER
LETTERESE & ASSOCIATES, INC., (PL&A)

      Plaintiffs,

vs.

THE CHURCH OF SCIENTOLOGY INTERNATIONAL, INC. (CSI),
SCIENTOLOGY OFFICE OF SPECIAL AFFAIRS INTERNATIONAL,
3200 DOE SCIENTOLOGY COPYRIGHT CASE DEFENDANTS, TOM CRUISE
SIMEON DANIEL BRIER, ROBERT BRUCE AMIDON, JOHN ARRASTIA,
EDWARDS ANGELL PALMER & DODGE LLP, SCOTT BRODY,
DAVID CORNELL, DANIEL D. DASHMAN, LISA DASHMAN,
WILLIAM HART, MIKE ELLIS, HOWARD FARRAN, ANNE MARIE
GRIFFIN, STEVEN SAMILOW, WILLIAM RICHARD HOWARD,
EUGENE M. INGRAM, SCOTT INKS, HELENA KEMPNER KOBRIN, MOXON &
KOBRIN, DAVID LUBOW a/k/a DAVID LEBEAU,
EUGENE INGRAM, MICHAEL MAROON, IAN MCSHANE, THOMAS MEEKS,
DAVID MISCAVAGE, MICHAEL NACHWALTER, MICHAEL MIDDLETON,
KENDRICK LICHTY MOXON, AVA PAQUETTE, DOUGLAS NESS, FLORA NESS,
CRAIG J. RYAN, MARC SCHWARTZ, NORMAN F. TAYLOR,
ANTOINETTE THEODOSSAKOS, GARY WOODFIELD, BRIDGE
PUBLICATIONS, MARILYN PISANI, CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC., CHURCH OF SCIENTOLOGY
INTERNATIONAL, INC., CHURCH OF SCIENTOLOGY, MISSION OF FORT
LAUDERDALE, INC., CHURCH OF SCIENTOLOGY OF FLORIDA,
INC., CHURCH OF SPIRITUAL TECHNOLOGY, INC., DENTALTOWN.COM LLC,
ECONOMIC RESEARCH GROUP FLORIDA, ECONOMIC RESEARCH GROUP
INC. NY, STEVEN SAMILOW, DAVID SCHINDLER, JIM SCHULTZ, GARY SOTER,
AMERICAN ARBITRATION ASSOCIATION, INSTANT DATA RESEARCH, INC.,
SCIENTOLOGY MISSIONS INTERNATIONAL, INC., WORLD INSTITUTE OF
SCIENTOLOGY ENTERPRISES INC., GOOGLE, PROSKAUER ROSE, YAHOO,
ZUCKERMAN SPAEDER, LATHAM & WATKINS, LLP

      Defendants.

_____/

Dockets.Justia.com

# COMPLAINT

COMES NOW the Plaintiffs by and through their undersigned attorneys and sues the Defendants, THE CHURCH OF SCIENTOLOGY INTERNATIONAL, INC. (CSI), THE SCIENTOLOGY OFFICE OF SPECIAL AFFAIRS INTERNATIONAL, 3200 DOE SCIENTOLOGY COPYRIGHT CASE DEFENDANTS, TOM CRUISE, ROBERT BRUCE AMIDON, JOHN ARRASTIA, SIMEON DANIEL BRIER, EDWARD ANGELL PALMER & DODGE, LLC., SCOTT BRODY, DAVID CORNELL, DANIEL D. DASHMAN, WILLIAM HART, MIKE ELLIS, HOWARD FARRAN, ANNE MARIE GRIFFIN, STEVEN SAMILOW, WILLIAM RICHARD HOWARD, EUGENE M. INGRAM, SCOTT INKS, HELENA KEMPNER KOBRIN, MOXON & KOBRIN, DAVID LUBOW a/k/a DAVID LEBEAU, EUGENE INGRAM, MICHAEL MAROON, IAN MCSHANE, THOMAS MEEKS, DAVID MISCAVAGE, MICHAEL NACHWALTER, MICHAEL MIDDLETON, KENDRICK LICHTY MOXON, DOUGLAS NESS, FLORA NESS, AVA PAQUETTE, CRAIG J. RYAN, MARC SCHWARTZ, NORMAN F. TAYLOR, ANTOINETTE THEODOSSAKOS, GARY WOODFIELD, BRIDGE PUBLICATIONS, MARILYN PISANI, CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, CHURCH OF SCIENTOLOGY INTERNATIONAL INC., CHURCH OF SCIENTOLOGY, MISSION OF FORT LAUDERDALE, INC., CHURCH OF SCIENTOLOGY OF FLORIDA, INC., CHURCH OF SPIRITUAL TECHNOLOGY, INC., DENTALTOWN.COM LLC., ECONOMIC RESEARCH GROUP INC. NY, ECONOMIC RESEARCH GROUP FLORIDA, STEVEN SAMILOW, DAVID SCHINDLER, JIM SCHULTZ, GARY SOTER, AMERICAN ARBITRATION ASSOCIATION, INSTANT DATA RESEARCH, INC., SCIENTOLOGY MISSIONS INTERNATIONAL, INC., WORLD INSTITUTE OF SCIENTOLOGY ENTERPRISES, INC., , GOOGLE, PROSKAUER ROSE, YAHOO, ZUCKERMAN SPAEDER, LATHAM & WATKINS, LLP and states as follows:

2

# STATEMENT OF JURISDICTION

1.  This Court has subject matter jurisdiction over this matter pursuant to 28 USC 1331 Federal Question of the Federal Rico Act and pendant jurisdiction over the state common law and state statutory claims.

# STATEMENT OF THE FACTS

2. This is a lawsuit for $250 million in damages against the Defendant Scientology-inclusive corporations, which make up The International Scientology Crime Syndicate ("Syndicate")[1] and against its named Defendant co-conspirators. Specific corporations within Scientology are named in this complaint, along with not-formally-*within*-Scientology, yet their co-conspirators. The *purported, apparent* international activity of the Scientology *religious* corporations is the exchange of religious services and materials distributed to the public worldwide, in return for "donations". **This Complaint alleges, among other things that behind that surface exterior lies a true Criminal Syndicate, which acted specifically as described herein, against the Plaintiffs.**

---

[1] Note: As reported widely in the international press, the country of <u>Belgium</u> is currently in the process of indicting Scientology and its "churches" as *a network of criminal organizations* and the country of <u>Germany</u> is seeking to exile Scientology and its "churches" as an *unconstitutional network of organizations* (because of their criminal activities). Their actions as detailed here represent a distinct series of criminal activities. Various specific corporations within Scientology are named along with "outside-Scientology" co-conspirators. The apparent activity of these Scientology "church" corporations is the exchange of religious services and materials distributed to the public worldwide in return for "donations". **This Complaint alleges that behind this exterior lies a criminal syndicate, which acted specifically as described against the Plaintiffs.**

3

# PART I - PLAINTIFFS ARE SUING UNDER RICO

3. Upon information and belief, the Defendant Syndicate is run formally (albeit through many intermediary organizations) by Defendant David Miscavige and is fronted for formally (including formal domestic and international lobbying activities) by the American actor and producer, Defendant Tom Cruise who is not only a spokesperson, but is a participating member of the Syndicate.

4.     The Defendant Syndicate and this particular group of co-conspirators (upon information and belief, one of dozens in existence at any given time around the world opposing whoever may "believed" to be The Syndicate's fancied enemies), came together in 1994 for specific motives viz., to perpetrate what eventually developed into a 10-phase, 14-year-long conspiracy which remains ongoing to this date, in violation of the Federal RICO statutes. Its intent was to achieve three (3) main aims which extended one from another "telescopically", covered in Part II below.

5. One ***initial*** purpose of the conspiracy by Defendant Syndicate was to illegally maintain, as well as illegally seize additional, intellectual property rights, (without proper licensing rights, ownership of or compensation to the rightful  owners and their agents) intellectual property rights attached to a specific book on sales. The book, originally named *Effective Sales Closing Techniques,* written in 1971 by non-Scientologist, South Carolinian author Leslie Achilles Dane, (now deceased in 1990), upon which Defendant Syndicate came to deeply depend from 1971 to the present, aimed at the following critical objectives, for Defendant Syndicate:

4

A) FUND-RAISE BILLIONS OF DOLLARS IN "DONATIONS", DOMESTICALLY AND INTERNATIONALLY (I.E., SELL "SCIENTOLOGY" *SERVICES* AND *PRODUCTS*);

B) RECRUIT LARGE NUMBERS OF STAFF PERSONNEL DOMESTICALLY AND INTERNATIONALLY

C) EXECUTE WIDESPREAD PROPAGANDA CAMPAIGNS DOMESTICALLY AND INTERNATIONALLY, RESULTING IN BILLIONS OF DOLLARS IN "DONATIONS". (I.E., SALES OF "SCIENTOLOGY" *SERVICES* AND *PRODUCTS*);

6. To further continue their unfettered, illegal use of the Dane intellectual property rights, the Defendant Syndicate embarked upon a 10-phase, coordinated campaign, enlisting the named co-conspirators, to destroy a small business, both its economic viability and its reputation viz., the Plaintiffs, located in Broward County, Florida,

5

# PART II - DEFENDANTS FELT OBLIGED TO ACT ILLEGALLY OVER AND OVER

7. The Defendant Syndicate's motivation in perpetrating the conspiracy was <u>at first, simply to avoid paying fair royalties to the Estate of author,</u> Leslie Achilles Dane (deceased in 1990).

8. As of March 1994 the Plaintiffs contracted with the Dane Estate to exclusively represent the Estate of Leslie Achilles Dane through his surviving spouse Lois (Betty) Dane..

9. The Plaintiffs repeatedly signaled to the Defendant Syndicate by their actions that

(a) they were not able to be bought off by the Syndicate's efforts to make them betray their fiduciary duty to their client, the Dane Estate;

(b) the Plaintiffs were not able to be easily sued into non-existence (The Defendant Syndicate's ultimate, current and continuing goal regarding the Plaintiffs); and

(c) the Plaintiffs were not able to be frightened and/or easily made willing to simply give up trying to operate their own business enterprise unrelated to any (ill)legitimate business interests of the Defendant Syndicate, which business-operation attempts were made however, all but impossible by the activities recounted in this Complaint.

10. All of the aforementioned conspiracy occurred IN THE FACE OF THE LARGEST SINGLE COVERT DEFAMATION PLOT POSSIBLY IN THE HISTORY OF THE INTERNET and continues presently as, perpetrated by Defendant Syndicate. To further these ends, the International Scientology Crime Syndicate Conspiracy escalated into ultimately nine

6

(9) additional operational tentacles (phases), making ten (10) in all, as diagrammed on page 32 of this complaint.

## PART III - THE PLAINTIFFS IDENTIFY THESE DEFENDANTS AS *CO-CONSPIRATORS*

11. As the Complaint will specify, the Defendant individual and group conspiracy members who have committed and continue to commit the various tortious acts against Plaintiffs are connected .

12. Attached to this complaint as composite Exhibit A. is a Forensic Probability Analysis and was completed by a professional Forensic Statistician.. In the tradition of how now-scientifically-accepted DNA analysis is employed to establish either paternity or culpability for a crime, a Forensic Probability Analysis calculates the probability[2] that each occurrence in a series of proven-factual events are likely to be independent of those previous and following.

13. This Forensic Probability Analysis calculation can be made for any number of sequenced events, whether 2 events in a sequence or 102 events; since **the math involved takes into account the probability of each new event added to the sequence**. By calculating how "independent" events-in-a-sequence "probably" *are*, one simultaneously and automatically calculates the converse: *how likely it is that sequential events are NOT independent of one another.*

14. This mathematical method of calculating progressive probabilities is well-established *and over 250 years old and is thus scientifically and universally accepted scientific principle.* When applied to the events detailed in this complaint, an independent Forensic Statistician

---

[2] "**probability**" is defined as: *the "probability of throwing a single fair die [singular of dice-* small cubes of plastic, ivory, bone, or wood, marked on each side with one to six spots, usually used in pairs in games of chance or in gambling.*] and landing a "3" = 1 in 6 = 1/6 = 16.67%)*

7

(Exhibit A) determined that the chance that the Defendant Syndicate , their co-conspirator individuals and groups acted independent of one another against the Plaintiffs, was computed, clearly and stunningly as …

## *"LESS THAN ONE IN ONE TRILLION"!*

## PART IV - THE CONSPIRACY GREW LARGER & MORE ELABORATE … WHY

15. Commencing in 1994 and through the present, Plaintiffs continued to demonstrate their persistence at representing the interests of the Dane Estate, via ensuing litigation brought by the Plaintiffs against Defendant Syndicate in three separate lawsuits – all in defense of the rights of the Dane Estate.

16. Collectively, as time went on, the Plaintiffs' suits threatened to expose not only (a) the Defendant's tortious actions in derogation of rights and interests of the Dane agents and Estate, but also (b) to expose the Defendant Syndicate's disingenuous and fraudulently-represented international *corporate structure*, and also (c) threatened to expose Defendant Syndicate's decades-long, direct and indirect, deliberate efforts *to corrupt courts and courtrooms from California to Florida*, at both State and Federal level (via the efforts of, but not limited to a network of corrupted lawyers and operatives such as black-bag-action "specialist", Defendant "Private Investigator" Eugene Ingram, [*a disgraced and dismissed, former LAPD officer who once operated a brothel), who upon information and belief, may still have an outstanding warrant out in Florida against him*]. )

17. Defendant Ingram has been used for decades (before these matters, unbeknownst to Plaintiffs), by Defendant International Scientology Crime Syndicate to conceive and carry out

8

"black bag campaigns" against government officials and fancied enemies along with opposing litigants of Defendant Syndicate, including mayors [in one case, creating a false "car accident" to attempt to disgrace a mayor of Clearwater, FL (1975-76) where Defendant Syndicate was experiencing resistance to locating its international "retreat" ] quite in addition to its efforts to attempt to intimidate and harass judges[3], opposing counsel[4] and opposing litigants (the Internet is rife with annotated court documents and references too numerous to even footnote here) as well as any high-profile and occasionally even low-profile once-they-have-exited, former members).

18. In the instant matter, the Defendant Syndicate *has ploughed in excess of $1 million* (the amount which they have admitted to spending alleged documentation of which has been submitted by them to the Federal Copyright Court and which is likely to be about 1/3 of what they have actually expended) *into strategies and tactics mounted* for the purpose of extinguishing the Plaintiffs (economically and if necessary, factually), but the Defendant Syndicate has to-date failed to erase the Plaintiffs. Documentation of these submitted dollar amounts are in the possession of the Plaintiffs.

---

3 In its second litigation-in-self-defense brought by Plaintiffs against the Syndicate, a California State judge, Jeffrey Wiatt in 2004, then on the bench in Valencia, CA, committed suicide close to the time he was adjudicating a case between the Plaintiffs and the Syndicate. At one point, Plaintiffs petitioned Judge Wiatt to consider creating a "Defendant class" in a Declaratory Judgment action concerning a contract between Plaintiffs and the Syndicate. Soon thereafter, Wiatt committed suicide. Upon Plaintiffs' later formal, professional investigation into the circumstances surrounding Wiatt's death, professional investigators found no law enforcement officials willing to discuss the case or any part of their investigative "leads" or options, whether followed up and not followed up. Wiatt's reported reason for taking his own life was the alleged "imminent exposure" of *his alleged pedophilia*. Yet, upon his suicide, and at no time discoverable then or since have any victims whatsoever been identified or come forward. Typically, victims in such cases would sue to recover damages, but upon information and belief, nothing of this kind was or has ever been attempted with respect to Wiatt or Wiatt's estate, etc. In an earlier case, a Federal Magistrate, one Judge Kolts in South California Federal District Court, cited The International Scientology Crime Syndicate as egregiously obstructive of justice and as *using the court system instead for its own vengeful purposes*, even as he awarded over $2 million in attorneys fees to counsel opposing the Syndicate. Documentation of these events is in the possession of Plaintiffs.

4 In this case, at one point, several of the operative defendants named above, contacted one of Plaintiff's counsel's spouses, falsely alleging to her that *"a homosexual relationship"* existed between the two in an effort to induce that spouse to pressure her attorney-husband to cease representation of the Plaintiffs "accordingly. Documentation of these events is in the possession of Plaintiffs.

# PART V - THE INITIAL CIRCUMSTANCES CONNECTING THE PARTIES

19. Dane's sales training book (originally named *Effective Sales Closing Techniques* written in 1971) took on within Scientology, after 1971, *dogma-like status* throughout the expanding Defendant International Scientology Crime Syndicate.

20. A world away from author Les Dane's almost pastoral existence, the Defendant International Scientology Crime Syndicate's founder, Lafayette Ronald Hubbard, a/k/a Ron Hubbard upon information and belief, was better than 21 years deep into disseminating worldwide a type of (organizational as well as individual) *mind control* over the Syndicate's increasing membership[5], dating back to 1950 when he first became widely known for his alleged

---

[5] The vast, vast majority of non-official, "Scientology members" remain continually unaware of The International Scientology **Crime Syndicate's** existence and egregious actions which deservedly label it a crime syndicate; and this majority of parishioners remains (and is kept by the Syndicate's leaders) unaware of and segregated from the official Syndicate Intelligentsia's decision-making and operational loop (as was LETTERESE before the events which have transpired within this case).

Otherwise law-abiding and normal American (and other countries' ) citizens instead unwittingly fund and underwrite criminal activities, even as they believe(d) the Syndicate's alleged identity to be the advertised one: an at-first-fledgling and eventually-embattled new "religion" (begun in 1954); an alleged new "church", singled out by the US Dept of Justice, the CIA and the IRS for unconstitutional and prejudicial treatment, including but not limited to infiltration by government agents to effect anti-Scientology "stings"; e.g., alleged prejudicial treatment by the IRS. The attributed motives for this allegedly prejudicial treatment was stated to be because this *church's* "technology" [sic] held the key to exposing and reversing government/CIA secret "mind control" projects. Hubbard claimed to have allegedly *discovered* CIA mind control experiments permeating into U.S. society everywhere, at the hands of "an army of compliant psychiatrists". These, he asserted were directly and indirectly (allegedly) recruited by the CIA to oversee and covertly dominate the lives of Americans through mind control of Congress, etc.

This "technology" as researched by Scientology's "Source" was *advanced as the only antidote to the "government plot"* and relied for its alleged credibility upon the fact that Hubbard wrote in excess of "25 million words", *a much-promoted figure of allegedly one-of-a-kind, breakthrough research [sic]* into the "human mind and spirit" which Defendant Syndicate has later oft referred to, for legal convenience, as "its beliefs", as in "Tom Cruise's beliefs" (on Oprah, etc.) – when in fact Defendant Syndicate merely posits "beliefs" which are in fact ALWAYS offered to members, both new and existing, not as any matter of "faith" or "beliefs", but instead as a matter of "reasoned 'scientific' [allegedly test-able] research" (to wit, *technology* or *"the tech"*), mounted and deployed in a manner indicated as not merely parallel to accepted science but indeed, "superior to the scientific method". One name for this kind of duplicity in the world of

10

"research", up to and through the early 1960's when he first began referring to himself in Syndicate documents as *"Source"*, Hubbard's thereafter official, self-assigned "ecclesiastical " moniker. Dane's and the Syndicate's "worlds" came together when ...

21. Hubbard decided, in 1971 to Anoint Dane's book[6] as the *"Sales and Cash Flow Bible"* of the Defendant International Scientology crime syndicate. That event, 37 years ago, set in motion all of the subsequent events which are the subject matter of this complaint.

# PART VI - THE NATURE OF THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE

22. As self-proclaimed *"Source"*, Hubbard's de facto authoritarian authority within the Defendant Syndicate was couched in an ingeniously promoted-as-virtually-infallible, impenetrable and unassailable dogmatic "sheath": the inviolable and unchallengeable always-promoted, repeated and viciously defended credibility of Hubbard's so-called "research".

23. In short, if Hubbard claimed to have researched *a tenet*, any member was expected to follow *that tenet* and trust *that tenet* and apply *that tenet* – upon pain, ultimately, of ex-communication. Excommunication and/or "formal disconnection from the group" became a member's fate if any number of myriad Scientology "procedures" couldn't recover or reclaim or rehabilitate a straying member's lack of acceptance of these *"researched" tenets*; or if that acceptance failed to form in the first place or, if once formed, it later began to dissipate or

---

political science and international affairs is *"double-tracking"*. **The International Scientology Crime Syndicate serially and obsessively "double-tracks" with respect to its members on the one hand and the outside world on the other hand!** Documentation of these factual elements is in the possession of Plaintiffs.

[6] Neither in 1971 nor at any time thereafter was Les Dane a member of The "Church" of Scientology.

disappear – then a member was ultimately pointed toward and eventually escorted through the membership "exit" door.

24. The Defendant International Scientology Crime Syndicate is relevant to this case because once the Dane book was ordered by Ron Hubbard into the syndicate's "management dogma" in 1971 the Dane book became subsumed into Defendant syndicate "dogma".

25. After Dane's passing, the Dane Estate and its agents, the Plaintiffs, refused to buckle under to Hubbard's followers' ongoing hijacking of the Estate's intellectual property, Defendant Syndicate framed its Machiavellian plans for the Plaintiffs as a "fight to the death", using every trick, illicit asset, illicit resource and trap from their half-century-old bag of "operations" regarding judicial interference and "dirty tricks" playbook, and through its stable of operatives.

## PART VII - THE SYNDICATE'S "S.O.P." OF DECEPTION & FAMILY DISRUPTION

26. In this case, the Defendants and their co-conspirators will, from the moment this complaint is filed, seek to assert complete reversals of obvious and documented fact so as to misdirect this court and ultimately the jury away from a clear perception and comprehension of their cast-in-institutionalized-dogmatic-*stone* criminal acts.

27. A typical and excellent example, one of numerous, planned and repeated false public utterances, and by no means isolated, occurred very recently on the morning of May 8, 2008 at approximately 8:40am eastern daylight time when a designated agent and spokesman for Defendant Scientology, Tommy Davis was being interviewed by CNN. Asked about the much publicly criticized Syndicate "policy" of disconnection, Davis said REPEATEDLY and EMPHATICALLY that "no such [disconnection] policy existed". Exhibit B (attached below)

12

plainly and uncontradicted-elsewhere-in-that-or-any-other-Syndicate-document information contravenes that public statement on CNN. One finds the very extant, bona fide Scientology "scripture" concerning both the "tenet" and "policy" of disconnection in its very title [one of multiple such "bulletins", many of them listed on the scripture's title page] including an instructional recipe for when, how and why to "disconnect" while a Scientologist. This is, within Defendant Syndicate punctuated by the admonition that if one won't "disconnect" when one should, one will sooner or later be "disconnected from".

28. Not just by coincidence, in the instant matter, "disconnection" plays an enormous role. Specifically, in 2000, when word came to the plaintiffs (This message turned out to be one of the seminal acts in the Defendants conspiracy,) that the "Church" of Scientology wanted to discuss with the Plaintiffs "acquiring rights to the Dane book" (the catalyzing event of the main tactical acts of the conspiracy).[7]

29. Since Plaintiff LETTERESE was, as of 6 years earlier, a "disconnected-from" ex-member of Defendant "Church" of Scientology, the offer from Defendant Syndicate for Plaintiff Letterese to obtain "easier and expedited" re-entry into the "group" was dangled before him, as will be borne out in evidence submitted in this case, in a blatant but unsuccessful attempt to induce him to act in derogation of the best interests of his clients, the Dane Estate – if Plaintiffs would just give Defendant Syndicate "a good deal (derogative to the Estate's and its agents' interests) on" the rights to "THE BOOK".

---

[7] Plaintiffs could not speak directly to the Syndicate's inquiring Office of Special Affairs representatives but had to speak via a Defendant Syndicate attorney Defendant Moxon and Kobrin, _because_ Plaintiffs **had been literally, and officially in writing** [as well distributed to all of Plaintiffs' business connections in and out of Syndicate membership] **"disconnected from 6 years earlier"** by Defendant Syndicate and all of its members.

13 of 262

# PART VIII - THE SYNDICATE'S DOGMA DEMANDS THAT ITS REPRESENTATIVES "INSTITUTIONALLY" DISSEMBLE AND DECEIVE ...

30.     Defendant Syndicate lies whenever it is expedient to avoid scrutiny – unswervingly and often; and in doing so, entirely relies on the perceived-to-be short attention span of both the media and the courts regarding the Defendant Syndicate's assorted, intentionally contradictory and false, yet seemingly "passionate" assertions – each of which is DESIGNED TO DENY ANY OPPONENT DUE PROCESS when in litigation, by seducing courts to eliminate or ignore and/or misinterpret factual evidence of Defendant Syndicate's obvious, intentional, endless and egregious acts.

31.     Hence, The International Scientology Crime Syndicate gets the public opinion advantage of the "very public embarrassment and defamation" which they level against any and every opponent, though most often covertly, through intermediaries (e.g. the co-conspirators in this case) as well as when brought before judicial authorities – which from the start discredits individuals and groups who bring clear evidence of incontrovertible fact and has upon information and belief, produced uneven, biased and contrary-to-law "results" before State and Federal courts for the Plaintiffs and ultimately the Dane Estate.

14

32.       In the International Scientology Crime Syndicate's founder's own words ...
          which is precisely what has and continues to occur by Defendants against
          Plaintiffs:

*"The purpose of the [law]suit is to harass and discourage rather than to win.
The law can be used very easily to harass, and enough harassment on somebody
who is simply on the thin edge anyway, well knowing that he is not authorized, will
generally be sufficient to cause his professional decease. If possible, of course,
ruin him utterly.*

— L. Ron Hubbard
*A Manual on the Dissemination of Material*
*1955*

15 of 262

# PRELIMINARY ULTIMATE FACTS[8]

### 33. Plaintiff, PETER LETTERESE (LETTERESE) is sui juris and a resident of Broward County, Florida.

34.     Plaintiff, CREATIVE DESPERATION, INC. (CDI) f/k/a PETER LETTERESE & ASSOCIATES (PL&A) was and is a Florida corporation transacting business in Broward County, Florida (and throughout the United States) and which is presently a Debtor in Possession operating under the authority and control of the United States Bankruptcy Court due to the actions of the Defendants.

35.     In approximately 1973, Plaintiff LETTERESE joined the Church Of Scientology in Washington, DC, overseen by Defendant CHURCH OF SCIENTOLOGY INTERNATIONAL, INC. a California corporation (CSI) as a member

36      Through Defendant LETTERESE'S new-parishioner affiliation with Scientology in Washington, DC in 1973,, LETTERESE learned of a book entitled Big League Sales Closing Techniques a/k/a Sure Fire Sales Closing Techniques (BLS and/or "THE BOOK") originally written in 1971 by Les Dane and published by Parker Publishing under the title of Effective Sales Closing Techniques.

---

[8] NOTE: ALL OF THE ACTIONS INCLUDED IN THE CONSPIRACY DESCRIBED IN THESE PRELIMINARY ULTIMATE FACTS, REVOLVE AROUND A MARKETPLACE PHENOMENON KNOWN AS "**MOBBING**". IT HAS BEEN RESEARCHED FOR OVER 20 YEARS AND IS FORMALLY DESCRIBED IN A 1999 TREATISE ENTITLED SIMPLY, "**MOBBING",** AUTHORED BY NOA DAVENPORT, PhD. ... SO AS TO PLACE THE ULTIMATE FACTS BELOW IN CONTEXT, THE APPLIED DEFINITION OF "**MOBBING"** FROM DR. DAVENPORT'S TREATISE FOLLOWS: *"... a malicious attempt to force a person out of the [marketplace] through unjustified accusations, humiliation, general harassment, emotional abuse, and/or terror. ... a ganging up by an organization[s] ... who rallies others into systematic and frequent, 'mob-like' behavior ... it can be said that the target, seemingly helpless against the powerful and the many, is indeed 'mobbed'. The result is always injury [economic, reputational], physical or mental distress or illness and social [marketplace] misery, and most often expulsion from the marketplace."*

16 of 262

37. In approximately 1994, LETTERESE ultimately entered into a license arrangement for the exclusive rights to "THE BOOK" as agent for Les Dane Estate from Lois (Betty) Dane the lawful owner.

38. Plaintiffs have continuously seen to the payment of royalties for its use to the Dane Estate from 1994 to the present.

39 Subsequent to Plaintiffs acquisition of the exclusive rights to "THE BOOK", Defendant Syndicate tried to acquire unspecified rights to "THE BOOK" and sought to interfere with Plaintiff Letterese's rights to THE BOOK

40. THE DEFENDANT INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE has utilized "THE BOOK" since 1971 in many forums in the United States and throughout the world for approximately thirty two hundred (3200) or more (now possibly closer to 7500 organizations Defendant Syndicate currently alleges exist), separately incorporated churches, missions and other organizations all within the "Church" of Scientology Group of Organizations each of whom are ultimately controlled by Defendant Syndicate.

41. The economic and personal attack actions detailed in this Complaint worked to deconstruct and cripple the income and cash flow of Plaintiff PLA from a $2 million per year and growing company in the late 90's and early 00's,

42. Further Plaintiff PLA, using its breakthrough protocols for ethical and persuasion-free selling [unrelated to Scientology/Defendant Syndicate dogma] was on track to license its sales techniques to major corporations for ultimately hundreds of millions of dollars realizable.

43. Further, as a byproduct of its activities and in keeping with certain portions of the Dane contract, to its client, the Dane Estate would have benefited from the sales, licensure, et al

17

denied by Syndicate and co-conspirators' actions, because Plaintiff PLA would have received royalties to which the Dane Estate was entitled to a contractually based percentage.

44. Presently, instead Plaintiff PLA is in bankruptcy, due to the actions as set forth below by Defendants.

45. Presently Plaintiffs jointly and severally are each disfigured in their individual and collective public image to a mere shadow of a company so severely it that could no longer operate viably under its own name or the name of its founder, Plaintiff Peter Letterese[9]).

46. Nevertheless, Defendants actions have failed neither to destroy the contract between the Plaintiffs and the Dane Estate nor to gain any control or ownership over THE BOOK.

47. When Defendants have failed over and over to control THE BOOK, , THE Defendants INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and all of the numerous internal and external group(s) of co-conspirators listed in this complaint were repeatedly, sequentially and at times simultaneously recruited and deployed by and controlled ultimately, upon information and belief, including at the top, Defendants Tom Cruise and David Miscavage.

48. Some were recruited and deployed directly and others through "cutouts"[10] into participating in no fewer than ten (10) separate, economic-reputation-personal attack

---

[9] The International Scientology Crime Syndicate's widespread and far-flung conspiracy of defamation, etc. against Plaintiffs. and individuals close to them, detailed in this complaint, was extensive and pervasive, among other places, **within the Dental Office Practice Management industry** in which Plaintiffs had successfully operated between 1992 and 2004. The conspiracy destroyed the income stream of a $2 million per year business, a portion of which was income based upon its Dane contract. In support of that fact is this fact: *Reputation Defender*, one of a new crop of Internet companies specifically formed to offer the possibility of reversing Internet defamation and reputation-destruction for individuals and corporate clients, estimated in a written quote submitted to Plaintiff Letterese in early 2008 that whereas a typical, one-time fee of $10,000 would ordinarily pay for their *elite* Internet-Cleanup service (the normal one being in the mere hundreds of dollars), they would be forced to quote Plaintiffs, without any guarantee, a fee *starting* at **$100,000 per year for an unable-to-be estimated, multi-year effort** to *try* to reverse the defamatory debris against Plaintiffs left by The International Scientology Crime Syndicate's conspiracy. Documentation of these events is in the possession of Plaintiffs.

campaigns[11] to try to do everything imaginable and unimaginable to destroy Plaintiffs reputation

and economic survival once and for all, so as to inherit the rights to the Les Dane "BOOK"[12] and

---

[10] Def. **cutout ...** *slang.* **a trusted intermediary between two espionage agents or agencies.** *[Random House Unabridged Dictionary]* ... [For example, Defendants Bonsett & Howard were unlikely to have known that Thomas Griffin's "client" was The International Scientology Crime Syndicate.] Similar to Watergate, where operatives reporting through *cutouts*, to ultimately no less than the U.S. Attorney General, John Mitchell (ultimately jailed over Watergate) and Secretary of Commerce Maurice Stans, were probably unknown "by name" per se, to either Mitchell or Stans on the day of the break-in,

[11] The nature of the attack campaign events listed herein, was in fact a cohesive, de facto and 100% intentional conspiracy to destroy the Plaintiffs. Drawing upon his probable access to the protocols of Naval Intelligence when in the Navy, Hubbard, in the late 1960's-early1970's invented and formed a well-evolved international system of counter-action against any and all real or imagined Defendant Syndicate "enemies" (first headquartered in England but later, when its name changed, it was and has been run from Los Angeles and Hemet, California). The organizational hub for this counter-action protocol was made famous in the late 70's during the U.S. Government's case against what was originally called, the Scientology's *Guardian's Office.* This Scientology Guardian's Office operatives list included Defendant Attorney Kendrick Moxon, Scientology's Lead Counsel for over 15 years to the present, its apparent *"Conspiracy Quarterback"* in the instant matter (thus a Defendant here) and a former un-indicted co-conspirator in the U.S. Government case against *Mrs.* Hubbard which resulted in her going to jail. This Guardian's Office was allegedly disbanded in the early 80's after the U.S. Government successfully prosecuted Hubbard's wife and half a dozen Scientology "guardians" for infiltrating U.S. government offices trying to acquire files related to the Syndicate. This Guardian's Office, instead of disappearing (just as the successor *"Russian Security Ministry"* survived the "demise" of the Soviet KGB), a successor to the Syndicate's Office also survived under the new name of CSI's International "Office of Special Affairs". Its continuing mission was and is to intensify and refine the standard policy and protocol of black bag tricks and operations against any and all presumed enemies. Given this history, and upon information and belief, this Office of Special Affairs was the tactical arm, which ordered, coordinated and deployed the various economic, reputation and personal attacks listed within this Complaint. Documentation of these events is in the possession of Plaintiffs.

[12] "Scientology (religious) dogma" and its income imperatives came together over a single, seemingly innocuous book about (mostly retail) *sales closing techniques.* "THE BOOK" was written by non-Defendant-Syndicate-connected author, Leslie Achilles Dane in 1971. "THE Book's use was *"spiritually" & financially mandated* by Hubbard in almost annually published or re-published *"organizational technical bulletins"* and *"policy letters"* [sic] beginning in 1971. "THE Book's use was reinforced virtually every single year thereafter by Hubbard in writing. Surrogates within the Defendant Syndicate, until his death in 1986, applied it for use in every nook and cranny of The International Scientology Crime Syndicate Business Superstructure to facilitate the Defendant Syndicate's so often touted *"taking of the planet".* "THE BOOK", under Hubbard's mandate became a kind of talisman, (token, charm, amulet, a "management obsession"). It was and continues to be used in no fewer than 26 separate mandatory organizational training courses for staff and a comparable amount for non-staff "parishioners"; a binding financial "glue" used to guarantee the Scientology "mission to take over the world" – all attributed to A SIMPLE, UNAFFECTED BOOK BY AVERAGE-AMERICAN, NON-SCIENTOLOGIST, LES Dane's "BOOK" ENTITLED *BIG LEAGUE SALES-CLOSING TECHNIQUES.* "THE BOOK". It became so important to the Scientology conspirators and co-conspirators listed, that by 2006-2007, they had (claimed in court papers to have) spent in excess of $1.3 million (the amount they have admitted; the true figure is probably triple that) to wrest this book from the hands of the Plaintiffs and had yet continually failed. Control of the rights to "THE BOOK" by the Plaintiffs, once acquired in 1994, was intolerable to The International Scientology Crime Syndicate. With each failure to destroy the Plaintiffs came a new

19

rob both the Plaintiffs and by contract, the Dane Estate of the rightful income stream that would come from the payment of royalties.

The use of the "book", mandated by Hubbard, was, upon information and belief deemed so critical to the cohesiveness of the group, the preservation of its own cash flow and staff recruitment and Hollywood-celebrity-convert quotas, that it was compelled by its own history and spiritual rhetoric to do anything and everything, legal or otherwise, to preserve the pristine adherence to its by-then-dead founder's inviolable mandates.

49. Defendant Bridge Publications, Inc. a California corporation (Bridge and/or BPIC) is the publishing arm of Defendant Syndicate in the United States.

50.     Subsequent to Plaintiff LETTERESE'S acquisition of the exclusive rights to "THE BOOK", Defendant Bridge allegedly (but actually via one or more operatives working for The International Scientology Crime Syndicate) secretly from Plaintiffs approached Les Dane's widow and other Dane family members to try to obtain for Defendant Syndicate rights in "THE BOOK" in derogation of the Dane family's exclusive license with Plaintiff,.

51. At the same time (2000-2003) that Defendants CSI and Bridge were trying to secretly negotiate with Lois (Betty) Dane the owner of THE BOOK, Defendants CSI and Bridge were pretending to be engaged in negotiations with Plaintiffs that would have resulted, if carried out in good faith, in the payment of fair royalties Plaintiffs with a concomitant amount to the Dane Estate.

52.     As part of the conspiracy to interfere with contractual rights of PL&A in or about 2000 THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE through an attorney from New York (Defendants, Daniel Dashman and William Hart of Proskauer Rose) as the agent

---

and more intensified (if necessarily better-masked) conspiracy campaign phase. Until the actions depicted on the chart on page 32 following became an accurate, operational reality.

20

of Defendant THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE contacted the Dane Family lawyers and offered to break up the contract between Plaintiffs and the Dane Family.

53.    In 2003, the Plaintiffs brought a suit[13] against Defendant Bridge for interference with their contractual relations with the Dane family members, among other things in California. That suit was dismissed without prejudice as the parties entered into an (STANDSTILL AGREEMENT") to negotiate (at Defendant Syndicate's urgent request, so as to avoid a summary judgment on Feb 13, 2004) for one year beginning February 27, 2004, which prohibited public comment about Plaintiffs Letterese, PL&A and all associated people and businesses. Defendant CSI however, refused to have anyone other than their counsel David Schindler, esq., sign the agreement or confirm the agreement and fraudulently asserted that it was binding on all "Scientology-connected" entities Defendant Does 1-700 in that lawsuit.

54..    Plaintiff PL&A filed a declaratory judgment action (2004 California) for a court determination as to whether or not the STANDSTILL AGREEMENT was binding and on whom, when repeated attempts to secure all of Defendant Syndicate and Defendants 1-700 written joinder failed. Prior to, at the inception of and during the pendency of the suit (in egregious breach of the very agreement they would spend 4 years asserting Plaintiff *PLA* had allegedly breached), Defendants Syndicate  and other defendants including but not limited to the Defendants, Moon and Koran and its principals Kendrick Moon and Helena Koran (Defendants agents  attorneys) took repeated actions as part of an ongoing conspiracy to defame the Plaintiffs

---

[13] The lawsuit was filed only after three months of almost daily but futile Plaintiff-attempted *negotiations* in which Defendant Syndicate's front law firm of Moxon & Kobrin pretended to be "just about to agree in writing" 8 or 9 times, but ultimately failed to agree to a permanent stipulation stating that they would leave the Dane family members alone and stop harassing them (a request to Plaintiffs from the Danes via Lois Dane Richter, the Dane Estate Administrator.

21

outside of the Court setting, and to interfere with and destroy Plaintiff PL&A contracts and business relations and prospective business advantage, to breach the February 27, 2004 agreement, so as to advance the various businesses[14] of all of the co-conspirators, such as the businesses of Defendant set forth below and to unjustly enrich THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE including Defendant Bridge by attempting to obtain the rights to the "THE BOOK" book by literally bankrupting PL&A and/or PETER LETTERESE and/or by other means.

55. On September 9, 2004 (the day after PL&A filed ultimately its copyright case against Defendants CSI and the other Syndicate copyright infringement Defendants) and continuing to this day Defendant, Craig Ryan, a covert agent for THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE posted a defamatory and false alert on DentalTown.com (the primary internet site in the dental field where the Plaintiffs have operated dating back to 1989) referred readers to a "dentistry alert" website that "Cartmier" a/k/a Craig Ryan claimed to have "found" (which in fact, he conspired along with other defendants to promote, so as to financially and reputation destroy Plaintiffs). (as set forth in Exhibit) And, as a result of these false, false light and intended-to-destroy-plaintiffs' misrepresentations about the Plaintiffs' operations in the Dental field and the character of its CEO and Founder allegations in

---

[14] The various Defendant Syndicate "churches" in the United States, are upon information and belief, pseudo (and unlicensed) psychological counseling and counselor-training centers, absent individuals anywhere on staff with psychology degrees, let alone advanced degrees in counseling, etc. The named organizations of Defendants includes the names of key Defendant Syndicate "churches"/businesses. Additionally, despite Defendant Syndicate's acquisition of "religious" status compliments of an IRS Tax Exemption granted in 1993, upon information and belief it was obtained by placing the IRS under duress via The International Scientology Crime Syndicate's extant-at-the-time, 200 lawsuits against the IRS, which were "dropped in exchange for" their tax exemption. Upon information and belief, the criminal acts specified in Plaintiffs' Federal RICO claim ABOVE APPLY TO EVERY Scientology-connected organization in the USA who benefited from the acts of supervising "senior" corporations which were and are nevertheless legally separate, which once they are found to have violated the non-profit corporation statute (by virtue of the criminal acts outlined in this complaint, suggests that according to law, their non-profit status, quite in addition to how it may have been obtained, would be null and void.

this internet site Plaintiffs were damaged (as set forth in the very same Exhibit ___ below) at the site of a class sponsored under the trademark name, SAVE! International, which is a d/b/a of PL&A.

56. In the summer of 2004 Defendant THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE through Defendant Syndicate, conspired with and used, private investigators Thomas Griffin (deceased as of Nov 2004), via Ryan Samuel Bonsett (a/k/a Sam Bonsett) and Defendant William Richard Howard (a/k/a Dick Howard) to set up the aforementioned website having, over time multiple Internet domain names, always including the words "Dentistry Alert."

57. Specifically Griffin and his wife, Anne Marie, via his company Defendant Economic Research Group of Fla., associated with Economic Research Group of NY (which upon information and belief, pointedly and specifically sent Thomas Griffin to Florida at the behest of The International Scientology Crime Syndicate for the purpose of *"getting something on Letterese"*, even manufacturing that "something" if need be); hired defendant, Private Investigator Defendant, William Richard Howard to disseminate false and defamatory information about Plaintiffs on this DentistryAlert.org web site so as to pressure negotiations between Plaintiffs and Defendant Syndicate with regard to Scientology's worldwide use of the primary asset of the Les Dane Estate, the Les Dane 1971-authored book, originally *"Effective ..."* (renamed by Parker Publishing, *"Big League ..."* (later renamed again by sequential owner, Simon & Shuster via its Prentice hall subsidiary) *"Sure-Fire" Sales-Closing Techniques*).

58. Defendant Syndicate, upon information and belief, collects in excess of $185 million dollars (US equivalent) annually internationally, the collection of which is heavily facilitated

23

through the use of "The BOOK" and has on an year-by-year expanding basis, continuously, worldwide, dating back to 1971.

59. Defendant Syndicate did the following so as to harm or destroy the Plaintiffs. As part of the conspiracy to defame Plaintiffs, THE DEFENDANT INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE via Defendant CSI and Moxon & Kobrin, and then, through a long time private investigator of Scientology, Defendant Ingram, conspired with and contacted an individual referring to himself under the online name of "Copernicus" (upon information and belief Dentist, Michael Maroon DDS of Connecticut) and others to post anti PL&A and anti Letterese material on the internet and specifically and on DentalTown.com, a popular dentist forum. Some of the postings by Copernicus referred to Letterese as a "scumbag". In addition, on information and belief THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE VIA CSI conspired with "Cartmier" a/k/a Cartmier@aol.com a/k/a "John Mier" real name Defendant Craig Ryan.

60. The Defendants named below are either members of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE via Defendant CSI and other Defendants, and/or employees, agents, or members of other related entities.

61. All defendants named below, upon information and belief, were acting pursuant to instructions issued by THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE via Defendants CSI et al, or on behalf of it, by agents directly and indirectly, and engaged in activities detailed below with the intent of economically destroying Plaintiffs in order to obtain access to and/or control of Plaintiffs exclusive license with the Dane Family.

62. Defendant INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE via Defendants CSI et al, through individuals acting as employees and/or agents of Defendant

24

Syndicate, directly upon information and belief contacted dozens of Plaintiff's clients and former clients and unsolicited, encouraged Plaintiff's former clients to bring lawsuits and derogation of their contracts with Plaintiffs.

63.     Upon information and belief, the objective of Defendant Syndicate was to force Plaintiffs into bankruptcy thereby hoping albeit incorrectly to void Plaintiff's contract with the Dane Estate and thereby allowing Defendant The International Scientology Crime Syndicate either to obtain exclusive rights to Dane's THE BOOK for minimal cost to Les Dane's Estate[15] or to have a clear, unobstructed path to use of THE BOOK,, freed of any demands for royalty payments to Plaintiff PLA or control by Plaintiff PLA, despite collecting over billions of dollars worldwide through its use for sales ("fund-raising"), staff recruitment and detailed, decades-long-in-duration worldwide propaganda campaigns targeted to keep it making money. The "BOOK" is taught "religiously" to all sales personnel, employee recruiters and public relations operatives. It has not been removed from The Syndicate's deeply embedded use. It cannot because of founder-mandated-Dogma, be so eliminated. The International Scientology Crime Syndicate has been mandated to continue the uninterrupted (an upon information and belief, *corrupted*) use of Dane's Book, by Syndicate founder, Ron Hubbard as of 1971 [16]

---

[15] In 2003, Defendant Syndicate, trying to bypass Plaintiffs, offered the Dane Estate a mere $10,000 (which the Estate refused), to end its affiliation with CDI-PLA, with no offer of other monies for royalties. By 2004, CDI-PLA had already paid the Dane Estate nearly $178,000 in royalties, which amounted more than 6 times the amount author Les Dane had ever earned from "THE BOOK" during his lifetime between 1971 ("THE Book's publication date) and his passing in 1990.

[16] The magnitude of the use and value of "THE BOOK" as well as the magnitude of the aggregate unpaid royalties going back 31 years can be represented by giving a simple example of the benefits of Dane's book's utility to the between 3200 and 7500 alleged-by-Defendant Syndicate, "Scientology" outlets in the world if they were to have agreed to pay a modest, going-forward-for-perpetual-use, one-time royalty for an asset (stolen intellectual property) which had been pivotal in producing well in excess of $1 billion in revenue just up to 2004, commencing in 1971: Understanding that CDI-PLA was willing to grant all of "Scientology" (before its criminal nature became apparent), perpetual use of the Dane book, available for translation and printing in any language on earth in perpetuity into the future in exchange for a one-time royalty payment schedule of <u>$5 per organization per day FOR JUST 5 YEARS</u>, the calculation would be as follows: At a mere ...

64.    THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE VIA CSI and its subsidiaries and/or related companies and/or entities conspired directly or indirectly with all of the Defendants listed to set up web sites and/or web entries utilizing multiple domain names including the name, "Dentistry Alert".

## THE PARTIES

65.    Plaintiff Creative Desperation, Inc. is a Florida corporation whose principal place of business is located in Broward County, Florida.

66.    SAVE! International is a fictitious name owned originally by PLA, thus remains owned by Plaintiff PLA.

67    . The Chart immediately below (p. 32 of this Complaint) visually and graphically depicts the ten (10) phases of The International Scientology Crime Syndicate Conspiracy against the Plaintiffs. Those (ten) 10 phases were never meant to go beyond one or two phases, as it was expected that the Plaintiffs would cave in during the earliest phases. Hence, the additional phases were added one or two at a time in a desperate attempt by Defendant Syndicate to "mob" (see definition earlier) the Plaintiffs. These actions are:

A. Counts I-XVI below regarding the actions of DEFENDANTS DANIEL & LISA DASHMAN TO ATTEMPT TO DESTROY THE RELATIONSHIP BETWEEN PLAINTIFFS AND THE DANE ESTATE by several different means in 1997-1999 to the present … for the benefit of The International Scientology Crime Syndicate

B. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS WILLIAM HART & PROSKAUER ROSE LAW FIRM to break up the Dane contract by

$5/day x 365 days x 5 yrs x 3,200 Scientology Organizations = **$29,200,000(US)** or
$5/day x 365 days x 5 yrs x 7,500 Scientology Organizations = **$68,437,500(US)**

26

contacting the Dane family lawyers in 2000 ... for the benefit of The International Scientology Crime Syndicate

C. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS MOXON & KOBRIN to attempt to negotiate "rights" agreement with Plaintiffs that would cheat the Danes out of rightful royalties

D. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS MOXON & KOBRIN, KENDRICK MOXON, HELENA KOBRIN, BRIDGE, GARY SOTER, DAVID SCHINDLER, MARILYN PISANI, AVA PAQUETTE, LATHAM & WATKINS to attempt through a fraudulent and illusory contract and harassing actions thereafter in Court to attempt to acquire "rights" agreement with Plaintiffs that would cheat the Danes out of rightful royalties

E. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS TAYLOR & AMIDON, by bringing a contract-breaching lawsuit in the Baldwin case when an arbitration was the contractual arrangement – all in attempt to break financially Plaintiffs out of business SO AS TO permit Defendant Syndicate to "INHERIT" THE Dane contract and intellectual property rights; both on the Internet and in the places of business of dozens if not hundreds of Plaintiffs' clients

F. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS BALDWIN & AMIDON by bringing a contract-breaching lawsuit in the Baldwin case when an arbitration was the contractual arrangement – all in attempt to break financially Plaintiffs out of business SO AS TO permit Defendant Syndicate to "INHERIT" THE Dane contract and intellectual property rights; both on the Internet and in the places of business of dozens if not hundreds of Plaintiffs' clients

27

G. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS GOOGLE, YAHOO, INGRAM, EDWARDS & ANGELL, BRIER, THEODOSSAKOS, MAROON, SCHULTZ, CORNELL, BOTH NESSES, SCHWARTZ, BRODY, WOODFIELD, LUBOW – all in attempt to defame Plaintiffs out of business SO AS TO permit Defendant Syndicate to "INHERIT" THE Dane contract and intellectual property rights; both on the Internet and in the places of business of dozens if not hundreds of Plaintiffs' clients ... all in attempt to break financially Plaintiffs out of business SO AS TO permit The International Scientology Crime Syndicate "INHERIT" the Dane contract and intellectual property rights

H. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS ECONOMIC RESEARCH GROUPS OF NY AND FLORIDA, THOMAS GRIFFIN, ANNE MARIE GRIFFIN, STEVEN SAMILOW, DICK HOWARD, RYAN BONSETT – to spoliate evidence so as to mask that Defendant Syndicate had specifically hired Thomas Griffin to prey on Plaintiffs' reputation and livelihood; after setting up a website with the single purpose of defaming and tortuously interfering with the business contracts and prospects of the Plaintiffs - all in attempt to break financially Plaintiffs out of business SO AS TO permit The International Scientology Crime Syndicate to "INHERIT" the Dane contract and intellectual property rights

I. Counts I-XVI below regarding the –MOBBING- actions of Defendants Ingram, Lubow, Moxon, Kobrin, Moxon & Kobrin, Amidon, Edwards & Angell ... contacting dozens and dozens of Plaintiffs' clients in an attempt to get them to sue Plaintiffs into non-existence: SO AS TO permit The International Scientology Crime Syndicate to "INHERIT" the Dane contract and intellectual property rights

28

J. Counts I-XVI below regarding the –MOBBING- actions of DEFENDANTS MEEKS, MOXON & KOBRIN, ZUCKERMAN SPAEDER, NACHWALTER, KENNY NACHWALTER LAW FIRM who dedicatedly misled the Federal Court and further attempted to illegally influence the outcome of the Plaintiffs' copyright lawsuit - SO AS TO permit The International Scientology Crime Syndicate to "INHERIT" the Dane contract and intellectual property rights

29



Scientology Conspiracy Web
Starts in Earnest in 1996 ...
David Miscavige & Tom Cruise via Church of Spiritual Technology

**-1-** 1996 - 1999 ... Lisa Dashman - Daniel Dashman // Tries to Get Danes to Cut Us Loose

Via CSI International Justice Chief Mike Ellis

Via Proskauer-Rose Atty William Hart

**-2-** 2000 ... Proskauer-Rose/ Dashman // Tries to Break Up Dane Contract

**-3-** 2000-1 ... Ava Paquette Tries to "Steal" Dane Rights Absent Appropriate Royalties

2000-1 ... Helena Kobrin Tries to "Steal" Dane Rights Absent Appropriate Royalties

2000-1 ... Kendrick Moxon Tries to "Steal" Dane Rights Absent Appropriate Royalties

2000-1 ... Wm Hart of Proskauer-Rose Tries to "Steal" Dane Rights Absent Appropriate Royalties

**-4-**

Via "Law Firm" Moxon & Kobrin

**-5-** 2004 ... Norman Taylor via Baldwin

**-6-** 2004 ... Robert Amidon via Baldwin

Eugene Ingram - Thug - PI

Richard Baldwin

**-7-** 2004 ... Eugene Ingram - Thug PI

Gary Woodfield

Edwards & Angell

Annette Theodosakios

Doug & Flora Ness

Simeon Brier

Howard Farran

Marc Schwartz

Scott Brodу

Richard Clear

Dentaltown

Dozens of Internet Defamatory Postings That End Up on Google & Yahoo

Mike Marson aka "Copernicus" Defames PLA-CDI

Jim Schultz Defames PLA-CDI

Thomas Cornell Defames PLA-CDI

Via "Law Firm" Moxon & Kobrin

**-8-**

**-9-** 2004 - Eugene Ingram - Thug PI

**-10-** 2005 - Thomas Meeks

Via Anderson Sparber

Via "Law Firm" Moxon & Kobrin

Michael Nachwalter of Kenny Nachwalter

Abuse of Process, Witness Tampering & Fraud in Federal Copyright Case

David Lubow - Thug PI

Dozens of PLA-CDI Clients Solicited By Telephone AND IN PERSON to Sue PLA-CDI

68. Defendant Robert Bruce Amidon is a resident of California, and he is licensed by the State of California to practice law. Amidon tried to solicit clients all over the country via the internet defaming the Plaintiffs internationally thereby in the process including in Florida. He has publicly documented connections to The International Scientology Crime Syndicate both in terms of legally representing them in litigation against a former brain-damaged "Church" member who sought a $1.3 million refund from "the Church" and in promoting their detoxification program, minimally in California over a period of many years. Working in concert with Defendant Norman Taylor, publicly-acknowledged-Scientologist-Attorney, Amidon placed widespread Internet defamation of Plaintiffs between the years 2004 to the present under the thinly veiled guide of "seeking information for a case he was bringing. Norman Taylor handed off ... former CDI client, (and solicited-to-sue-CDI-by-The International-Scientology-Crime-Syndicate), Dentist Richard Baldwin ... to Amidon. Baldwin eventually settled out of court. This Defendant is a Co-Conspirator Who has played a part in Phases 5, 6, 8 & 9 of the Conspiracy. (See Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise.

69. Defendant John Arrastia is a resident of Miami-Dade County, Florida and is licensed to practice law in Florida and is an attorney representing the American Arbitration Association. John Arrastia along with the American Arbitration Association, has directly aided and abetted from Dec 2004 through to the present, other Defendants in this Complaint (Edwards & Angell, Simeon Brier, Annette Theodossakos, Gary Woodfield, Douglass Ness, Flora Ness, Marc Schwartz, Scott Brody, and indirectly aided Eugene Ingram, Robert Amidon, Norman Taylor and The International Scientology Crime Syndicate. This Defendant is a Co-Conspirator Who has

31

played a part in Phases 5,6,7 & 9 of the Conspiracy (See Scientology (Defendant Syndicate) Conspiracy Web chart p. 32 above).

70. Defendant Simeon Daniel Brier is a resident of Broward County, Florida. He is licensed as an attorney by the State of Florida, and he works for the law firm Edwards Angell Palmer & Dodge L L P. Brier has, upon information and belief, been a prime sub-architect in more than half the campaigns against the Plaintiffs.

71. Defendant Edwards Angell Palmer & Dodge L L P, is a law firm. Edwards Angell Palmer & Dodge L L P, is a Delaware limited liability partnership, whose principal office is in Boston, Massachusetts, but which conducts business from offices in Broward County, Florida and Palm Beach County, Florida . Attorney Brier is also registered as a partner, member, employee and agent of said law firm.

72. Defendant Scott Brody is a resident of Colorado, a dentist in Colorado, and a former client of CDI.

73. Defendant Daniel D. Dashman is upon information and belief a member of The International Scientology Crime Syndicate as well as an attorney licensed by the State of New York; he resides in Croton-on-Hudson, New York. Mr. Dashman is the Former General Counsel for PLA and thus has conducted business in Florida. Dashman conspired before and after 1999 to attempt to tortiously sever the ties between Plaintiffs and the Dane Estate. In derogation of the Attorney-Client relationship, this Defendant is a Co-Conspirator Who has played a part in Phases 1-4 of the Conspiracy, directly and indirectly (see Scientology Conspiracy Web chart p. 32 above).

74. Defendant David Cornell is a dentist and resident of Toronto, Canada and former client of Plaintiff PLA who wrote defamatory material in the Canadian Dental Journal at exactly

the same time as the Defendant Syndicate attack campaigns described herein. Defendant Cornell knew at all times that his information would be used in Florida and elsewhere

75. Defendant Lisa Dashman is the wife of Daniel D. Dashman, and she is, upon information and belief, a resident of Croton-on-Hudson, New York. She was commissioned by The International Scientology Crime Syndicate took actions in the years 1997-1999 and upon information and belief, continuing through to the present to aid the conspiracy to somehow destroy or worsen the relationship between Lois (Betty) Dane (when alive) and/or the Dane Estate and Plaintiffs in Florida and elsewhere.

76. Defendant Mike Ellis is, upon information and belief a resident of Los Angeles, California and is a member of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE by virtue of his employment by Defendant Scientology.

77. Defendant Howard Farran is a dentist in Arizona, and a resident there. He is also a writer and lecturer on the business of dentistry. He is a competitor of Plaintiff CDI-PLA. He is publisher of DentalTown Magazine, and founder of www.DentalTown.com. This is accessed in Florida or elsewhere. He and his media entities compete with Plaintiff CDI and carried for months defamatory material planted there by Eugene Ingram in concert with Douglas Ness, Flora Ness, Edwards & Angell Law Firm and Annette Theodossakos, He also made defamatory postings on his own website, defaming the Plaintiffs.

78. Defendant Anne Marie Griffin is a resident of Florida, is the widow Thomas Griffin who was the Private Investigator, upon information and belief, brought to Florida after being hired-by-Defendant Syndicate specifically to spy on Plaintiffs as well as to set up an attack defamatory website. She refused to turn over key evidence to Plaintiffs that would have documented in great detail The International Scientology Crime Syndicate's deployment of the

33

10-phase conspiracy via her husband Thomas Griffin, in which, upon information and belief, she

has actively participated through to the present.

79. Defendant William Richard Howard is a resident of Fort Lauderdale, Florida and is

one of two Fort Lauderdale Private Investigators who acted on the orders of now-deceased

Thomas Griffin to create a website in 2004 specifically defaming the Plaintiffs.

80. Defendant Eugene M. Ingram is a private investigator for The International

Scientology Crime Syndicate. Mr. Ingram is a resident of La Crescenta, CA and is, upon

information and belief, both a 3-decade "black bag" operative for Defendant Syndicate as well as

being active for as many as 14 years in an effort to destroy the Plaintiffs reputations and/or

economic destruction by which Defendant Ingram's efforts have been designed to harm Plaintiffs

in Florida..

81. Defendant Scott Inks is a resident of Indiana and co-conspired with Defendant

Defendants CSI et al to mislead the Federal Court in the PLA- Copyright suit against Defendant

Syndicate (now under appeal), by writing a specious "expert report" published both outside of

and within the litigation, falsely dismissing the sales book authored by Les Dane and used by

Defendant Syndicate for 37 straight years.

82. Defendant Helena Kempner Kobrin is an attorney licensed to practice in Florida and

California. She is a resident of California, and she works for the law firm of Moxon & Kobrin

and upon information and belief has been every bit as active and in all the same ways as has

Kendrick Moxon in fronting for The International Scientology Crime Syndicate.

83. Defendant Moxon & Kobrin is a California law firm upon information and belief is

listed as a partnership. However, upon information and belief, this law firm is but a front for The

International Scientology Crime Syndicate and not in any true sense an independent law

partnership. Moxon has a storied history working for The Syndicate's Guardian's Office renamed Office of Special Affairs, and was an un-indicted co-conspirator in a government case in 1977.

84. Defendant David Lubow a/k/a David Lebeau is, upon information and belief, a resident of <u>Colorado</u>, and he is a private investigator hired by Eugene M. Ingram and <u>The International Scientology Crime Syndicate to work to defame and financially ruin Plaintiff PLA in Florida and elsewhere</u>.

85. Defendant Michael Maroon is a resident of Berlin, Connecticut, and he is a dentist. Dr. Maroon <u>worked via</u> dentaltown.com to defame the Plaintiffs under an assumed name and false identity  Defendant Maroon actions were designed to injure Plaintiffs in Florida.

86. Defendant Ian McShane is resident of California, and he is a Senior <u>Syndicate</u> Executive who, upon information and belief, while posing as a *client* of the front Moxon-Kobrin law firm, in fact directly supervised Moxon & Kobrin, as might an employer during the period where they coordinated Defendant Syndicate  efforts to destroy Plaintiffs – including but not limited to the duration of a demanded-by-The-Defendant/Syndicate, Court-ordered Federally supervised mediation, which through its lawyers, Thomas Meeks (then of Zuckerman Spaeder) and Michael Nachwalter (of Kenny Nachwalter), both firms having offices in Miami.

87.    Defendant Thomas Meeks is an attorney residing in Florida, who, has worked for Defendant Zuckerman Spaeder and on behalf of THE DEFENDANT INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and who, along with Michael Nachwalter maneuvered Federal Judge Huck with misinformation and courtroom deceptions, including a subterfuge concerning the Syndicate's specious and spurious claims to "want to mediate the dispute surrounding the 'Feb 2004 settlement agreement', which mediation the Defendant Syndicate

35

begged of the Federal Copyright Court to have conducted IN THE MIDDLE OF AN ENTIRELY SEPARATE AND DISTINCT FEDERAL COPYRIGHT CASE. This begged-for mediation[17] was an utterly planned-in-advance ruse and while it was being conducted[18] (Feb 2005) with Plaintiffs making a good faith appearance and effort, The International Scientology Crime Syndicate used the time bought to exacerbate Phases 5, 6, 7, 8 & 10 of the Conspiracy – by multiplying and intensifying all 3 of the following attack areas: (1) the Internet, (2) in the physical Dental offices of Plaintiffs' clients, UNSOLICITED BY THOSE CLIENTS, trying to induce them to sue Plaintiffs and (3) attacks by-postal/email, equally UNSOLICITED, trying to induce them to sue Plaintiffs ... in these 4 Phases exactly coinciding with the Federally-mandated "mediation". Each Defendant is a Co-Conspirator who has played a part in Phases 5, 6, 7, 8 & 10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise.

88.     Defendant David Miscavage is, upon information and belief, a resident of California and head of Religious Technology Center, the corporately separate but de facto controlling corporation that controls the letting and withholding and withdrawing of the use of the Scientology Trademarks and Copyrights. Despite Defendant Syndicate's linguo-gymnastics to the contrary, absolutely nothing happens or is allowed to be sustained, anywhere in the international scientology crime syndicate unless it has the direct or through-intermediaries' permission of or authorization from Miscavage. Defendant Miscavage is aided and abetted by the actions, on behalf of the Defendant Syndicate, of Defendant Tom Cruise, his right-hand man for Foreign and Domestic Promotion as well as Foreign and Domestic Lobbying. Defendant

---

[17] This Federally mandated mediation was presided over by Court-Appointed Federal Mediator Retired Justice, the Honorable Gerald T. Wetherington.

[18] The pretended mediation took place at the Florida International University Biscayne Campus Convention Center in Miami, FL.

36

Miscavige is a Co-Conspirator Who has played a part, directly or through Defendant Syndicate affiliates or intermediaries, to launch and/or carry out Phases 1-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). Defendant Miscavige is a Member of this Complaint's RICO Alpha Enterprise..

89.    Defendant Tom Cruise is a resident of California and a member of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE who both contributes money and his fame as an actor ultimately used to fund attacks against Plaintiff as well as, upon information and belief, holding a real if possibly masked/hidden management/supervisory position with The International Scientology Crime Syndicate hierarchy, even as he most certainly and openly acts as both a domestic and foreign lobbyist and primary international spokesperson for THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE. Cruise is a well-known American actor and producer and longtime international spokesperson and representative of both The International Scientology Crime Syndicate and David Miscavage, acting as Miscavage's right-hand-man for Foreign and Domestic Promotion as well as Foreign and Domestic Lobbying, the US Government to assist in solving governmental problems Defendant Syndicate is experiencing around the world.)[19] Cruise, upon information and belief, has assisted Defendant Syndicate in acquiring funds (through his PR actions and fame as an actor), his own donations of money, believed to be in the multiple tens of millions of dollars, used in part to fund the attacks listed in this Complaint. Additionally, due to his close personal and organizational relationship with Miscavage, simultaneous with the major efforts and apparent expenditure made by Defendant Syndicate to try to disenfranchise Plaintiffs from their contractual rights, rights to conduct, etc.,

---

[19] Note: As reported widely in the international press, the country of Belgium is currently in the process of indicting Scientology and its "churches" as *a network of criminal organizations* and the country of Germany is seeking to exile Scientology and its "churches" as an *unconstitutional network of organizations* (because of their criminal activities).

37

upon information and belief, Cruise would have known of these attacks, agreed with these attacks, and may even have added his advice as to how to conduct these attacks. In part, this is based upon public utterances he has made concerning his willingness to do anything to protect "the group" (to wit, The International Scientology Crime Syndicate) from anyone "not with us" This Defendant is a Co-Conspirator Who has played a part in Phase(s) 1-10 of the Conspiracy (see Scientology Conspiracy Web chart p.32 above). This Defendant is a Member of this Complaint's RICO Alpha Enterprise. Defendant Cruise's activities were calculated to cause injury in Florida to Plaintiffs ....

90. Defendant Michael Middleton is, upon information and belief, a resident of Virginia and he is a private investigator who works for <u>Defendant Syndicate and attempted in January 2003</u> to cause the Dane Estate Administrator to wit, Lois Richter and her mother to breach the contract with Plaintiffs. Upon information and belief this conduct continues in his activities to damage Plaintiffs. Middleton presented Richter with a prospective contract between Bridge Publications and the Dane Estate in which Bridge conspired with all other defendants to literally guarantee to pay all fees incurred by the Dane Estate if they would breach their agreement with Plaintiff. This Defendant is a Co-Conspirator who has played a part in Phase 2 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Beta Enterprise. Defendant Middleton activities were calculated to cause injury to Plaintiffs in Florida.

91. Defendant Kendrick Lichty Moxon is a resident of California, and he is an attorney licensed to practice in California. He works for Moxon & Kobrin, the law firm that purportedly represents Defendant <u>CSI but who in fact has been the primary coordinator of Defendant Scientology's conspiracy to destroy Plaintiff PLA.</u> This Defendant is a Co-

38

Conspirator who has played a supervisory and controlling part in Phases 3-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise. Plaintiff Moxon has appeared in Florida against Plaintiffs and has subjected himself to the Florida Courts.

92.     Defendant Douglas Ness is a resident of Alaska. He is a dentist and a former client of Plaintiff PLA and has at minimum, upon information and belief, conspired with Defendant Syndicate via Eugene Ingram and Dentaltown Website on the one hand and with the Law Firm of Edwards Angell Palmer & Dodge L P, in Broward County, Florida to defame and destroy Plaintiffs. This Defendant is a Co-Conspirator Who has played a part in Phases 6,7,8 & 9 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Beta Enterprise. Upon information and belief Defendant Douglas Ness has had all of his legal fees paid by Defendant Syndicate so that he can be the front man against Plaintiffs where the avowed goal is to destroy Plaintiffs. Defendant Douglas Ness has filed claims in Florida against Plaintiffs and is subject to Florida jurisdiction.

93.     Defendant Flora Ness is a resident of Alaska. She is the wife of Douglas Ness and has at minimum, upon information and belief, conspired with Defendants Scientology via Defendant Eugene Ingram and Dentaltown Website on the one hand and with the Defendant Law Firm of Edwards Angell Palmer & Dodge L L P, in Broward County, Florida to defame and destroy Plaintiffs. This Defendant is a Co-Conspirator Who has played a part in Phases 6,7,8 & 9 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Beta Enterprise..

94.     Defendant Ava Paquette is an attorney at the law firm of Moxon and Kobrin and resident of California, and in Summer of 2000, attempted in conversations and written

39

correspondence with then Plaintiff -PLA then Attorney, Richard Marcus, to bribe Peter Letterese into "giving Scientology a favorable deal [*even if not necessarily in the bests interests of the Dane Estate*] by offering re-entry into Scientology's good graces in exchange", Paquette's wrongful conduct to destroy Plaintiff continues. This Defendant is a Co-Conspirator Who has played a part in Phases 3-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise. By her participating as a member of Defendant Moxon and Kobrin which firm has appeared in Florida, Paquette is subject to the laws of Florida.

95. Defendant Craig J. Ryan is a resident of California. He is also known as John Mier a/k/a Cartmier. This Defendant is a Co-Conspirator Who has played a part in Phases 4-5-6-7-8 & 9 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Gamma Enterprise.

96. Defendant Marc Schwartz is a resident of California. He is a dentist and a former client of Plaintiff PLA and has at minimum, upon information and belief, conspired with Defendants Scientology via Eugene Ingram and Dentaltown Website on the one hand and with Defendants Law Firm of Edwards Angell Palmer & Dodge L L P,, Brier and their agents in Broward County, Florida to damage Plaintiffs. This Defendant is a Co-Conspirator Who has played a part in Phases 6,7,8 & 9 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Beta Enterprise. Defendant Marc Schwartz has appeared in Florida in arbitrations and filed suit in Florida involving Plaintiffs and thus is subject to the jurisdiction of the Courts in Florida.

97. Defendant Mark Taylor is an attorney licensed in California. He false-reported an alleged but phony infraction of California law by the Plaintiffs to create the appearance of

40

wrongdoing which could be repeated in libelous defamation on Dentaltown the Internet and directly to Plaintiffs' clients by phone and in their offices – to induce them to sue Plaintiffs, all under the orders and operational plans of the <u>Defendant Syndicate personnel mentioned and alluded to in this complaint. This Defendant is a Co-Conspirator Who has played a part in</u> Phases 5, 6, 8 & 9 <u>of the Conspiracy (see Scientology Conspiracy Web chart p.32 above).</u> This Defendant is a Member of this Complaint's RICO Delta Enterprise.

     98.     Defendant Antoinette Theodossakos is a resident of Palm Beach County, Florida. She is licensed by the State of Florida as an attorney and works for Defendant Edwards Angell Palmer & Dodge LLP, in Palm Beach County, Florida. Upon information and belief this defendant conspires currently and since at least 2004, has participated in the Conspiracy in league with THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and is acting as an agent of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE to attempt to destroy Plaintiff. This Defendant is a Co-Conspirator Who has played a part in Phases 6 & 7 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise.

     99.     Defendant Gary A. Woodfield is a resident of Palm Beach County, Florida. He is licensed by the State of Florida as an attorney and works for Defendant Edwards Angell Palmer & Dodge L L P, in Palm Beach County, Florida. Upon information and belief this defendant conspires with THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and is acting as an agent of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE to attempt to destroy Plaintiff. This Defendant is a Co-Conspirator who has played a part in Phases 5, 6, 7 & 8 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise.

41

100.     Defendant Bridge Publications Incorporated is a California corporation for profit. It is the publisher of the works of L. Ron Hubbard, the founder of The International Scientology Crime Syndicate. Via so-called author, Defendant Michael Middleton, Defendant Bridge attempted to undermine and cause the Dane Estate to breach its contract with the Plaintiffs commencing in January 2003 and continues to engage in such conduct and earlier and additionally attempted to defraud. Bridge through its "lawyer", Gary Soter, has also participated continuously with Moxon & Kobrin in working to deny Plaintiffs their due process rights in attempting to defraud the Plaintiffs in connection with a bogus settlement agreement of Feb 2004 referenced elsewhere in this Complaint as well. This Defendant is a Co-Conspirator Who has played a part in Phases 2-3-4-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise. (See this Complaint). This Defendant Bridge has come into Florida against Plaintiff PLA and thus is subject to the Courts of Florida.

101.     Defendant Marilyn Pisani is the President of Bridge and is a resident of Los Angeles, California and is the senior most executive at Defendant Bridge Publications, Inc. Defendant Pisani participated in Bridge's attacks and conspiratorial actions toward Plain tiffs. This Defendant is a Co-Conspirator who has played a part in Phases 2-3-4-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Beta Enterprise.) This Defendant is a Member of this Complaint's RICO Delta Enterprise.

102.     Defendant Church of Scientology Flag Service Organization, Inc., is a California non-profit corporation with its principal address in Pinellas County, Florida. This Defendant is a Co-Conspirator who has played a part in Phases 1-10 of the Conspiracy (see Scientology

Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Alpha, Beta, Gamma & Delta Enterprises.

103. Defendant Church of Scientology International, Inc. , is a California corporation. Who has played a part in Phases 1-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Alpha, Beta, Gamma & Delta Enterprises. This Defendant has participated in the conspiracies against Plaintiffs in Florida and thus is subject to the Courts in Florida..

104. Defendant Church of Scientology, Mission of Fort Lauderdale, Inc., is a Florida non-profit corporation with its principal address in Broward County, Florida. This Defendant has played a part in Phases 1-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Alpha, Beta, Gamma & Delta Enterprises.

105. Defendant Church of Scientology of Florida, Inc., is a Florida non-profit corporation with its principal address in Miami-Dade County, Florida. This Defendant has played a part in Phases 1-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Alpha, Beta, Gamma & Delta Enterprises. .

106. Defendant Church of Spiritual Technology, Inc. , is a California corporation. This Defendant archives the works of L. Ron Hubbard, and it challenges IRS rulings against Scientology, and is upon information and belief, the true repository of the financial wealth of The International Scientology Crime Syndicate. CST, Inc. has played a part in Phases 1-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Alpha and Delta Enterprises. This Defendant through the

43

conspiracies with Defendants has participated in Florida to ruin Plaintiffs and is subject to the laws and Courts in the State of Florida.

107. Defendant Dentaltown.com, LLC, is an Arizona limited liability company, the survivor of a merger with Dentaltown.com, Inc., on February 7, 2008. It is a competitor of the Plaintiffs. This Defendant has stood to gain from the Plaintiffs' economic demise Under the direction of Defendant Howard Farran, did the following so as to harm or destroy the Plaintiffs, including but not limited to ... it published and for months it refused to remove defamatory material placed by its co-conspirators accusing the Plaintiffs of legal violations, moral violations, dishonest trade practices, fraudulent acts, etc. This Defendant is a Co-Conspirator Who has played a part in Phases 5-6-7-8-9 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Gamma Enterprise. This Defendant is a Member of this Complaint's RICO Delta Enterprise. (See this Complaint's ... This Defendant has conducted business in Florida and is thus subject to the Courts and laws of the State of Florida.

108. Defendant Economic Research Group Florida is a corporation organized under the laws of the State of Florida. It is the PI firm of Thomas Griffin (deceased) and Anne Marie Griffin. It set up the attack website Dentistryalert.org which destroyed the cash flow and business reputation of the Plaintiffs. The International Scientology Crime Syndicate, was ERG Florida's primary client. This Defendant is a Co-Conspirator Who has played a part in Phases 5-6-7-8-9-10 of the Conspiracy (see Scientology Conspiracy Web chart p.32 above). This Defendant is a Member of this Complaint's RICO Gamma Enterprise.

109. Defendant Economic Research Group, Inc. NY is a corporation organized under the laws of the State of New York. Sent Thomas Griffin to Florida in 1997, on behalf its client =

44

The International Scientology Crime Syndicate, to spy on and eventually publish destructive and defamatory falsehoods on a special covert website designed by "Assistant" Florida PI's Ryan Bonsett and Defendant Dick Howard, about the Plaintiffs. This Defendant is a Co-Conspirator Who has played a part in Phase(s) 4-5-6-7-8-9 of the Conspiracy (see Scientology Conspiracy Web chart p.32 above). This Defendant is a Member of this Complaint's RICO Gamma Enterprise. This Defendant has conducted business in Florida as part of the conspiracy to ruin Plaintiffs and thus is subject to the laws of the State of Florida.

110.    Defendant Religious Technology Center, Inc., is   California corporation, run by David Miscavage. This Defendant has participated in and benefited from the conspiracy against Plaintiffs and is subject to the laws of the State of Florida through its actions in causing harm to Plaintiffs in Florida.

111.    Defendant David Schindler is an attorney and resident of California in the law firm of Latham & Watkins. Defendant Schindler's actions were part of the conspiracy to defame and conspire against Plaintiffs in Florida and elsewhere. Defendant  This Defendant by his conduct is subject to the laws of Florida as part of the conspiracies against Plaintiffs to ruin Plaintiffs.

112.    Defendant , LATHAM & WATKINS, LLP is a law firm resident in part in Los Angeles, California. This Defendant is controlled by Defendant David Schindler with respect to the conspiracies against Plaintiffs in Florida and is subject to the laws of the Florida.

113.    Defendant Gary Soter is a California attorney representing Bridge Publications and The International Scientology Crime Syndicate Defendant Soter is subject to the laws of Florida by his conduct within the conspiracies against Plaintiffs in Florida.

45

114.    Defendant Michael Nachwalter is a partner in the firm of Kenny Nachwalter in Miami, Florida. Who participated in causing injury to Plaintiffs as part of the conspiracies against Plaintiffs.

115.    Defendant American Arbitration Association is an arbitration entity having its primary place of business in New York, New York with offices in Atlanta, Georgia, and West Palm Beach, Florida Defendant AAA has participated in void arbitrations against Plaintiffs in Florida for which at least one Court has found to be contrary to Florida law. Defendant AAA has participated in the conspiracies against Plaintiffs and caused injury to Plaintiffs.

116.    Defendant Scientology Missions International, Inc., is a California corporation. It is charged with dissemination activities on behalf of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE. Defendant Scientology. This Defendant is subject to the laws and the Courts of Florida by its participation in the conspiracies against Plaintiffs in Florida.

117.    Defendant World Institute of Scientology Enterprises, Inc., is a non-profit California corporation. It is also known by the acronym WISE. It is a division of Defendant Syndicate that teaches the "management" techniques for L. Ron Hubbard to businesses and professionals. Consulting firms licensed under WISE include Sterling Management Consultants for dentists. This Defendant is subject to the laws and the Courts of Florida by participating with the co-Defendants in the conspiracies against Plaintiffs.

118.    Collectively, Defendants are called in this complaint The International Scientology Crime Syndicate & Multiple Co-Conspirators.

46

119.   Defendant Instant Data Research is a corporation having its primary place of business in Florida and is owned by William Richard Howard and participated in the conspiracies against Plaintiffs.

## THE BOOK AND VIOLATIONS BY DEFENDANTS

120.   In 1971, Les Dane published his book tiled Big League Sales.

121.   On or about December 31, 1993, Plaintiffs entered into a contract with Les Dane Family for the rights in "THE BOOK", .

122.   On or about January 15, 1994, the Les Dane Family granted Letterese a Power of Attorney.

123.   On or about March 3, 1994, Scientology New Era wrote to Lois (Betty) Dane claiming that it had "purchased" copyright rights to "THE BOOK".

124.   On or about March 31, 1994, Plaintiffs caused "THE BOOK" to be taken out of print in order to exclude its use by others and to maximize royalty benefits to the Dane Estate. However, in doing so, Plaintiffs did not in any way attempt to restrict Scientology's via Defendant Bridge use of Dane's several books in any way, imagining that at any time in the future when Scientology via Defendant Bridge was ready to re-order, a calm and proper negotiation could ensue at reasonable cost to Scientology and with maximum, legal benefit to the Dane Estate within the then-currently accepted industry norms for the valuation of comparable Intellectual Property.

125.   THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE under the control of Defendant Miscavage   desperately wanted rights to "THE BOOK" or at least copies for worldwide use in its organizations to teach its parishioners how to sell Scientology "religious" services and how to recruit and as a key underpinning to its entire worldwide

47

propaganda campaigns, in which the Dane book was extensively used to "sell the Scientology message".

126. CONSPIRACY PHASE I: (see diagram page 32,) Defendant Daniel Dashman, a Scientologist since 1980 and from 1993-1997 the General Counsel of Plaintiff PLA brought suit against Plaintiff PLA to attempt to bankrupt Plaintiffs, resulting in the hoped-for recovery of rights to "THE BOOK", and also filed suit in Federal court in New York,. Four counterclaim suits brought by Plaintiffs were settled circa April 2000. which resulted that none of the Defendants secured THE BOOK from Plaintiffs

127. Defendant Syndicate induced Lisa Dashman (a former member of Defendant Syndicate's Guardian Office), to be employed by Plaintiff PLA so as to be able to undermine and infiltrate it. Upon information and belief activities of Defendants Dashman are continuing to date.

128. On or about October 15, 1997-98, Lisa Dashman seriously slandered PLA to the Dane Estate and provoked the Les Dane Estate to question whether Plaintiff PLA was properly paying royalties under the agreement between Les Dane Estate and Plaintiff. Upon information and belief activities of Defendants Dashman are continuing to date.

129. On or about November 15, 1999, Plaintiff PLA renewed the copyright in "THE BOOK" so that no one else held any rights in "THE BOOK".

130. On or about May 15, 2000, Daniel Dashman a New York attorney and/or William Hart of Proskauer Rose approached the attorney for the Les Dane Estate, trying to interfere with the contract between Plaintiff PLA and the Les Dane Family.

131.     In May 2000. Defendant Syndicate  contacted Moxon & Kobrin, lawyers,  who were negotiators designated by Scientology Office of Special Affairs to act on its behalf against Plaintiffs

132.     In July 2000, "Scientology" (as then known by Plaintiffs) and Plaintiffs began negotiations for Scientology's use of "THE BOOK", and the negotiations continue into 2001.

133.     On or about April 6, 2001, unexpectedly, an unannounced agent of Defendant Syndicate knocked on Lois (Betty) Dane's (widow of Les Dane) door at home and demanded to discuss Mrs. Dane's contract with Plaintiff PLA   Whereupon, Lois (Betty) Dane refused to listen to or speak with Defendant Syndicate's agent.

134.     Defendant Michael Middleton,  a private investigator licensed in Virginia, hired by Defendant Syndicate and posing as a Bridge "author",  in January 2003, went unannounced to the Charleston, South Carolina psychological counseling office of Lois Dane Richter, Les' and Lois (Betty) Dane's daughter and Administrator of her father's estate.  Without appointment and acting outright to try to bypass and disenfranchise Plaintiffs regarding the attempted abduction of license rights, he demanded to discuss the Plaintiff PLA contract rights with Mrs. Richter.

135.     In January 2004-September 2005, The International Scientology Crime Syndicate approached four Plaintiffs PLA clients to wit, Brody, Schwartz, Ness, and Baldwin as well as Richard Clear who was a vendor of Plaintiff PLA and tried additionally to induce others to sue Plaintiffs claiming that Plaintiffs had breached their contract with its clients and vendors. Although not related to THE BOOK or to the operations of Scientology, the actions were calculated by Defendant Syndicate to bankrupt Plaintiffs.

136.     Beginning January 2004, THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and its agents placed defaming statements about Plaintiffs on the internet.

49

137. Intent upon destroying the reputation of Plaintiffs,, Defendant Syndicate engaged Thomas Griffin at Economic Research Group Florida to place defamatory statements on dentistryalert.org commencing in 2004 and continuing thereafter.

138. In 2004 Defendant Rick Moxon tells Plaintiffs representatives, "We will never pay a dime for the Les Dane materials," as part of an ongoing conspiracy, which continues to this date.

139. The defamatory and misleading statement about Peter Letterese and CDI continued in the internet postings in February 2004 and continues to present.

140. Defendants Simon Brier and Antoinette Theodossakos, attorneys with Defendant Edwards & Angell Law Firm at the request of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and/or its agents have worked with their clients Defendants Ness, Schwartz, Brody and Clear and with the Defendants American Arbitration Association and various arbitrators to pursue bogus claims against Plaintiffs.

141. On or about February 27, 2004, Defendants CSI & Bridge and Plaintiffs, through their attorneys purport to agree[20], that Defendants CSI & Bridge would make no public comment against Plaintiffs and that Defendants CSI & Bridge would not approach the Les Dane Family, to wit, a STANDSTILL AGREEMENT.

142. Yet as this "promise and agreement" was being made, Defendant Syndicate & Co-Conspirators redoubled a MASSIVE DEFAMATION CAMPAIGN across the United States and on the Internet against Plaintiffs.

---

[20] Plaintiffs never authorized their attorney, California Attorney Richard Marcus to sign in lieu of their own signatures; but attorney Marcus was tricked into believing by Defendant David Schindler that "any and all entities connected to Scientology" would be signing the "agreement"; the latter never happened (further details within this Complaint).

50

143.    In April 2004, The International Scientology Crime Syndicate took various actions through Defendants Moxon, Moxon & Kobrin Maroon, Defendant DentalTown, Defendant Farran, Defendant Ryan, to cause the bankruptcy and ruin of Plaintiffs and to secure the rights to "THE BOOK" or at least to able to publish "THE BOOK" in large quantities.

144.    Defendants The International Scientology Crime Syndicate used private investigators Thomas Griffin, Ryan Bonsett, William Richard Howard to set up a website having multiple domain names including the words "Dentistry Alert."

145.    Defendants Thomas Griffin and his company Economic Research Group Florida hired Defendant William Richard Howard and Ryan Bonsett to create the domain names and launch the web site or assist in launching the site.

146.    Through his own efforts assisted by Scientology, Thomas Griffin accumulated about ten years worth of trumped-up, false and alleged *dirt* on Letterese and posted some three hundred pages including private letters from Letterese to the Les Dane Family at DentistryAlert.org web site, which he could have procured nowhere else but from Daniel and Lisa Dashman who, when employed at Plaintiffs had access to such papers..

147.    On information and belief, Defendant Thomas Griffin changed the exact domain name to www.dentistryalert.f2g.net because Ryan Bonsett had used a credit card, which could be traced back to him.

148.    Defendant Robert Amidon, attorney for Richard Baldwin, refused to use mutually agreed upon arbitrators in derogation of Plaintiff's contract with Baldwin and filed a specious suit for damages against Plaintiffs in an attempt to further dilute Plaintiff's funds and engage Plaintiff in additional litigation to distract, damage, and destroy Plaintiff.

51

149. With the intent to bankrupt Plaintiff PLA , Defendant Bridge and THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE, through attorneys, Gary Soter and Kendrick Moxon used the deposition of Plaintiff PLA agent Tom Karas in the California case against Bridge Publications, THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and WISE to inquire into whether Plaintiff PLA was a seller of an assisted marketing plan, which was totally unrelated to the issues in the California case. The purpose was not to seek information on the pending case but to further the conspiracy to ruin Plaintiffs.

150.    On September 8, 2004, Plaintiff PLA was forced to file a copyright suit against various Defendant Syndicate entities and Bridge Publications Incorporated. in Florida.

151.    On September 9, 2004, Scientologist or Defendant Syndicate agent Defendant Craig J. Ryan of a California company Ver Sales, posted under an assumed name on dentaltown.com referring readers to the Dentistry Alert site.

152.    DentalTown is a popular internet forum for dentists.

153.    Based upon the answers in that deposition of Tom Karas, , Defendants Moxon & Soter conspired directly with Defendant Norman Taylor who filed a complaint with the California Attorney General about Plaintiff PLA being a seller assisted marketing plan in an attempt to denigrate the reputation of Plaintiffs PLA..

154.    Specifically, on or about September 10, 2004 Norman F. Taylor, a publicly avowed Scientologist, complained by letter (violating the mail fraud section of the RICOP Federal statute, to the California Attorney General on behalf of Taylor's purported client (Dentist Richard Baldwin) that Plaintiff PLA was violating the Seller Assisted Marketing Plan law even though the law was totally inapplicable. The California Attorney General took no action in response to Taylors Specious complaint.

155. On information and belief, defendants conduct continues to this day to defame and ruin Plaintiffs. Defendant Syndicate defamed Plaintiffs to the New York City School System and the Chicago City School System ultimately causing the systems to stop working with Letterese and SAVE.

156. In September 2004, Defendant Craig J. Ryan, posing as John Mier, a parent of a child enrolled in a SAVE class e-mailed Jean O'Connell at St. Francis Cabrini, a school in San Jose, California, defaming Plaintiff Letterese. In that E-mail, Ryan posing as Mier claimed he had found out horrible truths about Letterese necessitating Mier's removal of his [in fact, non-existent] son from a SAVE class and causing St. Francis Cabrini to sever its relationship with Plaintiff. PLA

157. On information and belief, in November 2004, Defendant Syndicate defamed Plaintiffs to Robert Leonhard, a world-renowned author with whom Plaintiffs enjoyed a business relationship.

158. On information and belief, in November 2004, Defendant Syndicate defamed Plaintiffs to Charles Slepian, a well-known television personality with whom Plaintiffs enjoyed a business relationship, causing the end of the business relationship.

159. On information and belief, in November 2004, Defendant Syndicate defamed Letterese to Tom Gamboa, a well-known major league baseball former first base coach for the Kansas City Royals, who was then the National Spokesperson for SAVE, a self-defense program for young women and girls, and THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE then posted derogatory comments about Gamboa to sabotage Plaintiff PLA and cause Gamboa to sever his relationship with CDI.

53

160.     When Defendant Theodossakos of the Defendant Edwards & Angell Law Firm demanded a refund for Defendant Ness in November of 2004, Plaintiff PLA advised them that arbitration was required, but Defendant Theodossakos at first refused to arbitrate in derogation of Plaintiff CDI's contract with Ness.

161.     Defendants Theodossakos and Simeon Brier brought simultaneous arbitrations against Plaintiffs involving Defendants Ness, Schwartz, Brody and Clear. The true and secret purpose of each claim was to destroy Plaintiffs so that Defendants could gain control of THE BOOK.

162.     The Defendants Edwards & Angell Law Firm, along with DentalTown, other doctors, DentalTown's owners, its sponsors and moderators plan multiple lawsuits to destroy the reputation and finances of Plaintiff PLA in derogation of the GSI Service Contract.

163.     In December 2004, Defendant Eugene Ingram, a private investigator for Defendant Syndicate contacted Copernicus, who is upon information and belief Defendant Michael Maroon, DDS, and others to post anti Plaintiff PLA material on the internet. In some postings, Copernicus called Letterese a scumbag.

164.     On information and belief, Defendant Syndicate continued to conspire with Craig J. Ryan to this date.

165.     As a result on the false and defamatory internet postings, Plaintiff PLA lost both immediate and long-term, potential income. Potential clients who were about to sign agreements with Plaintiff PLA declined to proceed when they saw the postings, amounting at conservative count to $1 million (US) alone. As a result on the false and defamatory internet postings, Plaintiff PLA lost agreements and beneficial business relationships with lenders who could help the existing and potential clients of Plaintiffs.

54

166. In January 2005, attorney Defendant Robert Amidon, who represented a Southern California Area Church of Scientology Mission entity at that time, solicited Richard Baldwin, a former Plaintiff PLA vendor, to sue Plaintiff, falsely asserting that Plaintiff PLA had violated the California Seller Assisted Marketing Law. At Baldwin's request, the suit was later dismissed; but not before Amidon assisted Norman Taylor to commit mail fraud under Federal US RICO by falsely "reporting" this bogus infraction to the California Attorney General. In this capacity, this Defendant played a part in Phases 1-2-4-5-6-7-8-9 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Delta Enterprise. (See this Complaint's

167. Defendant Howard Farran, who owns and/or controls DentalTown.com, conspired with Michael Maroon. DDS, who is or was a moderator or otherwise associated with DentalTown, to conceal the identity of Copernicus, Cartmier and others making defamatory remarks regarding the Plaintiffs. This Defendant is a Co-Conspirator who has played a part in Phases 7-8-9-10 of the Conspiracy (see Scientology Conspiracy Web chart p. 32 above). This Defendant is a Member of this Complaint's RICO Beta & Gamma Enterprises

168. Postings on DentalTown solicited Plaintiff PLA clients for attorneys, including Norman F. Taylor, Robert Amidon, Edwards & Angell Law Firm, Simeon Brier, Annette Antoinette Theodossakos, and Gary Woodfield, to file suit against CDI.

169. In January 2005, The International Scientology Crime Syndicate_ through its investigators Defendants Eugene Ingram and David Lebow, a/k/a David Lebeau and David Lee, telephoned all or virtually all of Plaintiff PLA 's clients and former clients and visited an unknown number of Plaintiff PLA 's clients and former clients.

55

170.    The dentist's clients contacted included Doug Ness, Flora Ness, Marc Schwartz, Scott Brody, Richard Clear, and Richard Baldwin and upon information and belief, dozens and possibly hundreds more. Eugene Ingram and David Lebow urged all of Plaintiff PLA clients and former clients to sue Plaintiff PLA. Defendants would provide the attorneys and financial backing since Defendants interest was to ruin Plaintiffs

171.    Dentist Richard Baldwin was solicited on behalf of Defendant Norman F. Taylor, who handed Dr. Baldwin off to Defendant Robert Amidon when Plaintiffs leaned that Taylor is a Scientologist. In spite of a clear arbitration agreement, Defendant Robert Amidon filed suit against CDI, Letterese and others on behalf of Baldwin.

172.    In July 2005, to create the appearance that Plaintiff PLA 's income was down and that Plaintiff PLA had a poor relationship with the Les Dane Estate, Defendant Syndicate posted out-dated documents on Dentistry Alert and DentalTown.

173.    In September 2005, Defendants Scott Brody and Defendant Marc Schwartz through their attorneys at Defendants Edwards & Angell Law Firm, Theodossakos and Brier, brought law suits against Plaintiffs s to engage arbitration. The true and secret purpose was to further the goals of Defendants to obtain THE BOOK and to ruin Plaintiffs. Upon information and belief the selection of the attorneys and the payment of the sums to the attorneys was orchestrated by Defendant Syndicate.

174.    Throughout the arbitration and litigation process, Defendants Marc Schwarz, Douglas Ness and Scott Brody have worked together through their attorneys Defendants Edwards & Angell Law Firm, Theodossaskos and Brier to conspire with Defendants to ruin Plaintiffs..

175.     Under the guise of looking for witnesses, Robert Amidon posted anti-PDL and anti-CDI materials on DentalTown.com and other internet forums, and he refused to take the materials down.

57 of 262

## COUNT I:    FEDERAL RICO COUNT

Plaintiff's repeat and reallege each and every prior allegation in paragraphs 1-175 as if fully set forth herein and would further allege the following.

176.    This claim seeks relief under 18 U.S.C.A. §1962 (a),(b), and (c).

177.    Plaintiffs are "persons" as contemplated by 18 U.S.C. § 1964(c).

Plaintiffs and the Defendants were and are "persons" as contemplated by 18 U.S.C. § 1961 (3).

178.    The Enterprise consists of several separate and distinct enterprises.

179.    **THE ALPHA ENTERPRISE** consists of Defendants DAVID MISCAVIGE AND TOM CRUISE who direct the overall activities openly or otherwise of all of the following: THE CHURCH OF SCIENTOLOGY INTERNATIONAL (CSI), THE SCIENTOLOGY OFFICE OF SPECIAL AFFAIRS INTERNATIONAL, BRIDGE PUBLICATIONS INT'L, INC., SCIENTOLOGY MISSIONS INTERNATIONAL, INC., WORLD INSTITUTE OF SCIENTOLOGY MISSIONS ENTERPRISES, INC., CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC., CHURCH OF SCIENTOLOGY OF FLORIDA, INC. , CHURCH OF SCIENTOLOGY, MISSION OF FORT LAUDERDALE, INC., CHURCH OF SCIENTOLOGY INTERNATIONAL, INC., CHURCH OF SPIRTUAL TECHNOLOGY, INC., SCIENTOLOGY MISSIONS INTERNATIONAL INC., as well as the remaining members of the "3200 DOES" PLA vs. SCIENTOLOGY COPYRIGHT CASE DEFENDANTS,  for the alleged purpose of conducting a purported, international, para-religious conglomerate of entities operating under the RELIGIOUS TECHNOLOGY CENTER (Command Post for The International Scientology Crime Syndicate) which has caused the above and below individuals and groups to

58

have acted and to continue to act in a criminal fashion, in derogation of all of their obligations under the IRS Code for Non-Profit Organizations.

180. **THE BETA ENTERPRISE** consists of Defendants MIKE ELLIS, MICHAEL MIDDLETON, HOWARD FARRAN, WILLIAM RICHARD HOWARD, ANNEMARIE GRIFFIN, DOUGLAS NESS, FLORA NESS, MARC SCHWARTZ, SCOTT BRODY, EUGENE M. INGRAM, DAVID LUBOW a/k/a DAIVD LEBEAU, DAVID CORNELL, MARILYN PISANI, and LISA DASHMAN as agents and/or Investigators and operating under the CHURCH OF SCIENTOLOGY INTERNATIONAL, INC., for the alleged purpose of procuring and disseminating false and defamatory allegations involving the Plaintiffs. These defendants tortuously interfered with Plaintiffs advantageous contractual relationships with Plaintiffs' clients and caused Plaintiffs to be victimized by multiple frivolous suits. Defendants' objective was to bring about economic ruin to Plaintiffs thereby impairing Plaintiff's ability to protect Plaintiffs exclusive licensing of the Les Dane Book coveted by CSI and the entire International Scientology Crime Syndicate .

59

181. **THE GAMMA ENTERPRISE** consists of DENTALTOWN.COM, LLC., GOOGLE, YAHOO,, ECONOMIC RESEARCH GROUP FLORIDA, ECONOMIC RESEARCH GROUP NEW YORK, INSTANT DATA RESEARCH, INC., MICHAEL MAROON, SCOTT INKS, CRAIG J. RYAN, IAN MCSHANE, DAVID CORNELL, JIM SCHULTZ as additional Defendants who placed and/or allowed defamatory material regarding the Plaintiffs to remain on their websites notwithstanding Plaintiff's advice that the websites were carrying and thereby disseminating false defamatory matters in derogation of Plaintiff's rights.

60

182. **THE DELTA ENTERPRISE** consists of Defendants NORMAN F. TAYLOR, GARY SOTER, ROBERT BRUCE AMIDON, JOHN ARRASTIA, SIMEON DANIEL BRIER, EDWARDS, ANGELL PALMER & DODGE, LLP., DANIEL DASHMAN, HELENA KEMPNER KOBRIN, MOXON & KOBRIN, KENDRICK LICHTY MOXON, AVA PAQUETTE, ANTOINETTE THEODOSSAKOS, GARY WOODFIELD, STEVEN SAMILOW, DAVID SCHINDLER, THOMAS MEEKS, ZUCKERMAN SPAEDER LAW FIRM, KENNY NACHWALTER LAW FIRM, MICHAEL NACHWALTER, WILLIAM HART,AMERICAN ARBITRATION ASSOCIATION, PROSKAUER ROSE LAW FIRM, LATHAM & WATKINS, LLP are attorneys and/or law firms through their various entities have either defamed prosecuted meritless claims and/or deliberately obscured facts as well manipulated court proceedings so as to deny the Plaintiffs due process or to expose it to unnecessary legal expense and/or public ridicule outside of the Court system and upon an abuse of process within the Court system

183. Each of the above Enterprises is an ongoing organization.

61

184.   Each of the Defendants participates in the Enterprise as designated above and is a part of it; however, the Defendants also have an existence separate and distinct from the Enterprise.

185.   The Defendants maintain an interest in and control of their designated Enterprise and also conduct or participate in conducting the specific Enterprise's affairs through a pattern of racketeering activity as alleged herein.

186.   The Defendants' control and participation in the Enterprise is both vital and necessary for the successful operation of the Defendant's scheme.

187.   The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants have and continue to engage.

188.   With respect to the activities alleged herein, each of the Defendants acted at all times with malice toward the Plaintiffs, intent to engage in the conduct complained of for the benefit of the Defendants and with knowledge that such conduct was illegal or unlawful. Such conduct was done with actionable wantonness and reckless disregard for the rights of Plaintiffs, as well as the laws to which the Defendants are subject, the same amounting to actionable wantonness.

189.   With respect to the activities alleged herein, each Defendant in committing those activities within the meaning of 18 U.S.C. § 2, was seeking to aid and abet and adding and abetting a transaction to violate 18 U.S.C. § 1962 (a), (b), and (c).

190.   Each Defendant also agreed to the operation of the transaction or artifice to deprive Plaintiffs of property interests. In furtherance of these agreements, each Defendant also agreed to interfere with, obstruct, delay or affect interstate commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants are not entitled.

191.    With respect to the overt acts and activities alleged herein, each Defendant

conspired with the others to violate 18 U.S.C. § 1962 (a), (b), and (c), all in violation of 18

U.S.C. § 1962 (d). Each Defendant also agreed and conspired with each other Defendant to

participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce

by attempting to obtain and/or actually obtaining property interests to which the Defendants are

not entitled.

192.    The numerous predicate acts of mail and wire fraud, extortion, and other acts

described herein are part of separate fraudulent transactions by the Defendants designed to

defraud the Plaintiffs of money and property interests under false pretenses. As victims of these

unlawful patterns of illegal activity, Plaintiffs have suffered and continue to suffer losses as a

result of these activities.

193.    In carrying out the overt facts and fraudulent transaction described above, the

Defendants engaged in, inter alia, conduct in violation of federal laws, including mail fraud, wire

fraud, bribery, and prosecution of frivolous and/or meritless claims against Plaintiffs as well as

defaming Plaintiff's. All of Defendants actions were designed to bring Plaintiff's to bankruptcy

thereby creating an opportunity for the Defendant's to destroy Plaintiff's advantageous

relationship with the Dane Estate and Plaintiff's exclusive license agreement to utilize the works

of Les Dane. Defendant's intent was to procure said works for defendants own benefit and

destroying Plaintiff's in the process. Defendants acts were violations of Title 18 U.S.C. § 201

(relating to bribery) Section 659 relating to theft from interstate shipment, Section 1344 (relating

to financial institution fraud), Section 1503 (relating to obstruction of justice), Section 1513

relating to tampering with a witness, Section 1513 relating to retaliation against a witness,

Section 1951 relating to interference with commerce, Section 1952 relating to racketeering,

63

Section 1957 relating to engaging in monetary transactions and property derived from specified unlawful activity.

194.    For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false pretenses, representations or promises, the Defendants, violation of 18 U.S.C. § 1341, placed in post offices and/or authorized repositories for mail matter and things to be sent or delivered by the Postal Service and received matter and things therefrom including but not limited to contracts, instructions, correspondence and others.

195.    For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false, pretenses, representations or promises, the Defendants in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things there from including but not limited to contracts, instructions, correspondence, funds, and others.

196.    In those matters and things sent or delivered by the Postal Service, by wire and through other interstate electronic media, the Defendants falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiffs as described above, in violation o 18 U.S.C. § 1341 and 1343, including but not limited to the following: a fraudulent report sent to the California Attorney General by  Norman Taylor and promulgated by the Defendants as  co-conspirators in conspiracy phases 5-6-7-8 (See Chart p. 28)

197.    The Defendants intentionally and knowingly made these material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs, for the purpose of deceiving them and thereby obtaining financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiffs justifiably relied on the misrepresentations and omissions in carrying out the transactions).

64

198. Plaintiffs have therefore been injured in their business or property by the Defendants' overt acts and racketeering activities.

199. As set forth more specifically herein, the Defendants have engaged in a "pattern of racketeering activity," as defined in 18 U.S.C.. § 1961 (5), by committing and/or conspiring to or aiding and abetting a transaction for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiffs.

200. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described herein, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "patter of racketeering activity," as defined in 18 U.S.C § 1961 (5).

201. Plaintiffs have therefore been injured in their business or property as a result of Defendants' overt acts and racketeering activities as described above and throughout this Complaint.

202. 18 U.S.C. § 1962 (a) provides that, "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

65 of 262

203. The Defendants' acts alleged herein amount to an overt and fraudulent transaction to acquire an interest in, or the establish or operation of, an Enterprises which is engaged in interstate commerce, using or investing, directly or indirectly, part of the income, or the proceeds or such income, gained from the pattern of racketeering activity alleged herein. The Defendants' acts amount to an overt and fraudulent scheme to deprive Plaintiffs of business or property rights, including money and other property to which Plaintiffs are entitled, which Defendants have used to acquire an interest in and/or to establish the enterprise.

204. 18 U.S.C. § 1962 (b) provides, "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in control or any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Alpha Enterprise Beta Enterprise and/or Gamma Enterprise and/or Delta Enterprise.

205. The Defendants through a pattern of racketeering activity or through collection of an unlawful debt acquired or maintained, directly or indirectly, an interest in or control of Enterprise and/or Alpha Enterprise and/or Beta Enterprise and/or Gamma Enterprise and/or the Delta Enterprise activities of which affect, interstate or foreign commerce by proceeding to attempt collection based upon fraudulent representations and a fraudulently obtained Judgments in the State of California and Florida.

206. 18 U.S.C.A § 1962 (c) provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

66

207. The Defendants employed by or associated with the Enterprise and/or Alpha Enterprise and/or Beta Enterprise, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct or such Enterprise's affairs through a pattern of racketeering activity by soliciting CDI clients and affiliated companies in separate and distinct locations including Colorado, Alaska and California to sue the plaintiffs through the same attorneys in Florida.

208. The Defendants have acted at all times with malice towards Plaintiffs in their efforts to acquire and maintain an interest in one or more Enterprises that affect interstate commerce.

209. In carrying out the overt acts and fraudulent transactions described above, the Defendants have engaged in conduct in violation of federal laws, including inter alia 18 U.S.C. § 1341 and 1343, 18 U.S.C. § 1341 and 1346, 18 U.S.C. § 1343 and 1346, and 18 U.S.C. § 1961 et seq. as set forth more fully above.

210. Therefore, the Defendants have engaged in "racketeering activity," as defined in 18 U.S.C. § 1961 (1)

211. As a proximate result of the Defendants' unlawful patter of illegal conduct as described above, Plaintiffs have been injured in their business or property as described above.

212. Plaintiffs damages include but are not limited to:

        a. Loss of income

        b. Loss of reputation

        c. Loss of ownership of the Les Dane book

        d. Loss of Customers

        e. Loss of business

67 of 262

       f.   Having to file bankruptcy

       g.   Legal expenses and costs

       h.   Other damages and determined through discovery

213.    Plaintiffs have engaged the undersigned attorney and agreed to pay said attorney a reasonable fee. Plaintiffs are entitled to attorney fees under the applicable Rico statutes.

214.    Plaintiffs seek treble damages under the applicable Rico statutes against the Defendants.

WHEREFORE, Plaintiffs jointly and severally demand judgment in favor of Plaintiffs against each Defendant named jointly and severally, for actual damages in an amount to be proven at trial, plus treble damages per Rico Statutes, attorneys' fees per Rico Statutes, pre judgment interest and costs.

# COUNT II: FEDERAL RICO CONSPIRACY

Plaintiffs repeat and reallege all of the allegations, 1-214 as set forth above and further allege the following:

215.    The claim for relief arises under 18 U.S.C. § 1964 (a) and seeks relief from the Defendants' activities herein for violations of 18 U.S.C. § 1962 (d) for their conspiring to violate 18 U.S.C. § 1962 (a), (b), and (c).

216.    18 U.S.C.A § 1962 (d) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (1), (b), or (c) of this section."

217.    The success of Defendants' schemes depends on the Defendants' joining together. Acting jointly, Defendants have and have had greater power, have been able t exert greater influence, have been able to successfully engage in the activities set forth herein, and have and

have had greater ability to conceal their activities. Defendants have violated § 1962 (d) by conspiring to violate 18 U.S.C. § 1962 (b). The object of this conspiracy has been and is attempted defamation as alleged in Count III below and financial ruin upon Plaintiffs

218.    Each of the Defendants have violated § 1962 (d) by conspiring to violate 18 U.S.C § 1962 (a).The object of this conspiracy has been to acquire, maintain, directly and indirectly any interest or control any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce by virtue or Defendant's attempts to destroy Plaintiff's exclusive license agreement with the Dane Estate.

219.    Defendants have also violated § 1962 (d) by conspiring to violate 18 U.S.C. § 1962 (c). The object of this conspiracy has been the defamation of the destruction of Plaintiffs.

220.    The Defendants have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy including systemic fraudulent practices designed to defraud Plaintiffs of money and other property interests.

221.    The nature of the above described acts, material misrepresentations and omissions in furtherance of the conspiracy gives rise to an inference that the Defendants not only agreed to the objective of an 18 U.S.C. § 1962 (d) violation by conspiring to violate 18 U.S.C. § 1962 (a), (b) and (c) but they were aware that there ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

222.    As a direct and proximate result of the Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962 (d) by conspiring to violate 18 U.S.C. § 1962 (a), (b) and (c) Plaintiffs have been and are continuing to  injured in their business or property as set forth more fully above.

69

223. The Defendants have sought to and have engaged in the commission of and continue to commit over acts and the above described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by Defendants from such pattern of racketeering activity.

224. As a proximate result of Defendants' conduct as described above, Plaintiffs have been injured in their business or property including but not limited to:

        a. Loss of income

        b. Loss of reputation

        c. Loss of ownership of the Les Dane book

        d. Loss of Customers

        e. Loss of business

        f. Having to file bankruptcy

        g. Legal expenses and costs

        h. Other damages and determined through discovery

WHEREFORE, Plaintiffs jointly and severally demand judgment in favor of Plaintiffs against each Defendant named jointly and severally, for actual damages in an amount to be proven at trial, treble damages per Rico statutes, attorneys' fees per Rico Statutes, pre judgment interest and costs.

# COUNT III: DEFAMATION

Plaintiffs re-allege the allegations contained in paragraphs 1-175 above as though they are herein set forth.

225. This is a cause of action for defamation of libel per se.

70

226.     Each of the Defendants made false and unprivileged publication[s] by letter, by internet posting and otherwise about Plaintiffs to third parties. Attached hereto To the extent that the Plaintiffs are "private individuals," the Defendant publishers acted negligently. To the extent that the Plaintiffs are public figures, the Defendant publishers acted intentionally and with willful disregard.

227.     These publications exposed Plaintiffs to distrust, hatred, contempt, ridicule or obloquy, which caused Plaintiffs to be avoided.

228.     These publications exposed Plaintiffs to distrust, hatred, contempt, ridicule or obloquy, which tended to injure and did injure Plaintiffs in their occupation, business or employment.

229. To the extent the natural and proximate consequence of these publications necessarily caused injury to Plaintiffs in their respective personal, social, official or business relations of life, wrong and injuries are presumed or implied and such publication is actionable per se.

230.     As a proximate result of Defendants' conduct as described above, Plaintiffs have been injured in their business or property including but not limited to:

  a.  Loss of income

  b.  Loss of reputation

  c.  Loss of ownership of the Les Dane book

  d.  Loss of Customers

  e.  Loss of business

  f.  Having to file bankruptcy

  g.  Legal expenses and costs

71

h.  Other damages and determined through discovery

WHEREFORE, Plaintiffs jointly and severally demand judgment in favor of Plaintiffs against each Defendant named herein jointly and severally, for actual damages in an amount of $250 million(US) to be proven at trial, plus , and costs.


# COUNT IV:  CONSPIRACY TO DEFAME

Plaintiffs reallege the allegations contained in paragraphs 1-175 and 223-230 as though they are herein set forth and would allege.

231. This is a cause of action for conspiracy to defame and libel.

232. The Defendants agreed  to publish and cause to be published false statements about Plaintiffs.   The Defendants  defamed and libeled Plaintiffs. by  stating  and/or inferring that Plaintiff perpetrated  to do an unlawful act or to do a lawful act by unlawful means,

233.   The Defendants committed the  following respective overt acts in pursuance of the conspiracy:

A.      Numerous acts of libel on the internet [See exhibits]

B.      Multiple contacts with clients of Plaintiffs  falsely accusing Plaintiffs of violations of California  Seller Assisted Marketing Plan

234.  As a proximate result of Defendants' conduct as described above, Plaintiffs have been injured in their business or property including but not limited to:

a.  Loss of income

b. Loss of reputation

c. Loss of ownership of the Les Dane book

d.  Loss of Customers

72

e. Loss of business

f. Having to file bankruptcy

g. Legal expenses and costs

h. Other damages and determined through discovery

235.     To the extent that a Defendant   is an agent, officer or employee of a  corporation with whom he or she conspired, the Defendant, agent, officer employee had a personal  stake in the activities that is separate and distinct from the Defendant/corporation's interest.

WHEREFORE Plaintiffs jointly and severally pray for the entry of this Honorable Court for judgment jointly and severally against each Defendant herein and damages in excess of the minimum jurisdictional limits of this Court plus court costs, s and such other and further relief as this Court may deem just and proper.

# COUNT VI:  INDEPENDENT TORT OF CONSPIRACY

Plaintiffs re-alleged their allegations contained in paragraphs 1-235 above as though they are herein set forth.

236.  This is a cause of action for the independent tort of conspiracy.

237.  The Defendants/Scientologists and their business entities act through force of numbers of individuals and entities acting in unison. The  Defendants have established their separate Enterprises as more particularly shown on Page 31 Chart and as alleged in Count I as to each Enterprise.

73

238. The Defendants/Scientologists/conspirators have and exert a peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess.

239. The Defendants/Scientologists harbor a malicious motive to destroy plaintiffs by the use of the Enterprises and by the Defamation set forth above.

240. The Defendants/Scientologists (The International Scientology Crime Syndicate ) wield economic influence over their members and their former members.

241. The Defendants/Scientologists(The International Scientology Crime Syndicate ) keep large war chests to fight those who dare to challenge them, including Plaintiffs and others.

242. The Defendants and each of them conspired together to harm the Plaintiffs by depriving the Plaintiffs of their ability to earn a living by the RICO actions alleged above and the defamations actions alleged above to benefit each other at the expense of the Plaintiffs.

243.    As a proximate result of Defendants' conduct as described above, Plaintiffs have been injured in their business or property including but not limited to:

        a.  Loss of income

        b.  Loss of reputation

        c.  Loss of ownership of the Les Dane book

        d.  Loss of Customers

        e.  Loss of business

        f.  Having to file bankruptcy

        g.  Legal expenses and costs

        h.  Other damages and determined through discovery

74

WHEREFORE Plaintiffs jointly and severally pray for the entry of this Honorable Court for judgment and damages in excess of the minimum jurisdictional limits of this Court against all Defendants named, jointly and severally, plus court costs, and such other and further relief as this Court may deem just and proper.

# COUNT VII:  BREACH OF CONTRACT- NESS, SCHWARTZ AND  BRODY

244.     Plaintiff CDI and Dr. Ness, Schwartz  and Brody each signed consulting contracts in the years 2002, 2003 and 2004 respectively with regard to the improvement of their Dental Offices' operation.

245.     Each Contract required arbitration in a specific way, according to a specific set of constraints aimed at a fair and just resolution of differences that might arise during the term of the Dental Office Consulting services rendered by Plaintiff

246.     Defendants Ness, Schwartz and Brody although from three diverse locations each were represented by Defendants Edwards & Angell Law Firm and specifically Attorneys Woodfield, Theodossakos and Brier, et al

247.     Defendants Ness, Schwartz, Brody, Edwards & Angells are upon information and belief  are paid by Church of Scientology to advance scurrilous and frivolous litigation against Plaintiffs in exchange for benefits promised if these could weaken or destroy Plaintiffs

248.     Defendants Ness, Schwartz  and Brody each unilaterally and against the Contract terms, selected Defendant AAA to arbitrate , which Plaintiff  never contracted to administer any

75

arbitrations and refused to observe clearly stated Florida law for the resolution of any dispute in the naming of arbitrators

249. Judge Patti Henning of the 17th Judicial Circuit Broward County, in issuing a Final Order, held that any arbitration between Plaintiffs and clients under the supervision of AAA was void

250. Hence, Defendants AAA arbitrations are void per Judge Henning ruling.

251. Plaintiff CDI never asserted a counterclaim in the void arbitrations since the AAA Arbitrators never had jurisdiction over Plaintiff CDI.

252. Although Plaintiff Peter Letterese was not party to the contracts, Defendants Ness, Schwartz, Brody through their attorneys Edwards & Angell sought to join Plaintiff Peter Letterse in the arbitration proceedings.

253. Defendant Ness was denied the right to arbitrate with Plaintiff Peter Letterese.

254. Defendant Schwartz was granted the right to arbitrate with Plaintiff Peter Letterese but the AAA Arbitrators in their void arbitration found that there was no agreement to arbitrate. Nevertheless the trial Court awarded a judgment against Plaintiff Peter Letterese upon not only a void arbitration but also upon a non-existent arbitration award.

255. Each of the Defendants Ness, Schwartz and Brody breached their contract with Plaintiff CDI claims by failing to pay all sums due to Plaintiff CDI for the services rendered under the contracts by Plaintiff CDI to each said Defendant.

256. Each of the Defendants Ness, Schwartz and Brody breached the contract with Plaintiff CDI by failing to arbitrate under the contract terms as required under the contract terms with one neutral arbitrators selected by each of the parties and the arbitrators selected to chose a

76

third arbitrator. In the case of Defendant Brody only one arbitrator was chosen by Defendant AAA.

257. Each of the Defendants Ness, Schwartz and Brody breached the contract with Plaintiff CDI by suing Plaintiff Peter Letterese.

258. 258. Each of the Defendants Schwartz and Brody breached their contract with Plaintiff CDI by falsely publishing that they had obtained a valid arbitration award against Plaintiffs.

259. Plaintiff CDI has been damaged by the Defendants Ness, Schwartz and Brody including but not limited to:

      a. loss of income.

      b. Loss of sums due under the contract.

      c. Loss of reputation.

      d. Improper credit reporting

      e. Loss of Customers

      f. Legal expenses and costs

      g. Having to file bankruptcy.

260. Plaintiff Peter Letterese has been damaged by Defendants Ness, Schwartz and Brody by:

      a. loss of income.

      b. Loss of reputation.

      c. Improper credit reporting

      d. Legal expenses and costs

      e. Having to file bankruptcy.

77

WHEREFORE Plaintiffs jointly and severally pray for the entry of this Honorable Court for judgment jointly and severally against each Defendant Ness, Schwartz and Brody for damages in excess of the minimum jurisdictional limits of this Court plus court costs, s and such other and further relief as this Court may deem just and proper.

# COUNT VIII BREACH OF CONTRACT CHURCH OF SCIENTOLOGY AND DOES 1-700

261.     Plaintiff CDI, at all times material hereto have entered into a written settlement contract with Defendant Church of Scientology and all of the Defendant Church's affiliates known as Does 1-700. The purpose of this contract was to 1-year abatement of the claims brought by Plaintiff to negotiate a resolution. A copy of the contract is attached as Plaintiff's Exhibit.

262.     A requirement of the contract was that all defendant's through Scientology had to sign the contract with Plaintiff CDI to be a binding agreement.

263.     Defendant Moxon falsely pretended to have confirmed that all entities of the Defendant Church Scientology were participants in the contract and therefore the contract was binding on all entities of Scientology. By falsely claiming the contract was binding, Defendant Church of Scientology secured the dismissal of the pending case.

264.     Thereafter, Plaintiff CDI filed suit for declaratory relief as to whether the contract from which Defendant Church secured the dismissal of the pending case was in fact a binding contract as to whether all the necessary parties had signed the contract.

78

265. Defendant Moxon claimed to the second Court, contrary to his first position that the agreement was binding, that in fact there was no agreement since not all of the parties signed the contract.

266. If all of the necessary parties never signed the agreement to standstill the litigation, then there can be no contract.

267. Defendant Church and its affiliates obtained the benefit of the contract bargain- a standstill of the litigation, and then repudiated the very contract to which they obtained the benefits. Thus the Defendant Church and its affiliates obtained a benefit sought under this contract without being bound to the contract.

268. Defendant Church and their affiliates repudiation of the very contract terms after receiving the contracted for benefit is a breach of the contract against Plaintiff.

269. Plaintiff has been damaged by the loss of the benefit of the bargain by lost income, lost profits, loss of customers, loss of reputation and legal expenses and costs.

WHEREFORE Plaintiff CDI pray for the entry of this Honorable Court for judgment against Defendant Church of Scientology International and Does 1-700 for damages in excess of the minimum jurisdictional limits of this Court plus court costs, attorney fees and such other and further relief as this Court may deem just and proper.

# COUNT IX: ABUSE OF PROCESS

270. Defendant CSI and Does 1-700 through Defendant Schindler and Moxon and Moxon and Kobrin entered into a settlement agreement in 2004 predicated on Defendant's representation that the settlement agreement bound all entities affiliated with the Defendant

271.     Plaintiff filed an action for declaratory relief seeking clarification seeking participation or all entities of Defendants.

272.     Defendant notwithstanding the fact that not all entities were put in the settlement agreement attempted to use the settlement agreement to obtain a judgment against Plaintiff, which was a fraud upon the court.

273.     Said Defendants have perpetrated this abuse of process in Florida by seeking to pursue collection of this judgment in Florida for which they never registered the judgment in Florida.

274.     The pursuit of legal process to enforce a fraudulent procured judgment is an abuse of process since the proceeding was performed for the ulterior motive of securing a financial advantage and not a proper legal proceeding in the Courts and acted as a fraud upon the Court.

WHEREFORE Plaintiff CDI pray for the entry of this Honorable Court for judgment against Defendant Church of Scientology, Bridge Publications, Kendrick  Moxon, Moxon & Korbin,  Schlindler, jointly and severally for damages in excess of the minimum jurisdictional limits of this Court plus court costs, attorney fees and such other and further relief as this Court may deem just and proper.

# DEMAND FOR JURY TRIAL

On all triable issues above, Plaintiffs demand a jury trial.