**Standard Contract for The Galileo® Advanced Management Mentoring 5-Year Program** ™

_____

_____

# 5.   Payment of the fee shall only be accepted by GSI based upon the mutual understandings that:

1] This contract is the only offer being made by GSI, except as may be noted and mutually initialed by both parties.

2] GSI expects its clients to pay in a timely manner, by bankwire depositable in GSI's bank in Florida or elsewhere designated, on time and exactly as per this Contract.



3] This contract shall be binding upon the parties upon execution.

4] The client is obligated to pay in full immediately upon execution and it shall be a condition precedent to the delivery of all trademarked and copyrighted goods, etc. by GSI to the client.

5] Failure of any party to comply as stated herein will be deemed a material breach of this contract by that party.

# 6.   Governing Law: - This contract shall be governed by Florida law and shall be construed in accordance with Florida law.

Copyright © 2003. Galileo® Systems International.  All Rights Reserved.

Dockets.Justia.com

# 7. Self-Determined Choice To Purchase:

Any new party replacing a party to this agreement, for whatever reason, shall both benefit and be bound by this agreement as though they were the original signatory. All words in the present tense includes the future; the masculine includes the feminine and neuter; the singular number includes the plural and the plural number includes the singular; and the word "person" includes a corporation as well as a natural person.

Dr. Schwartz asserts and warrants by affixing his signature below that:

1] He is entering into this agreement ...

2] with questions asked and answered complete to his satisfaction, regarding the issues involved in enrollment in and acceptance by GSI for the Galileo® Advanced Management Mentoring Program™.

3] And also that he asserts and warrants by affixing his signature below that he is under no duress nor pressure to enroll whatsoever.

4] He further warrants that he fully understands that the benefits of the program are offered in the context of the precise terms of the contract.

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

5] **He is agreeing, by affixing his signature below, to the remedies prescribed within this contract as the sole remedies for the resolution of any and all future disagreements that may arise between the parties.**

6] In view of the fact that the entirety of the negotiations leading to this contract have been conducted by telephone,

* He acknowledges that he has satisfied himself, as a result of his own questions asked re the Galileo® Advanced Management Mentoring Program™ ... and

* as to the desirability of the Galileo® Advanced Management Mentoring Program™ for his use.

In short, Dr. Schwartz makes this agreement on his own self-determination, anticipating the benefits obtainable from the Galileo® Advanced Management Mentoring Program™.

# 8. In Case of a Dispute - Alternative Dispute Provisions:

a. SERVICE OF PROCESS. The parties agree that service of process for any dispute arising under this agreement can be made by any authorized process server in the state where the process is served. Each party waives any objection to jurisdiction over the person being

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

asserted in a court in Broward County, Florida.

   b. ARBITRATION.  If a dispute arises under this contract either party herein agrees, as its single source of dispute resolution, <u>to have the dispute arbitrated</u> under the rules of the American Arbitration Association, except as otherwise provided in this paragraph. Arbitrators will be chosen by mutual agreement between the parties from a mutually agreeable source. Venue for the arbitration shall be in Broward County, Florida but arbitration can be attended by Dr. Schwartz BY PHONE if a dispute resolution becomes necessary, making a physical trip to Florida unnecessary but available if Dr. Schwartz were to feel his best interests served by such.

   Dr. Schwartz acknowledges by his signature below that he recognizes and accepts the purposes for GSI selecting arbitration as the sole and binding dispute resolution option to be:

1) to reduce costs to the client if a dispute cannot be resolved directly with the Galileo® Advanced Management Mentoring Program$^{TM}$;

2) to eliminate the absolute need for the client to retain an attorney to be substantially represented in any dispute resolution process yet making the retaining of one where desired, far less expensive to the client and to the Galileo® Advanced Management Mentoring Program;

Copyright © 2003. Galileo® Systems International.  All Rights Reserved.

3) to speed up justice;

4) to make the contract as a whole perform more smoothly by virtue of taking into account a fair and orderly handling for any poor performance or worst case scenario. The Commercial Arbitration Rules in force at the time arbitration is requested shall govern the proceeding, except as follows:

     i. The arbitrator shall not have the power to change the venue as prescribed in this agreement.

     ii. Each of the parties shall designate an arbitrator who shall be actively practicing his business or profession and shall have a minimum of ten years experience in the business or profession. The two arbitrators thus selected shall select a third arbitrator who shall have the same qualifications. The three arbitrators thus selected shall constitute the panel of arbitrators. A decision in the arbitration shall be by a majority vote of the arbitrators.

     iii. The arbitrators shall follow Florida law in determining the arbitration.

     iv. In the award the arbitrators shall specify the facts as found by them; the grounds for their decision; and their conclusions on the law applicable to the decision.

     v. Except as otherwise provided in this

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

paragraph, Chapter 682 Florida Statutes shall apply to the arbitration.

   vi. Evidence by affidavit shall not be accepted. Chapter 90 Florida Statutes shall apply to the admission and rejection of evidence.

   **If a party attempts to contest, modify or circumvent this paragraph, the other party shall be entitled to attorney fees and all expenses reasonably incurred in enforcing this paragraph. The parties agree that any and all disputes of any kind by and between these parties shall be resolved exclusively by arbitration.  This shall include any contract disputes, tort disputes, or claims of any kind.**

   c. JURY WAIVER.  THE PARTIES TO THIS AGREEMENT WAIVE ANY RIGHT TO A JURY TRIAL THAT EITHER OF THEM MAY HAVE IN ANY ACTION OR PROCEEDING ARISING FROM OR CONNECTED WITH THIS AGREEMENT. This Agreement contains the entire understanding between the parties.

**Copyright © 2003. Galileo® Systems International.  All Rights Reserved.**

# Special Terms:
## Partial List of Dr. Schwartz's Chief Concerns:

Dr. Schwartz has indicated that the following areas of some of the ones that matter most to him with respect to the deliverables he wants from this Agreement. The three key areas of Galileo® Advanced Management-Mentoring Group activity ...

**1. Creating & Maintaining a Maximally Insurance-Independent Dental Practice**
**2. Strategic Performance- Improvement Training™**
**3. Perfect Application of The Technology of Selling®)**

... which cover in fact 23 areas of organizational importance are, per Dr. Schwartz's indicated areas of interest and attention, to be directed on a tailored basis to address and correct (as necessary) the following factors present in his Dental career and practice:

1. **SEAMLESS COORDINATION WITH ANOTHER PRACTICE SYSTEM HE IS DEPLOYING, WITHOUT COMPETITION OR CONFLICT CAUSED BY GSI**
2. **REDUCTION OF ALL DEBT (PRACTICE $700,000; PERSONAL $650,000) TO $ZERO IN 3 YEARS FROM THE DATE OF SIGNING OF THIS CONTRACT**
3. **THE ABILITY, HERETOFORE INADEQUATE TO HIS SATISFACTION, TO REMOVE HIMSELF, IS OFFICE, HIS STAFF AND HIS PATIENTS FROM THE INFLUENCE OF INSURANCE COMPANIES ... ACCOMPLISHED 100%**
4. **THE LOCATION, TRAINING AND GROOMING OF AN OFFICE MANAGER**
5. **CORRECTED, MAXIMIZED AND MAINTAINED-EFFECTIVE DEPLOYMENT AND COMPENSATION FOR PRODUCTION OF DR. SCHWARTZ'S STAFF**
6. **REVITALIZED ENTHUSIASM FOR THE PROFESSION OF DENTISTRY, EXACTLY ACCORDING TO DR. SCHWARTZ'S CLINICAL AND PROFESSIONAL BEST JUDGMENT AND PREFERENCE AS TO HOW THE PRACTICE SHOULD BE CONFIGURED AND CONDUCTED, IN FACT.**
7. **FULL SUPPORT BY GSI STAFF ON A DAILY BASIS**
8. **GROSS INCOME RAISED TO $1.4 MILLION PER YEAR IN LESS** WEEKLY WORK

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

TIME THAN DR. SCHWARTZ CURRENTLY PUTS IN TO ATTAIN HIS CURRENT AVERAGE OF $85,000+ PER MONTH

9. REDUCTION OF PRACTICE ACCOUNTS RECEIVABLES TO $ZERO PERMANENTLY

# Special Terms:
## Money-Back Guarantee:

A money-back guarantee is available to Dr. Schwartz, if Dr. Schwartz purchases the Galileo® Advanced Management Mentoring Program™ on an immediate basis. Standard Program includes 2-4 Days In-Office Initial Training scheduled upon enrollment and additional In-Office visits whenever needed, as scheduled by of the Galileo® Advanced Management Mentoring Program™.

Should Dr. Schwartz be dissatisfied with the Galileo® Advanced Management Mentoring Program™, **HE MAY RECEIVE A FULL REFUND IN CASH** of the Galileo® Advanced Management Mentoring Program™ fee amount paid as follows:

IF HE DOES NOT FEEL HE HAS GAINED SUFFICIENT BENEFIT FROM THE PROGRAM **AT THE END OF TWO YEARS** DURING WHICH HE HAS COMPLIED WITH THE TERMS OF THIS CONTRACT AS STATED HEREIN, HE MAY REQUEST AND WILL RECEIVE A FULL REFUND.

AS USED IN THE PARAGRAPH ABOVE, "COMPLIED WITH THE TERMS OF THIS CONTRACT" SPECIFICALLY MEANS THAT A GOOD FAITH, CONSISTENT EFFORT IS MADE BY THE DOCTOR ... A) TO COMMUNICATE AND COOPERATE(AS NOTED ABOVE) WITH THE GALILEO® ADVANCED MANAGEMENT MENTORING PROGRAM™ WITH THE INTENT TO ... B) LEARN AND APPLY THE MATERIAL OF THE PROGRAM, **FOR A PERIOD OF TWO YEARS**.

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

BY AFFIXING SIGNATURES BELOW, BOTH PARTIES ACKNOWLEDGE
THAT THE ABOVE PARAGRAPH IS ONE OF THE CONCEPTUAL BASES
FOR THE AGREEMENT.

# Fees and Terms:

Payment Schedule: $150,000(US), in advance,
conditional on Dr. Schwartz purchasing The Galileo®
Management Mentoring Program™ on an immediate basis,
less the full purchase price of a separate program
($27,500) plus 10% interest for one year ($2750), MAKING
A DISCOUNTED TOTAL FEE OF $119,750.

GSI agrees to help Dr. Schwartz as needed to find a
source of funds. Dr. Schwartz acknowledges that as a
result of his signature below, he is authorizing GSI, if his
own financial resources make it impossible for him to use
such to fund this program in full immediately, to invest its
time and to make available to Dr. Schwartz its goodwill
business relationship with a qualified lender and that he
fully agrees to consummate the loan obtained, once
approved.

Dr. Schwartz acknowledges that but for his agreement to
the points in this agreement concerning time and effort on
GSI's part in the pursuit of financial assistance for Dr.
Schwartz expressly for his use in funding The Galileo®
Advanced Management Mentoring Program™, Galileo®
Systems International would not spend its executive time nor

Copyright © 2003. Galileo® Systems International.  All Rights Reserved.

invest its goodwill relationship with one or more finance sources into merely inquiring as to credit availability for Dr. Schwartz; nor would it spend any time acquiring credit availability for him, independent of or absent his intent and commitment to immediately enroll in The Galileo® Advanced Management Mentoring Group™. By his signing of this agreement, Dr. Schwartz agrees to be explicitly bound to this section of the Agreement, because he understands that GSI relies upon its opportunity to perform as agreed. Dr. Schwartz agrees and acknowledges that GSI incurs major costs at the risk of a fee contingent upon its successful performance in the acquisition of financing for Dr. Schwartz.

Further, Galileo® Systems International necessarily limits its commitments and time that could be directed to other potential clients while the financing for Dr. Schwartz is secured and received by Galileo® Systems International, once begun. Once this agreement is signed by Dr. Schwartz, GSI potentially loses revenue that it would otherwise be able to earn while committed to using its resources to obtain (or assist with the acquisition of) this financing for Dr. Schwartz.

Because of GSI's investment and potential revenue loss from other clients while devoting time and resources to the acquisition of Dr. Schwartz's fee via a financing source(s), Dr. Schwartz acknowledges and agrees to expeditiously (immediately) acquire and legally sign for (as may be indicated) the funds necessary to pay the full fee for Galileo®

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

Advanced Management Mentoring Group™ participation, once identified and located by GSI's Director of Registration; and to do this without delay after Dr. Schwartz's signing of this agreement. Dr. Schwartz additionally acknowledges that Galileo® Systems International expects and Dr. Schwartz warrants that his decision to pursue and apply assisted financing for Galileo® Advanced Management Mentoring™ is firm and final.

CLIENT      _____

DATE      _____

GSI                  DATE: 9 December 2003



Admissions
Director, CEO &
Chief Systems Architect



AT THE POINT YOU ELECT TO ENROLL ...
PLEASE SIGN THIS CONTRACT, AND:
1. MAKE A COPY FOR YOUR RECORDS.
2. FAX BACK RIGHT AWAY THE SIGNED COPY TO 954-434-7152 OR OTHER DESIGNATED FAX #.
3. SEND THE ORIGINAL SIGNED FAX BACK TO GSI BY FIRST CLASS MAIL.

Copyright © 2003. Galileo® Systems International. All Rights Reserved.

GALILEO® SYSTEMS INTERNATIONAL
4919 SW 148 Ave * Davie, FL 33330
Tel: 954-434-4568 * Fax: 954-434-7152
Email: info@galileotraining.com

Galileo® Advanced Management
Mentoring 2004 5-Year Program™



# ADVANCED MANAGEMENT MENTORING 2004 5-Year STANDARD CONTRACT
### (Including Money-Back Guarantee)

| | |
|---|---|
| Practice | BRODY DENTAL PRACTICE |
| Address | 1025 S. Perry St., Ste 105 |
| | Castle Rock, CO 80104 |
| Principal | Dr. L. Scott Brody |

## 1. Program Purpose:

Galileo® Systems International (GSI) delivers The Galileo® Advanced Management Mentoring Program™ to Dentists desirous of extraordinary practice improvement. Specific to Dr. Brody, this Management Mentoring Program is intended to directly increase, enhance and stabilize Dr. Brody's knowledge, responsibility and control with respect to his Dental Practice.

---

Please Note: This Agreement has been specifically typeset in larger print to make it easier to read and understand. This typesetting accommodation by necessity increases the number of physical pages of the Agreement. Additionally, an effort has been made to use simple English wherever possible and to eliminate and avoid confusing legal language. It is an element of GSI Enrollment Policy that an authorized representative review this Agreement on first reading by the Applicant to ensure clarity to the greatest degree possible.

*Feld 11*

## 2. **Program Orientation:**

Galileo® Advanced Management Mentoring fees are non-refundable except in the case of Galileo® Systems International's complete refusal to perform simultaneously <u>accompanied by</u> non-performance by Galileo® Systems International. Galileo® Advanced Management Mentoring is not responsible for client failure to provide required cooperation or application of materials.

This fee non-refundability clause is specially amended for Dr. Brody, but strictly according to the SPECIAL TERMS near the end of this contract document.  It is herein asserted by both Dr. Brody and Galileo® Systems International that they are creating this agreement with every intention that it be <u>successfully</u> consummated and <u>not</u> result in a refund request under its exact terms, but instead result in services rendered which are considered by Dr. Brody equal to or greater in value than the fee paid.  Both parties, by entering into this agreement, assert that they do so knowingly and in good faith.

Copyright © 2004. Galileo® Systems International.  All Rights Reserved.

# 3. **Advanced Management Mentoring Components & Parameters (Daily/Weekly Contact)** ...

## Galileo® Systems International
## Advanced Management & Mentoring
## For Five (5) Calendar Years Includes:

**1.** Creating & Maintaining a Maximally Insurance-Independent Dental Practice
**2.** Strategic Performance-Improvement Training™
**3.** Perfect Application of The Technology of Selling®)[1]



[1] Standard Program includes 2 Days of The Galileo® Simulator™ Orientation for Dr. Brody and the Office Manager or closest-posted staff member, conducted in the office of a successful, authorized Galileo® Dentist, Plus 2-3 Days In-Office Initial Training scheduled upon enrollment. Additional The Galileo® Simulator™ sessions and additional In-Office visits whenever needed, are included at no charge, as mutually scheduled by Dr. Brody and the Galileo® Advanced Management Mentoring Program™.

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

# 4. **Client Cooperation**

is required so that Galileo® Advanced Management Mentoring can obtain the best possible results in the quickest amount of time, so that no time is wasted by either side.

**Cooperation** regarding receipt of services is herein defined in intentionally simple, straightforward terms:

1) The client taking reasonable steps to clarify any and all Advanced Management Mentoring provided,

2) The client making reasonable efforts to follow all instructions, once clarified,

3) The client honestly communicating to Galileo® Systems International in Florida any and all difficulties that may arise while making the effort to learn the material taught; and

4) The client attending training sessions which shall be scheduled to the greatest degree possible so as to not interrupt the client's work or personal schedule.

5) Galileo® Advanced Management Mentoring expects its clients to collect and forward data required in a timely manner and Dr. Brody hereby agrees to collect the data required and deliver it by fax and e-mail to Galileo® Systems International in Florida on a regular

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

and timely basis, as outlined in the Galileo® Advanced Management Mentoring Program materials. Dr. Brody further agrees to schedule and attend long-distance consultations with the GSI Offices in Florida.

**Cooperation**, for purposes of enrollment and admission in the Management Mentoring Program is further defined as follows: Dr. Brody herein specifically acknowledges his understanding that the enrollment requirements of the Galileo® Advanced Management Mentoring program includes his agreement to the following:

**1]** That he go through the Galileo® Advanced Management Mentoring curriculum under the direct supervision of the Galileo® Advanced Management Mentoring Training Division.

**2]** That he has been informed by Galileo® Systems International that GSI refuses to either offer the Advanced Management Mentoring Program to or enroll prospective students in the Advanced Management Mentoring Program should they indicate or suggest in discussions prior to admission that they do not plan to go through the Galileo® Advanced Management Mentoring curriculum under the direct supervision of the Galileo® Advanced Management Mentoring Training Division.

3] That his enrollment in the Galileo® Advanced Management Mentoring Program is indeed dependent upon his making the exact commitment that he will go through the Galileo® Advanced Management Mentoring curriculum under the direct supervision of

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

the Galileo® Advanced Management Mentoring Training Division. This commitment is asserted by the fact of Dr. Brody's acceptance of this offer.

4] That he agrees that if any scheduling difficulties should occur, Dr. Brody will follow the precise procedures described in the Galileo® Advanced Management Mentoring materials for reaching the Galileo® Systems International CEO, Chief Systems Architect and Director of Admissions, Peter Letterese directly, as soon as practical to resolve the problem, should all other means fail.

# 5. **Payment** of the fee shall only be accepted by GSI based upon the mutual understandings that:

1] This contract is the only offer being made by GSI, except as may be noted and mutually initialed by both parties.

2] GSI expects its clients to pay in a timely manner, by bankwire depositable in GSI's bank in Florida or elsewhere designated, on time and exactly as per this Contract.



3] This contract shall be binding upon the parties upon execution.

4] The client is obligated to pay in full immediately

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

upon execution and it shall be a condition precedent to the delivery of all trademarked and copyrighted goods, etc. by GSI to the client.

5] Failure of any party to comply as stated herein will be deemed a material breach of this contract by that party.

# 6. **Governing Law:** - This contract shall be governed by Florida law and shall be construed in accordance with Florida law.

# 7. **Self-Determined Choice To Purchase:**

Any new party replacing a party to this agreement, for whatever reason, shall both benefit and be bound by this agreement as though they were the original signatory. All words in the present tense includes the future; the masculine includes the feminine and neuter; the singular number includes the plural and the plural number includes the singular; and the word "person" includes a corporation as well as a natural person.

Dr. Brody asserts and warrants by affixing his signature below that:
1] He is entering into this agreement ...

2] with questions asked and answered complete to his satisfaction, regarding the issues involved in enrollment

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

in and acceptance by GSI for the Galileo® Advanced Management Mentoring Program™.

3] And also that he asserts and warrants by affixing his signature below that he is under no duress nor pressure to enroll whatsoever.

4] He further warrants that he fully understands that the benefits of the program are offered in the context of the precise terms of the contract.

5] **He is agreeing, by affixing his signature below, to the remedies prescribed within this contract as the sole remedies for the resolution of any and all future disagreements that may arise between the parties.**

6] In view of the fact that the entirety of the negotiations leading to this contract have been conducted by telephone,

    * He acknowledges that he has satisfied himself, as a result of his own questions asked re the Galileo® Advanced Management Mentoring Program™ ... and

    * as to the desirability of the Galileo® Advanced Management Mentoring Program™ for his use.

    In short, Dr. Brody makes this agreement on his own self-determination, anticipating the benefits obtainable from the Galileo® Advanced Management Mentoring Program™.

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

# 8. In Case of a Dispute - Alternative Dispute Provisions:

a. SERVICE OF PROCESS. The parties agree that service of process for any dispute arising under this agreement can be made by any authorized process server in the state where the process is served. Each party waives any objection to jurisdiction over the person being asserted in a court in Broward County, Florida.

b. ARBITRATION. If a dispute arises under this contract either party herein agrees, as its single source of dispute resolution, <u>to have the dispute arbitrated</u> under the rules of the American Arbitration Association, except as otherwise provided in this paragraph. Arbitrators will be chosen by mutual agreement between the parties from a mutually agreeable source. Venue for the arbitration shall be in Broward County, Florida but arbitration can be attended by Dr. Brody BY PHONE if a dispute resolution becomes necessary, making a physical trip to Florida unnecessary but available if Dr. Brody were to feel his best interests served by such.

Dr. Brody acknowledges by his signature below that he recognizes and accepts the purposes for GSI selecting arbitration as the sole and binding dispute resolution option to be:

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

1) to reduce costs to the client if a dispute cannot be resolved directly with the Galileo® Advanced Management Mentoring Program™;

2) to eliminate the absolute need for the client to retain an attorney to be substantially represented in any dispute resolution process yet making the retaining of one where desired, far less expensive to the client and to the Galileo® Advanced Management Mentoring Program;

3) to speed up justice;

4) to make the contract as a whole perform more smoothly by virtue of taking into account a fair and orderly handling for any poor performance or worst case scenario. The Commercial Arbitration Rules in force at the time arbitration is requested shall govern the proceeding, except as follows:

    i. The arbitrator shall not have the power to change the venue as prescribed in this agreement.

    ii. Each of the parties shall designate an arbitrator who shall be actively practicing his business or profession and shall have a minimum of ten years experience in the business or profession. The two arbitrators thus selected shall select a third arbitrator who shall have the same qualifications. The three arbitrators thus selected shall constitute the panel of arbitrators. A decision in the arbitration shall be by a

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

majority vote of the arbitrators.

iii. The arbitrators shall follow Florida law in determining the arbitration.

iv. In the award the arbitrators shall specify the facts as found by them; the grounds for their decision; and their conclusions on the law applicable to the decision.

v. Except as otherwise provided in this paragraph, Chapter 682 Florida Statutes shall apply to the arbitration.

vi. Evidence by affidavit shall not be accepted. Chapter 90 Florida Statutes shall apply to the admission and rejection of evidence.

**If a party attempts to contest, modify or circumvent this paragraph, the other party shall be entitled to attorney fees and all expenses reasonably incurred in enforcing this paragraph. The parties agree that any and all disputes of any kind by and between these parties shall be resolved exclusively by arbitration. This shall include any contract disputes, tort disputes, or claims of any kind.**

c. JURY WAIVER. THE PARTIES TO THIS AGREEMENT WAIVE ANY RIGHT TO A JURY TRIAL THAT EITHER OF THEM MAY HAVE IN ANY ACTION OR PROCEEDING ARISING FROM OR CONNECTED WITH THIS AGREEMENT. This Agreement contains the entire understanding between the parties.

Copyright © 2004. Galileo® Systems International. All Rights Reserved.



Copyright © 2004. Galileo® Systems International. All Rights Reserved.

# Special Terms:
## Money-Back Guarantee:

A money-back guarantee is available to Dr. Brody, if Dr. Brody purchases the Galileo® Advanced Management Mentoring Program™ on an immediate basis.

Should Dr. Brody be dissatisfied with the Galileo® Advanced Management Mentoring Program™, **HE MAY RECEIVE A FULL REFUND IN CASH** of the Galileo® Advanced Management Mentoring Program™ fee amount paid as follows:

IF HE DOES NOT FEEL HE HAS GAINED SUFFICIENT BENEFIT FROM THE PROGRAM **AT THE END OF TWO YEARS** DURING WHICH HE HAS COMPLIED WITH THE TERMS OF THIS CONTRACT AS STATED HEREIN, HE MAY REQUEST AND WILL RECEIVE A FULL REFUND.

AS USED IN THE PARAGRAPH ABOVE, "COMPLIED WITH THE TERMS OF THIS CONTRACT" SPECIFICALLY MEANS THAT A GOOD FAITH, CONSISTENT EFFORT IS MADE BY THE DOCTOR ... A) TO COMMUNICATE AND COOPERATE(AS NOTED ABOVE) WITH THE GALILEO® ADVANCED MANAGEMENT MENTORING PROGRAM™ WITH THE INTENT TO ... B) LEARN AND APPLY THE MATERIAL OF THE PROGRAM, **FOR A PERIOD OF TWO YEARS**.

BY AFFIXING SIGNATURES BELOW, BOTH PARTIES ACKNOWLEDGE THAT THE ABOVE PARAGRAPH IS ONE OF THE CONCEPTUAL BASES FOR THE AGREEMENT.

**Copyright © 2004. Galileo® Systems International. All Rights Reserved.**

# Fees and Terms:

Payment Schedule: $150,000(US), in advance, conditional on Dr. Brody purchasing The Galileo® Management Mentoring Program™ on an immediate basis.

GSI agrees to help Dr. Brody as needed to find a source of funds. Dr. Brody acknowledges that as a result of his signature below, he is authorizing GSI, if his own financial resources make it impossible for him to use such to fund this program in full immediately, to invest its time and to make available to Dr. Brody its goodwill business relationship with a qualified lender and that he fully agrees to consummate the loan obtained, once approved.

Dr. Brody acknowledges that but for his agreement to the points in this agreement concerning time and effort on GSI's part in the pursuit of financial assistance for Dr. Brody expressly for his use in funding The Galileo® Advanced Management Mentoring Program™, Galileo® Systems International would not spend its executive time nor invest its goodwill relationship with one or more finance sources into merely inquiring as to credit availability for Dr. Brody; nor would it spend any time acquiring credit availability for him, independent of or absent his intent and commitment to immediately enroll in The Galileo® Advanced Management Mentoring Group™. By his signing of this agreement, Dr. Brody agrees to be explicitly bound to this section of the

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

Agreement, because he understands that GSI relies upon its opportunity to perform as agreed. Dr. Brody agrees and acknowledges that GSI incurs major costs at the risk of a fee contingent upon its successful performance in the acquisition of financing for Dr. Brody.

Further, Galileo® Systems International necessarily limits its commitments and time that could be directed to other potential clients while the financing for Dr. Brody is secured and received by Galileo® Systems International, once begun. Once this agreement is signed by Dr. Brody, GSI potentially loses revenue that it would otherwise be able to earn while committed to using its resources to obtain (or assist with the acquisition of) this financing for Dr. Brody.

Because of GSI's investment and potential revenue loss from other clients while devoting time and resources to the acquisition of Dr. Brody's fee via a financing source(s), Dr. Brody acknowledges and agrees to expeditiously (immediately) acquire and legally sign for (as may be indicated) the funds necessary to pay the full fee for Galileo® Advanced Management Mentoring Group™ participation, once identified and located by GSI's Director of Registration; and to do this without delay after Dr. Brody's signing of this agreement. Dr. Brody additionally acknowledges that Galileo® Systems International expects and Dr. Brody warrants that his decision to pursue and apply assisted financing for Galileo® Advanced Management Mentoring™ is firm and final.

Copyright © 2004. Galileo® Systems International. All Rights Reserved.

CLIENT  _____

DATE  _____

GSI                                    DATE: 26 February 2004

Admissions
Director, CEO &
Chief Systems Architect



AT THE POINT YOU ELECT TO ENROLL ...
PLEASE SIGN THIS CONTRACT, AND:
1. MAKE A COPY FOR YOUR RECORDS.
2. FAX BACK RIGHT AWAY THE SIGNED COPY TO 954-434-7152 OR OTHER DESIGNATED FAX #.
3. SEND THE ORIGINAL SIGNED FAX BACK TO GSI BY FIRST CLASS MAIL.

**Copyright © 2004. Galileo® Systems International.  All Rights Reserved.**

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
John M. Bishop
Vice President
Linda Beyea
Assistant Vice President

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

June 9, 2008

Via facsimile

Simeon Brier, Esq.
Edwards Angell Palmer & Dodge, LLP
1 North Clematis Street, Suite 400
West Palm Beach, FL  33401

James Pedley, Esq.
727 NE 3rd Avenue
Suite 301
Ft. Lauderdale, FL  33304


Re: 32 181 00098 05
    Dr. Douglas G. Ness
    and
    Peter Letterese, Individually Peter Letterese &
    Associates, Inc., Galileo Systems International,
    and SAVE! International


Dear Parties:

At this time, the above captioned matter is stayed pursuant to Judge Henning's October 17, 2007 order.
We have received Judge Carney's June 3, 2008 order from Claimant that grants the order to compel
arbitration in Ness v. Letterese, et al.

To the extent that these orders are inconsistent, should the parties have comments regarding the impact of
the June 3, 2008 order on the AAA's administration of this case, please provide them to the AAA no later
than Thursday, June 12, 2008.

Sincerely,

/s John Bishop

John Bishop
Vice President
404 320 5150
Bishopj@adr.org

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

CASE # CACE 07-13211 03

CREATIVE DESPERATION, INC.
etc et al

     Plaintiff(s),

vs.

AMERICAN ARBITRATION ASSOCIATION,
INC. a New York Corporation,

     Defendant(s).
_____/

**PARTIAL FINAL DEFAULT JUDGMENT IN FAVOR OF PLAINTIFFS CREATIVE DESPERATION INC. and PETER LETTERESE AGAINST DEFENDANT AMERICAN ARBITRATION ASSOCIATION, INC. FOR COUNTS I AND II OF PLAINTIFFS COMPLAINT**

THIS CAUSE came onto be heard on October 16, 2007 upon Plaintiffs CREATIVE DESPERATION, INC. F/K/A PETER LETTERESE & ASSOCIATES, INC. a Florida Corporation D/B/A GALILEO SYSTEMS INTERNATIONAL and PETER LETTERESE INDIVIDUALLY ("Plaintiffs") Motion for Final Default Judgment against Defendant AMERICAN ARBITRATION ASSOCIATION INC. ("Defendant AAA") for Count I Declaratory Relief and Count II Injunction and the Court having reviewed the Court file, affidavit of Plaintiffs, noting no counter affidavits or memoranda filed by Defendant AAA, entertaining oral argument of counsel and being duly apprised in the premises thereto, does hereby:

ORDER AND ADJUDGE the following Findings of Fact:

1. Plaintiffs filed its complaint for Declaratory Relief, injunction and damages against Defendant AAA and others.

2. Defendant AAA was properly served on June 11, 2007.

3. The Clerk of the Court pursuant to Fla Rul Civ Pro 1.500 entered a default against Defendant AAA on July 3, 2007 for

*Elu 13*

Defendant AAA failure to respond timely to the complaint.

4. This Court has denied Defendant AAA motion to vacate the default and motion for rehearing on same and denied Defendant AAA amended motion to vacate finding that the Defendant AAA motions are legally insufficient.

5. Plaintiffs have dropped the other parties from the litigation without prejudice.

6. By virtue of the Default, Defendant AAA has admitted the allegation of the complaint in accordance with Fla Rul Civ Pro. 1.500.

7. Plaintiff has filed an affidavit supporting the allegations of Count I for Declaratory Relief.

8. Plaintiff has filed an affidavit supporting the allegations of Count II for injunctive relief.

9. Based upon the complaint and sworn affidavit and with counter affidavit or other filings permitted by this Court, the Court finds that this Court has jurisdiction over the subject matter and the parties hereto.

10. The Court finds that Defendant AAA has violated the contractual terms of arbitration of Plaintiffs with third parties by seeking to arbitrate where there was no agreement to arbitrate with the Defendant AAA and that Defendant AAA lacked subject matter jurisdiction conferred by any agreement of arbitration.

11. The Court finds that Defendant AAA has violated its own rules of Commercial Arbitration such that Plaintiffs can not obtain a fair and neutral arbitration proceeding.

12. The Court finds that Defendant AAA has violated Florida

2

Statute 682 and that there is no agreement to arbitrate between Plaintiffs and Defendant AAA as required by Florida Statue such that Plaintiffs can not obtain a fair and neutral arbitration proceeding.

13. Plaintiffs complaint and supporting affidavit demonstrate that Plaintiffs would be irreparably harmed by having to arbitrate any proceeding in which the Defendant AAA is the arbitrating body based upon Defendant AAA failure to follow the contractual terms of any arbitration agreement, failure to comply with the Defendant AAA Commercial Rules of Arbitration, failure to provide a contract requiring arbitration before the Defendant AAA and failure to comply with Florida Statute 682.

14. Plaintiffs are entitled to permanent injunction barring the Defendant AAA from arbitrating any arbitration matters with Plaintiffs to prevent further irreparable harm to the Plaintiffs.

15. The Court finds Plaintiffs are entitled to arbitrate as provided under their contracts, with private arbitrators not Defendant AAA.

16. Plaintiffs are not required to arbitrate with Defendant AAA under the contracts provided in this litigation, or any other contract which does not expressly name Defendant AAA as the designating arbitrators.

17. Plaintiffs have shown that Plaintiffs are not required to arbitrate with Defendant AAA.

IT IS THEREUPON ORDERED AND ADJUDGED THE FOLLOWING:

1. The Court enters Final Default Judgment as to Count I Declaratory Judgment in favor of Plaintiffs CREATIVE DESPERATION,

3

INC. F/K/A PETER LETTERESE & ASSOCIATES, INC. a Florida Corporation D/B/A GALILEO SYSTEMS INTERNATIONAL and PETER LETTERESE against Defendant AMERICAN ARBITRATION ASSOCIATION INC. declaring that there is no agreement to arbitrate with Plaintiffs and Defendant AAA and that Defendant AAA has no subject matter jurisdiction to arbitrate with Plaintiffs.

2. This Court grants Final Default Judgment in favor of Plaintiffs against Defendant AAA as to Count II. Defendant AAA is permanently enjoined from any pending arbitration or future arbitration with respect to Plaintiffs. Any pending arbitration may not proceed with Defendant AAA as the arbitrating body or any arbitrators selected by the Defendant AAA. No fees claimed by Defendant AAA from Plaintiffs shall be paid and any claims for fees are hereby voided and canceled from any pending arbitration including any arbitration for which an award was entered which award has not been confirmed.

3. This Court permanently enjoins the Defendant AAA from enforcing or rendering any arbitration award with respect to Defendant AAA as the arbitrator and holds any arbitration award which has not been confirmed or paid, to be null and void for lack of subject matter jurisdiction of Defendant AAA.

4. This Final Default Judgment is not a decision on the merits of any underlying arbitration award but merely voids the award without prejudice. This Final Default Judgment does not bar any party other than Defendant AAA from seeking to enforce any arbitration contract terms nor bar the right to compel arbitration under any contract that may provide for arbitration with Plaintiffs

4

with arbitrators other than Defendant AAA. This Final Default Judgment removes Defendant AAA as the arbitrators with the Plaintiffs.

5. The Court retains jurisdiction to enforce this Default Final Judgment, to modify same and to consider Count III damages which shall require a separate evidentiary hearing.

6. Any claim for attorney fees or costs shall be reserved until the final evidentiary hearing as to Count III damages.

DONE and ORDERED in Fort Lauderdale, Broward County, Florida this __16__ day of October 2007.

CIRCUIT JUDGE
PATTI HENNING

TRUE COPY

Copies furnished:

John Aristia Esq
Counsel for Defendant AAA
1001 Brickell Bay Drive  Suite 2002
Miami Fl 33131

Keith A. Gasman Esq
Co Counsel for Plaintiffs
2929 E. Commercial Blvd Suite 702
Fort Lauderdale, Fl. 33308

Charles D. Franken Esq.
Co Counsel for Plaintiffs
8181 W. Broward Blvd # 360
Plantation, Fl 33324

Address for Plaintiff:
CREATIVE DESPERATION, INC.
and Peter Letterese
4581 Weston Road # 306
Weston Fl 33331

5

FROM LATHAM & WATKINS LLP 213-891-8763 44FL  (FRI) 2.27'04 16:38/ST. 16:33/NO. 4861839382 P 2

# LATHAM&WATKINS<sup>LLP</sup>

633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Tel (213) 485-1234 Fax (213) 891-8763
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Boston | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| | Washington, D.C. |

File No. 039909-0003

February 27, 2004

**BY FACSIMILE AND U.S. MAIL**
(661) 775-9423

Richard A. Marcus
4221 Wilshire Boulevard, Ste 395
Los Angeles, CA. 90010

     Re:  Peter D. Letterese

Dear Mr. Marcus:

     This will confirm the terms of the agreement the parties reached Wednesday. After you have reviewed this Agreement, please countersign in the space below. I have included two signed originals. Please return an executed original to me and retain the other for your files.

1. The pending litigation in Superior Court in California, Letterese v. Bridge Publications, will be dismissed without prejudice. The cross-complaint will also be dismissed without prejudice. You will work with Mr. Soter to prepare the appropriate stipulation to have that lawsuit dismissed. In the event that litigation were to recommence, the parties agree to refile in the Superior Court in California.

2. The parties, including any entity affiliated with Mr. Letterese and any entity affiliated with the Church of Scientology, agree to refrain from filing any litigation or other legal action against each other in any jurisdiction for a period of 1 year from the date of this Agreement (the "stand still period"), with the exception of the pending arbitration involving Mr. Letterese and WISE.

3. During the stand still period, no representative of the Church of Scientology or any affiliated entity shall attempt to contact any member of the Dane family.

4. The statute of limitations on any claims either party may have as against the other shall be tolled during the pendency of the stand still period. Neither party waives any claims or defenses that he/it may have against the other by virtue of agreeing to this stand still agreement and nothing in this paragraph shall be construed to operate as a bar or waiver of any defense that either party may have as against the other.

5. During the pendency of the stand still period, neither party shall make public comments about the other pertaining to any dispute that has arisen between the parties over the use of books written by Les Dane.

*Filed 14*

Richard A. Marcus
February 27, 2004
Page 2

**LATHAM&WATKINS**LLP

6.  During the stand still period, the parties agree to continue negotiating in good faith.  To that end, I have agreed to participate in at least six (6) meetings with you (assuming we are unable to resolve matters in fewer than 6 meetings) and I have further agreed that the first meeting shall take place within two (2) weeks of the date of this Agreement.

I trust the preceding accurately summarizes the terms we discussed.  If you have any questions, please do not hesitate to contact me.  Otherwise, please sign where indicated below.

Very truly yours,

David J. Schindler
of LATHAM & WATKINS LLP

I have read the foregoing 2 page letter Agreement and agree that it accurately reflects the Agreement between the parties.

Dated:  February 27 2004.

Richard A. Marcus
Counsel for Peter D. Letterese

# FORENSIC[1] PROBABILITY[2] ANALYSIS
## CONCERNING THE SCIENTOLOGY-INCITED
## CONSPIRACY AGAINST PLA-CDI

**Computed & Verified by Forensic Statistician**
**Report Completed & Submitted: April 2, 2008**

A probability calculation analyzing the likelihood that the factual events listed below occurred, and the individuals who perpetrated them participated in them, wholly independently[4] of one another.

The core of our case against Scientology et al is that a conspiracy was created and operated by Scientology to commit various torts in which persons and groups (including Attorneys and Private Investigators, 4 Clients (out of hundreds existing) plus a Vendor of PLA-CDI's were recruited by Scientology-recruited attorneys and/or PI's to reputationally and financially destroy Peter Letterese individually, and PLA-CDI (push it to bankruptcy). Once made bankrupt, (because Scientology believed the contract between PLA-CDI and Dane would be rendered void by such bankruptcy), Scientology hoped PLA-CDI would be out of the picture and thus unable to pursue its efforts to recover the intellectual property of the Les Dane Estate from the copyright-violating, unauthorized use by Scientology dating back to 1971.

**Note:** Forensic Statistician was provided a streamlined version of the undeniable facts within this case's chronology, but with only the "anonymous letter-or-number identifiers" (e.g., Company Z, Attorney 1, etc.) so as to ensure Forensic Statistician's objectivity, shown below next to each real identity, (which I have added for the easy comprehension of this report by PLA-CDI Attorneys, Employees and Private Investigator). Forensic Statistician is experienced at providing expert testimony in court, has a known-corporation client list and is prepared to testify to the accuracy and standardness of these calculations on behalf of PLA-CDI upon request. Throughout are definitions (which clarify various terms and which are underlined, i.e., the definitions are found at the very end of the report), which are my own and which were not included by Forensic Statistician. ... Peter L.

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

E.4M /;

Page 1 of 14

248 of 262

# PROBABILITY ANALYSIS FROM FORENSIC STATISTICIAN :::

The purpose of this report is to go through and discuss the methods involved in calculating the probability that all of the persons involved could not have accomplished the outlined actions "coincidentally" and "independently" of each other. To begin with the probability calculations the first that will be done is go through a step-by-step process in calculating the probability at each step of the line.

In order to calculate the above probability that each acted coincidentally and independently of one another there would have to be a number of factors that would have to be taken into consideration.

The first thing that would have to be taken into consideration when attempting to calculate the probability would be the number of Attorneys that work in the U.S. Based on the information that is provided there are over 1,400,000 Attorneys currently working in the U.S.  Since there is not an exact number that can be used in the final calculation of the probability it will have to be assumed that the total number of Attorneys is equal to 1,400,000.

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page 2 of 14

The first probability that will be calculated will be the probability that **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** coincidentally is in negotiations with **PLA-CDI (Company Q)** while at the same time **Norman Taylor** [Glendale, CA] **(Attorney 1),** with very public Internet-documented, years-long connections to **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** independently "finds" **Dr. Richard Baldwin** [Huntington Beach, CA]**(PLA-CDI Client 5)** to represent in a contract "lawsuit" against **PLA-CDI (Company Q)** and then passes him over to **Robert Amidon**[Burbank, CA]**(Attorney 2)** also with (only slightly less) public Internet-documented connections to **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** from the list of possible Attorneys that could have been hired by **Dr. Richard Baldwin** [Huntington Beach, CA]**(PLA-CDI Client 5)**

Based on the above figures the probability of **Dr. Richard Baldwin** [Huntington Beach, CA]**(PLA-CDI Client 5)** randomly hiring first one and then the other of these two particular **Scientology-connected** Attorneys would be equal to

$$2/1,400,000 = 0.000001428.$$

This is, of course if all things were equal, meaning that each one of the Attorneys that were allegedly "selected" by **Dr. Richard Baldwin** [Huntington Beach, CA]**(PLA-CDI Client 5)** had an equal chance of being selected. Because **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** is proclaiming that the Attorneys acted independently of any actions or directions of theirs, the probability of this occurring would be what is expressed above since it would be random chance that placed the two Attorneys in this situation.

♦ ♦ ♦ ♦ ♦

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page **3** of **14**

The next thing that would have to be taken into consideration would be the probability of Scientology[HQs: Hemet & Los Angeles, CA] (Company Z) hiring a private investigator. Based on the information that is provided there are assumed to be greater than 100,000 private investigators in the U.S. Since the exact number is not known this will have to be the assumed number located in the U.S. This would mean that the probability of Eugene Ingram [La Crescenta, CA](Private Investigator 1) taking any interest in, let alone acting predatorily toward PLA-CDI (Company Q) from the entire population of private investigators would be equal to

$$1/100{,}000 = 0.00001.[5]$$

This is again due to the fact that Scientology[HQs: Hemet & Los Angeles, CA] (Company Z) is denying any previous relationships between them and the Eugene Ingram (Private Investigator 1), which means that this private investigator was randomly selected from the total number of possible private investigators by an unknown person. By using the above calculated probabilities, the probability of Dr. Richard Baldwin [Huntington Beach, CA](PLA-CDI Client 5) independently "selecting" Norman Taylor [Glendale, CA] (Attorney 1) and Robert Amidon[Burbank, CA](Attorney 2) as well as somehow "coincidentally" involving Eugene Ingram [La Crescenta, CA](Private Investigator 1) would be equal to

$$0.0000000142857.$$

This is because the probabilities of Dr. Richard Baldwin [Huntington Beach, CA](PLA-CDI Client 5) selecting Norman Taylor [Glendale, CA] (Attorney 1) and Robert Amidon[Burbank, CA](Attorney 2) and from out of nowhere Eugene Ingram [La Crescenta, CA](Private Investigator 1) would be:

- A = Norman Taylor [Glendale, CA] (Attorney 1) and Robert Amidon[Burbank, CA](Attorney 2)

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page 4 of 14

- B = **Eugene Ingram** [La Crescenta, CA](**Private Investigator 1**)

$$P(A \text{ and } B) = P(A) \text{ times } P(B).$$

As it stands at this moment there is a **1.428571x10-9%** chance of **Dr. Richard Baldwin** [Huntington Beach, CA](**PLA-CDI Client 5**) hiring **Norman Taylor** [Glendale, CA] **(Attorney 1)** and **Robert Amidon**[Burbank, CA](**Attorney 2**) as well as **Eugene Ingram** [La Crescenta, CA](**Private Investigator 1**) involving himself unconnected in any way to his employer of 30+ years, **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)**.

As a general rule in statistics and probability theory, the above formula of **P(A and B) = P(A) times P(B)** <u>assumes</u> that the probability of event A occurring is independent of the probability of event B occurring.

♦ ♦ ♦ ♦ ♦

For the next phase of the calculation, the probability that will be calculated is for the probability of **Eugene Ingram** [La Crescenta, CA](**Private Investigator 1**) recruiting **David LuBow** [Unknown Address, CO] **(Private Investigator 2)**, and **Economic Research Group-NY** [New York] **(Private Investigator 3)** and **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** into the defamation of **PLA-CDI (Company Q)**.

Using the information regarding the number of private investigators in the U.S. the probability of **Eugene Ingram** [La Crescenta, CA](**Private Investigator 1**) selecting **David LuBow** [Unknown Address, CO] **(Private Investigator 2)**, **Economic Research Group-NY** [New York] **(Private Investigator 3)** and **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** would be

$$3/100,000 = 0.00003.$$

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page 5 of 14

This once again does not take into consideration that these three investigators may come from a list of investigators that **Eugene Ingram** [La Crescenta, CA]**(Private Investigator 1)** knew to begin with. Assuming that **Eugene Ingram** [La Crescenta, CA]**(Private Investigator 1)** knew just 10 other private investigators in the country[6], the probability of **Eugene Ingram** [La Crescenta, CA]**(Private Investigator 1)**selecting **David LuBow** [Unknown Address, CO] **(Private Investigator 2)**[7], **Economic Research Group-NY** [New York] **(Private Investigator 3)**[8] and **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)**[6] would be equal to

**0.30**.

This means that as it stands right now the probability of all these people acting independently from **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** would be equal to:

- A = **Norman Taylor** [Glendale, CA] **(Attorney 1)** and **Robert Amidon**[Burbank, CA]**(Attorney 2)**
- B = **Eugene Ingram** [La Crescenta, CA]**(Private Investigator 1)** recruiting
- C = **David LuBow** [Unknown Address, CO] **(Private Investigator 2)**, **Economic Research Group-NY** [New York] **(Private Investigator 3)** and **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)**

**P(A and B and C) = P(A) times P(B) times P(C)**.

As it stands at this moment there is a **4.285714x10-10%** chance of these being independent of any of the actions or plans of **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** .

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page **6** of **14**

Next, the probability of Eugene Ingram [La Crescenta, CA](Private Investigator 1) making contact with Gary Woodfield [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 4), Annette Theodossakos [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 5), and Simeon Brier [Ft. Laud, FL – Edwards & Angell Law Firm] (Attorney 6) in Florida will be considered. Using the information that was provided there are approximately 59,000+ Attorneys in the state of Florida, more specifically 7,778 in Broward & Palm Beach County, Florida. This would mean that the probability of Eugene Ingram [La Crescenta, CA](Private Investigator 1) making contact with Gary Woodfield [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 4), Annette Theodossakos [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 5), and Simeon Brier [Ft. Laud, FL – Edwards & Angell Law Firm] (Attorney 6) would be equal to

$$3/7,778 = 0.00039.$$

Gary Woodfield [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 4), Annette Theodossakos [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 5), and Simeon Brier [Ft. Laud, FL – Edwards & Angell Law Firm] (Attorney 6) claim they were never working with Eugene Ingram [La Crescenta, CA](Private Investigator 1) and only became involved innocently despite ending up representing Dr. Doug Ness[Anchorage, Alaska] (Client 1), Dr. Scott Brody [Castle Rock, CO] (Client 2), Dr. Marc Schwartz [Belmont, CA] (Client 3) & Richard Clear [Maryville, TN] (Vendor-4) of PLA-CDI (Company Q), even though the geographic spread of these PLA-CDI clients around the US was rather large. This would mean that the probability of these Attorneys independently representing these clients of PLA-CDI (Company Q) would have to be calculated.

Based on the previous information, the probability of Dr. Doug Ness[Anchorage, Alaska] (Client 1), Dr. Scott Brody [Castle Rock, CO] (Client 2), Dr. Marc Schwartz [Belmont, CA] (Client 3) & Richard Clear [Maryville, TN] (Vendor-4) which are spread throughout the US choosing Gary Woodfield [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 4), Annette Theodossakos [Palm Beach, FL – Edwards & Angell Law Firm] (Attorney 5), and Simeon Brier [Ft. Laud, FL – Edwards & Angell Law Firm] (Attorney 6) given they are all located in the state of Florida in Palm Beach & Broward County would be equal to

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

$$2.142857 \times 10^{-06} \ [(3/7778)*(3/1,400,000)]/[3/7778].$$

This is based on the fact that this immediately preceding conditional[9] Bayesian[10] probability that the Attorneys in Broward County Florida is a subset of the entire population of Attorneys in the US.

This means that up to this point, using the above probability equation to show independence of **P(A and B and C and D)** occurring, where D is the probability **Gary Woodfield** [Palm Beach, FL – Edwards & Angell Law Firm] **(Attorney 4)**, **Annette Theodossakos** [Palm Beach, FL – Edwards & Angell Law Firm] **(Attorney 5)**, and **Simeon Brier** [Ft. Laud, FL – Edwards & Angell Law Firm] **(Attorney 6)** being randomly selected and acting independently of everything that is going on to this point with A, B and C are as defined earlier above would be

**9.183673x10-18**

or a **9.183673x10-16 %** chance of these occurring independently or randomly of one another.

♦ ♦ ♦ ♦ ♦

The following probability that is calculated will be the probability of **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** making contact with **Ryan Bonsett** [Ft. Laud, FL] **(Private Investigator 5)** and **Dick Howard** [Ft. Laud, FL] **(Private Investigator 6)**[11].

Based on the provided information that there are 100,000 plus private investigators in the U.S. the probability of **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** contacting these two private investigators would be

**2/100,000 = 0.00002**.

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page **8** of **14**

This is not taking into consideration the probability of **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** already knowing these two private investigators, so the one assumption that would have to be made is the number of private investigators **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** knew in the state of Florida.

Assuming that **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** knew 10 private investigators in the state of Florida, the probability of **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)** making contact with these two specific investigators would be (using the conditional probability defined above) would be

### 0.20.

This would mean that these private investigators had a **20%** chance of being selected by **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)**. Therefore, assuming independence between all the events that have taken place so far the probability of these events would be equal to:

---

**P(A and B and C and D and E) =**

**P(A) times P(B) times P(C) times P(D) times P(E).**

# $= 1.836735 \times 10^{-18}$

---

This means that there was a **$1.836735 \times 10^{-16}$%** chance of all these named events occurring randomly and independently of one another.

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN



The following probability then takes into account the probability of **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** hiring **Rick Moxon** [Los Angeles, CA] **(Attorney 7)** & **Helena Kobrin** [Los Angeles, CA] **(Attorney 8)** which were assumed to have taken on the position of Attorneys for **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** independently of all that was going on to this date.

This would mean that assuming that these two Attorneys were actually independent of all the earlier highly improbably non-involvement of **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)**, the probability of this occurring would be equal to **2/1,400,000 = 0.000001428** since of the Attorneys **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** could have hired, they chose **Rick Moxon** [Los Angeles, CA] **(Attorney 7)** & **Helena Kobrin** [Los Angeles, CA] **(Attorney 8)** independently from the entire population of possible Attorneys.

But using the evidence that was provided, **Rick Moxon** [Los Angeles, CA] **(Attorney 7)** & **Helena Kobrin** [Los Angeles, CA] **(Attorney 8)**have had a long standing relationship with **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)**, and in fact only work for **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)**. This would mean that in order to determine the probability of these two Attorneys being selected one would have to know the number of Attorneys that are currently employed by **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)**.

Since this information is not provided the number of Attorneys that work specifically for **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** would have to be assumed. Therefore, assuming that **Scientology**[HQs: Hemet & Los Angeles, CA] **(Company Z)** has currently 10 Attorneys[12] working for them, the probability of them selecting these two particular Attorneys would be equal to

**0.20**.

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

This would mean that the overall probability of everything that has occurred to this moment being independent of one another would be equal to:

- A = **Norman Taylor** [Glendale, CA] **(Attorney 1)** and **Robert Amidon**[Burbank, CA]**(Attorney 2)**

- B = **Eugene Ingram** [La Crescenta, CA]**(Private Investigator 1)**

- C = **David LuBow** [Unknown Address, CO] **(Private Investigator 2)**, **Economic Research Group-NY** [New York] **(Private Investigator 3)** and **Thomas Griffin**[Ft. Lauderdale – *Deceased Nov 2004*] **(Private Investigator 4)**

- D = **Gary Woodfield** [Palm Beach, FL – Edwards & Angell Law Firm] **(Attorney 4)**, **Annette Theodossakos** [Palm Beach, FL – Edwards & Angell Law Firm] **(Attorney 5)**, and **Simeon Brier** [Ft. Laud, FL – Edwards & Angell Law Firm] **(Attorney 6)**, Representing **Dr. Doug Ness**[Anchorage, Alaska] **(Client 1)**, **Dr. Scott Brody** [Castle Rock, CO] **(Client 2)**, **Dr. Marc Schwartz** [Belmont, CA] **(Client 3)** & **Richard Clear** [Maryville, TN] **(Vendor-4)**

- E = **Ryan Bonsett** [Ft. Laud, FL] **(Private Investigator 5)** and **Dick Howard** [Ft. Laud, FL] **(Private Investigator 6)**

- F = **Rick Moxon** [Los Angeles, CA] **(Attorney 7)** & **Helena Kobrin** [Los Angeles, CA] **(Attorney 8)**

---

**P(A and B and C and D and E and F) =**

**P(A) times P(B) times P(C) times P(D) times P(E) times P(F)**

$$= 3.673469 \times 10^{-19}$$

---

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page **11** of **14**

258 of 262

This means that the chances of everything that has occurred so far happening independently of one another, would be equal to 3.673469x10-17%.

> ## This would mean that the chances of these events
>
> ## happening randomly and independently
>
> ## of one another would be equal to
>
> ## <u>LESS THAN One Chance In A Billion-Billion Tries</u>.

This indicates that based on all the occurrences that have taken place throughout the course of this study **there is a very, very, very, very small chance that they have occurred independently and randomly from one another.**



FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

Page **12** of **14**

259 of 262

# ENDNOTES ...

[1] **forensic** ... pertaining to, connected with, or used in courts of law or public discussion and debate.

[2] **probability** ... the relative possibility that an event will occur, as expressed by the ratio of the number of actual occurrences to the total number of possible occurrences

[3] **Forensic Statistician Consulting** ...

[4] **independent** ... not dependent; not depending or contingent upon something else for existence, operation, etc.; not influenced or controlled by others in matters of opinion, conduct, etc

[5] In mathematics, when numbers get very, very large or very, very small, they can begin to involve lots of digits. These many potential digits could make it easier to make errors on the one hand, and would eventually become very time consuming on the other. So, a special way of writing numbers with lots of digits was invented, called **scientific notation**. For example ... $10^2 = 100$ **AND** $10^3 = 1,000$ (1 thousand) **AND** $1.386 \times 10^{3} = 1,386$ **AND** $10^4 = 10,000$ **AND** $10^5 = 100,000$ **AND** $10^6 = 1,000,000$ (1 million) **AND** $10^7 = 10,000,000$ **AND** $10^8 = 100,000,000$ **AND** $10^9 = 1,000,000,000$ (1 billion) AND SO FORTH. Similarly, the number 1 trillion, written out would be 1,000,000,000,000. That's 12 "zero's". When numbers get very small, almost the exact same notation is used, except that a minus sign goes in front of the small raised number (called, *not to get too technical* – an "exponent"). So, "one one thousandth" would be written in scientific notation like this: $10^{-3}$; **AND** "one one millionth" would be written in scientific notation like this: $10^{-6}$ [compare the large number notation above]. The **probabilities in this report** drop to numbers much, much lower than any of those given as examples in this endnote, but by now you should be able to read and understand them easily.

[6] **Ingram** undoubtedly knows more than 10 PI's around the USA, which would make the immediate and ultimate overall probability calculation which follows this point even lower than it is; but "10" is an easy number for someone new to probability to think with.

[7] **David Lubow**, believed to be an unlicensed "private investigator" (who lost his license for actions like these) has been a known operative for Scientology for almost as many years as Ingram, as anyone can see who Googles him on the internet.

[8] **Economic Research Group (NY)** had worked for Scientology (as revealed by a 1988 St. Petersburg Times article in PLA-CDI's possession). They sent **Thomas Griffin** specifically to Florida to apply for a PI License in 1997 which would enable him to open up **Economic Research Group (Florida)**, upon information and belief, almost exclusively to spy on Peter Letterese and PLA-CDI shortly after he obtained the Dane contract and while Scientology was actively pursuing the destruction of PLA-CDI.

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

[9] **Conditional calculation** … The *conditional probability* of an event *B* is the probability that the event will occur given the knowledge that an event *A* has already occurred.

[10] **Bayesian Probability calculation** … A special type of probability calculation, in use in the civilized world wherever mathematics was taught, since just before the American Revolution … which permits … the calculating of rising or falling probability resulting from a series of events; the idea being to see whether as new factors are added to a situation, the likelihood of their occurrence being independent is rising or falling. In this calculation by Forensic Statistician, every one of the factually provable occurrences LOWERS the probability of all of these anti-PLA/CDI actions being coincidental and independent to a very, very small likelihood. The conclusion then would be that these actions are connected and highly unlikely to be unconnected one from another.

[11] As documented by both a sworn affidavit and a sworn deposition of Bonsett and Howard respectively in the possession of PLA-CDI Attorney David Hoffman (which took place during the PLA-CDI vs. Scientology Federal Copyright case), PI Griffin paid these two $300 to set up a website that was later promoted by Amidon, Ingram, Lubow and upon information and belief, the three Edwards & Angell attorneys to solicit "clients" to sue PLA-CDI and to try to pressure PLA-CDI into complying with the will of Scientology with regard to the intellectual property under its control belonging to the Dane Estate.

[12] Scientology clearly, from just the reports obtainable in newspapers would "know" fare more than 10 Attorneys. That likely fact would make the final probability calculation even lower, but the number "10" is an easy one to think with.

FORENSIC PROBABILITY ANALYSIS CONCERNING THE SCIENTOLOGY-INCITED CONSPIRACY AGAINST PLA-CDI
COMPUTED & VERIFIED BY FORENSIC STATISTICIAN

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Peter Letterese and
Creative Desperation Inc. a Fla Corp.

### DEFENDANTS
Church of Scientology International Inc
et al

**(b)** County of Residence of First Listed Plaintiff    Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Broward
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Charles D. Franken PA
8181 West Broward Blvd # 360
Plantation Fl 33324
954 476 7200

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI-DADE  ☐ MONROE  ☒ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE
HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

*0:08 CN 61109-WJZ-155*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO          b) Related Cases ☐ YES ☐ NO

JUDGE                                              DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

18 USCA 1962 Federal Rico claims  pattern of criminal activity
interstate commerce involving bribery, financial fraud,
obstruction of justice, witness tampering

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
s/

DATE  7-15-08

FOR OFFICE USE ONLY
AMOUNT _____   RECEIPT # 3/8477   IFP