UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CIV-61109/ZLOCH-SNOW

PETER LETTERESE, individually and
CREATIVE DESPERATION, INC., (CDI)
a Florida corporation, f/k/a PETER
LETTERESE & ASSOCIATES, INC.,
(PL&A),

      Plaintiffs.

v.

THE CHURCH OF SCIENTOLOGY
INTERNATIONAL, INC. (CSI),
SCIENTOLOGY OFFICE OF SPECIAL
AFFAIRS INTERNATIONAL, 3200 DOE
SCIENTOLOGY COPYRIGHT CASE
DEFENDANTS, TOM CRUISE SIMEON
DANIEL BRIER, ROBERT BRUCE
AMIDON, JOHN ARRASTIA, EDWARDS
ANGELL PALMER & DODGE LLP, SCOTT
BRODY, DAVID CORNELL, DANIEL D.
DASHMAN, LISA DASHMAN, WILLIAM
HART, MIKE ELLIS, HOWARD FARRAN,
ANNE MARIE GRIFFIN, STEVEN
SAMILOW, WILLIAM RICHARD
HOWARD, EUGENE M. INGRAM, SCOTT
INKS, HELENA KEMPNER KOBRIN,
MOXON & KOBRIN, DAVID LUBOW a/k/a
DAVID LEBEAU, EUGENE INGRAM,
MICHAEL MAROON, IAN MCSHANE,
THOMAS MEEKS, DAVID MISCAVAGE,
MICHAEL NACHWALTER, MICHAEL
MIDDLETON, KENDRICK LICHTY
MOXON, AVA PAQUETTE, DOUGLAS
NESS, FLORA NESS, CRAIG J. RYAN,
MARC SCHWARTZ, NORMAN F.
TAYLOR, ANTOINETTE
THEODOSSAKOS, GARY WOODFIELD,
BRIDGE PUBLICATIONS, MARILYN
PISANI, CHURCH OF SCIENTOLOGY
FLAG SERVICE ORGANIZATION, INC.,

**MOTION TO DISMISS
OF DEFENDANTS CHURCH OF
SCIENTOLOGY INTERNATIONAL AND
BRIDGE PUBLICATIONS**

CHURCH OF SCIENTOLOGY
INTERNATIONAL, INC., CHURCH OF
SCIENTOLOGY, MISSION OF FORT
LAUDERDALE, INC., CHURCH OF
SCIENTOLOGY OF FLORIDA, INC,,
CHURCH OF SPIRITUAL TECHNOLOGY,
INC., DENTALTOWN.COM LLC,
ECONOMIC RESEARCH GROUP
FLORIDA, ECONOMIC RESEARCH
GROUP INC. NY, STEVEN SAMILOW,
DAVID SCHINDLER, JIM SCHULTZ,
GARY SOTER, AMERICAN
ARBITRATION ASSOCIATION, INSTANT
DATA RESEARCH, INC., SCIENTOLOGY
MISSIONS INTERNATIONAL, INC.,
WORLD INSTITUTE OF SCIENTOLOGY
ENTERPRISES INC., GOOGLE,
PROSKAUER ROSE, YAHOO,
ZUCKERMAN SPAEDER, LATHAM &
WATKINS, LLP.

    Defendants.
_____/

        Defendants   Church   of   Scientology   International   ("CSI")   and   Bridge   Publications

("Bridge"), pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the Complaint

because it fails to state any cause of action upon which relief can be granted.

        The victims of this case are, among others, CSI and Bridge (collectively, "Movants"),

which have been forced to retain counsel to address frivolous claims that can only have been

intended for purposes of publicity and harassment.  For these reasons and because there is no

manner in which the Complaint can be amended to cure its failings, it should be dismissed with

prejudice.[1]

_____

[1]   CSI and Bridge recognize that in accordance with law, the Court will accept well-pled
allegations.  CSI and Bridge do not therefore make any effort to refute the numerous ridiculous
and false allegations set forth in the Complaint, although those assertions are denied.  CSI and
Bridge separately will seek sanctions for their inclusion in the Complaint.

## The Instant Complaint

By their own admission Plaintiffs Peter Letterese and his company, Creative Desperation, Inc., formerly known as Peter Letterese & Associates, Inc. ("CDI") have spent the better part of the past five years suing Movants and other defendants in the instant case based on variations of the same allegations made in the Complaint. *See* Compl., ¶¶ 15, 53, 54, 55. The claim that CSI and Bridge owe millions of dollars based on the use of a book regarding sales techniques was most recently considered by the Eleventh Circuit Court of Appeals in *Peter Letterese & Associates, Inc. v. World Institute of Scientology Enterprises*, 533 F.3d 1287 (11th Cir., July 8, 2008). On the heels of various lawsuits for damages—alleging interference with contractual rights in 2003, a declaratory judgment action in 2004, and a copyright infringement action also in 2004, *see* Compl. ¶¶ 44, 53, 54, 55—Letterese and CDI have now recycled these claims into the instant civil action.

In this newly minted attack, claims are made for damages under every single provision of RICO (18 U.S.C. § 1962), for defamation, for conspiracy to defame, for another freestanding "conspiracy," for breach of contract, and for abuse of process. Letterese and CDI allege that a vast conspiracy exists among individuals and entities drawn from every part of Peter Letterese's life, who have now allied together to cause their current bankruptcies and wrest away control of their intellectual property. They demand $250 million dollars in compensation. Compl. ¶ 2.

Letterese and CDI posit that a group of institutions, including—though it is not clear quite how—the present Movants, collectively constitute what they term an "International Scientology Crime Syndicate" ("Syndicate"). Compl., ¶ 2. This Syndicate, along with 3,238 individual co-conspirators, are allegedly acting in concert against the Plaintiff in a fourteen-year, ten-phase, coordinated campaign. Compl. at 2 & ¶¶ 2, 6. This conspiracy ostensibly includes not only CSI and Bridge but the American Arbitration Association, prominent lawyers and their

firms, Tom Cruise, Google, Yahoo!, CDI's former employees, undersigned counsel, various members of the dental industry, a competitor of Plaintiffs in the dental industry known as Dentaltown.com LLC, and David Cornell, a former client of Letterese and resident of Toronto who purportedly wrote defamatory material about Letterese and CDI in the Canadian Dental Journal.  Compl. at 18 n.9 & ¶¶ 73, 85, 87, 93, 97, 107.

According to the Plaintiffs, the purpose of each participant in this vast conspiracy is to destroy his business in order to seize rights in a book of sales techniques and avoid paying royalties for its use.  Compl., ¶¶ 5-7, 37-40, 63.  Although Plaintiffs fail to describe the specific involvement of Movants CSI and Bridge, they generally allege that all of the defendants have acted against them—mostly through various agents—in the following ways: defamation [Compl., ¶¶ 10, 31, 48, 54, 55, 56, 57, 59, 137, 139, 142, 145, 155, 157, 158, 159, 163, 172]; false statements [Compl., ¶¶ 27, 30]; setting up websites [Compl., ¶55, 62, 144]; unsuccessfully attempting to induce Letterese to act against the interests of his copyright licensor [Compl., ¶ 29]; "seducing courts to ignore or misinterpret evidence" [Compl., ¶¶ 25, 30, 31]; harassing the Plaintiffs in litigation (litigation initiated by Plaintiffs themselves) [Compl., ¶¶ 15, 32, 149]; interference with their business relationships [Compl., ¶¶ 52, 54, 62, 133, 134, 135, 166, 169, 170]; unspecified breaches of an agreement that was the subject of a declaratory judgment action filed by Plaintiffs in California in 2004) [Compl., ¶¶ 54, 141];[2] and general dirty tricks [Compl., ¶ 25].

---

[2] CSI's attorney allegedly signed an agreement with Letterese in a contract case in 2003 that Letterese contends prohibited public comment about him.  Plaintiffs allege, however, that CSI's attorney fraudulently stated that the contract was binding on various defendants in that lawsuit. ¶53.  Questions regarding this purported provision's constitutionality under the First Amendment are beyond the scope of this motion.  Letterese claims he filed a declaratory judgment action in 2004 in California to determine the breadth of the standstill agreement, *see* Compl. ¶54, but has neglected to plead the outcome of that action.

Plaintiffs' Complaint constitutes nothing more than a shotgun pleading that wastes the time and resources of the defendants and this Court.  In particular, it fails to state a RICO claim on which relief can be granted because (1) the claim is barred by the statute of limitations, (2) a criminal "enterprise" is not adequately pleaded; (3) acts of racketeering are not pleaded with the necessary particularity and predicates, and (4) there are inadequate assertions of damages proximately caused by a violation of RICO sufficient to give the Plaintiffs standing.  In addition, Plaintiffs' state law claims also fail to state causes of action and should be dismissed with prejudice.

## I.      The Complaint Is an Impermissible "Shotgun Pleading."

In an attempt to obscure the fact that their claims are utterly without merit, Letterese and CDI have submitted an everything-including-the-kitchen-sink pleading consisting of 81 pages of allegations, almost all of which are directed to every single one of the putative 3000-plus defendants.  Rather than explain any individual defendant's role in the alleged conspiracy, Plaintiffs instead lump almost all of the various defendants, including presumably the instant Movants, under their catchall rubric of the "International Scientology Crime Syndicate." Through use of this label they avoid precision, accusing all defendants collectively of acting through various agents to harm them.  Plaintiffs make it impossible to ascertain what they are alleging CSI or Bridge individually did, instead relying on attenuated and conclusory allegations like the following:

> Defendant Craig Ryan, a covert agent for THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE posted a defamatory and false alert on DentalTown.com (the primary internet site in the dental field where Plaintiffs have operated dating back to 1989) referred readers to a "dentistry alert" website that "Cartmier" a/k/a Craig Ryan claimed to have "found" (which in fact, he conspired along with other defendants to promote, so as to financially and reputation destroy Plaintiffs) . . .

And as a result of these false, false light and intended-to-destroy plaintiffs' misrepresentations about the Plaintiffs' operations in the Dental field and the character of its CEO and Founder allegations in this internet site Plaintiffs were damaged . . . [Compl. ¶ 55].

\*

In the summer of 2004 Defendant THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE through Defendant Syndicate, conspired with and used, private investigators Thomas Griffin (deceased as of Nov 2004) via Ryan Samuel Bonset (a/k/a Sam Bonset) and Defendant William Richard Howard (a/k/a Dick Howard) to set up the aforementioned website having, over time multiple Internet domain names, always including the words "Dentistry Alert." [Compl. ¶ 56].

\*

Defendant Syndicate induced Lisa Dashman (a former member of Defendant Syndicate's Guardian Office), to be employed by Plaintiff PLA so as to be able to undermine and infiltrate it. Upon information and belief activities of Defendants Dashman are continuing to date.  [Compl. ¶ 127].

\*

In January 2004-September 2005, the International Crime Syndicate approached four Plaintiffs PLA clients to wit, Brody, Schwartz, Ness, and Baldwin as well as Richard Clear who was a vendor of Plaintiff PLA and tried additionally to induce others to sue Plaintiffs claiming that Plaintiffs had breached their contract with its clients and vendors.  Although not related to THE BOOK or to operations of Scientology, the actions were calculated by Defendant Syndicate to bankrupt Plaintiffs.  [Compl. ¶ 135].

\*

Defendants Simon Brier and Antoinette Theodossakos, attorneys with Defendant Edwards & Angell Law Firm at the request of THE INTERNATIONAL SCIENTOLOGY CRIME SYNDICATE and/or its agents have worked with their clients Defendants Ness, Schwartz, Brody and Clear and with Defendants American Arbitration Association and various arbitrators to pursue bogus claims against Plaintiffs.  [Compl. ¶ 140].

Plaintiffs' few references to CSI and Bridge by name are similarly attenuated and conclusory.

Moreover, by their own admission, most of their allegations against CSI and Bridge were the

subjects of previous lawsuits that Letterese or CDI brought against them.  For example, in ¶¶ 141-42 of the complaint, Plaintiffs allege that:

> CSI & Bridge . . . through their attorneys purported to agree, that Defendants CSI & Bridge would make no public comment against Plaintiffs and that Defendants CSI & Bridge would not approach the Les Dane Family, to wit, a STANDSTILL AGREEMENT. Yet as this "promise and agreement" was being made, Defendant Syndicate & Co-Conspirators redoubled a MASSIVE DEFAMATION CAMPAIGN across the United State and on the Internet against Plaintiffs.

Compl, ¶ 53. *Cf.* Compl., ¶ 54 (alleging that Letterese filed suit regarding the standstill agreement).

As the Eleventh Circuit has explained:

> [The framers of the Rules of Civil Procedure] assumed that complaints would be drafted as clearly and definitively as possible, so that the defendant could understand the cause(s) of action the plaintiff was asserting and frame a responsive pleading, and the district court, having a clear and definitive response before it, could recognize the parties' claims and defenses, identify the issues of fact to be litigated, and proceed to a just result.  The framers also assumed that the lawyers appearing before the district courts would adhere to the standards of professional responsibility and conduct, and that, as officers of the court, would be aware that the federal courts constitute a scarce resource for resolving disputes and that their failure to adhere to these standards would likely yield countless untoward, and totally unacceptable, consequences.

*Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 979 (11th Cir. 2008).  The Complaint manifests a blatant disregard for these principles.  The Eleventh Circuit has recognized that "[Plaintiffs] file shotgun complaints to extort the settlement of unmeritorious claims."  *Byrne v. Nezhat*, 261 F.3d 1075, 1101 (11th Cir. 2001).  Such complaints can also be used as part of a campaign of harassment against defendants.  *See Davis v. Kvalheim*, No. 07-12754, 261 Fed. Appx. 231, 234-35 (11th Cir. Jan. 8, 2008) (approving district court's *sua sponte* dismissal of a 140-page "complaint against the world" as frivolous because the district court determined the

"allegations were clearly baseless and without arguable merit in fact, and [plaintiff] is simply employing 'the legal system as a tool to intimidate and heckle those he imagines have done him wrong'").  In circumstances as egregious as these, this is alone sufficient reason to dismiss the present Complaint.

### II.     Plaintiffs' RICO Claim Fails as a Matter of Law.

The Complaint's chief counts purport to state claims under 18 U.S.C. §§ 1962(a)-(d), but none states a claim for relief under RICO.

### A. Plaintiffs' Claims are Barred by RICO's Four Year Statue of Limitations.

By their own admission, the vast conspiracy that Letterese and CDI assert had already come into being well before July of 2004.  Compl., ¶¶ 15, 41, 51, 120-143 (alleging that the conspiracy began in 1994 and continued in force through 2003).  Plaintiffs are thus barred by the four year statute of limitations on civil RICO claims.  *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156-57 (1987); *DirecTV, Inc. v. Wright*, 350 F. Supp. 2d 1048, 1055 (N.D. Ga. 2004). Moreover, none of the acts Plaintiffs allege occurred after July of 2004[3] constitute predicate acts under RICO.

### B. Plaintiffs' Allegations are Insufficient to Show RICO Standing.

18 U.S.C. § 1964 establishes four fundamental RICO standing requirements: (1) a person, (2) who has sustained an injury, (3) to his business or property, (4) by reason of a violation of § 1962.  The last of these requirements demands a direct causal relationship between the RICO

---

[3] The only acts Plaintiffs allege after July of 2004 are postings of an unknown type on dental websites [Compl., ¶ 151], a letter mailed by Norman Taylor to the California Attorney General stating that CDI was violating the law [Compl., ¶ 154], unspecified defamations [Compl., ¶¶ 155-159, 163], and claims that certain defendants refused to engage in arbitration and then decided to engage in arbitration and planned lawsuits [Compl., ¶¶ 160-61].

violation and the injury. *See Ward v. Nierlich*, No. 99-14227-CIV, 2008 WL 852789 (S.D. Fla. Mar. 28, 2008) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (1991)).  *See also Corporate Healthcare Fin. v. BCI Holdings*, 444 F.Supp.2d 423, 433 (D. Md. 2006) (holding that proximate causation is a part of the RICO standing inquiry).  The Supreme Court has made it clear that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza*, 547 U.S. at 460.

In this case, Plaintiffs allege in a conclusory fashion that "as a proximate result of the Defendants' unlawful pattern of illegal conduct as described above, Plaintiffs have been injured in their business or property as described above." Compl. ¶ 211-212; *cf. id.*, ¶ 192.  Plaintiffs have failed to allege with any specificity that any act cognizable as a violation of RICO directly caused them any specific injury.  Plaintiffs' pleadings regarding their general financial problems, including their current bankruptcies, also fail to meet that requirement.

### C. Plaintiffs Fail to State a Claim under 18 U.S.C. § 1962(c).

RICO plaintiffs must show (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity that (4) results in an injury to business or property, and (5) that such injury occurred "by reason of" the substantive RICO violation.  *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006).

1)  Plaintiffs' Allegations of a RICO "Enterprise" Fail.

In *United States v. Turkette*, 452 U.S. 576 (1981), the United States Supreme Court explained that to prevail on a RICO claim, one must prove the existence of an "enterprise" separate from the alleged "pattern of racketeering activity."  The Court defined an enterprise as "an entity, for present purposes a group of persons associated together for a common purpose of

engaging in a course of conduct." *Id.* at 583.  To prove the existence of an enterprise, a party must show evidence of "an ongoing organization, formal or informal," and that "the various associates function as a continuing unit." *Id.*  Moreover, the enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Id.*  In effect, as noted later by this Court, the enterprise "must have a structure and goals separate from the predicate acts alleged." *Ageloff v. Kiley*, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004).

The Complaint incorporates a graphic on page 30 and text boxes on pages 58-61 which group literally thousands of defendants in various ways, including into four different groups labeled "Alpha, Beta, Gamma or Delta Enterprises."  Nowhere in the pleadings, however, do Plaintiffs elucidate how or if particular individuals or organizations are connected and why they have been placed into a particular box.  Without any demonstration that the enterprises have an "ongoing organization, formal or informal," and that the "various associates function as a continuing unit," and finally that the enterprises constitute entities "separate and apart from the pattern of activity in which [they] engage," Plaintiffs fail to state a claim for relief.

Indeed, Plaintiffs' sole method of providing any link between their disparate allegations against thousands of different individuals and institutions is by claiming that a "Forensic Probability Analysis" was conducted.  This farcical "Analysis," attached to the complaint as Exhibit A, was purportedly prepared by "a professional Forensic Statistician" [*sic*].  Compl., ¶¶ 12-14.  No such person is named, no letterhead appears on the document, and the alleged analysis piles inference upon inference in a way no real statistician would dare to present to a court, in order to arrive at its pre-determined, ridiculous conclusion.[4]

---

[4] In *Greenberg v. Hilton Int'l Co.,* 870 F.2d 926, 938-39 (2d Cir. 1989), sanctions against a plaintiff's attorney were approved where the attorney misrepresented that expert statisticians would analyze defense data, whereas in reality no experts were retained and no analysis

Even, however, assuming *arguendo* that this preposterous "Analysis" serves as an allegation that real-world links exist between defendants' actions, Plaintiffs still fail to meet the requirements set forth by the Supreme Court. *Turkette* demands "ongoing organization, formal or informal," that the "various associates function as a continuing unit," and finally that the enterprise constitutes entities "separate and apart from the pattern of activity in which it engages." The "Analysis" does not provide evidence of the existence of any enterprise – much less four enterprises – meeting these requirements.

2) Plaintiffs Fail to Plead with Particularity Predicate Acts of Racketeering Activity.

Plaintiffs' allegations of criminal violations claimed to be predicate acts for the racketeering allegation are bare statements that are not tied to facts. Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Civil RICO claims must be pled with the specificity required by Rule 9(b) and must include "the time, place and person responsible" for each alleged act. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1380-81 (11th Cir. 1997). *See also Ageloff v. Kiley*, 318 F. Supp.2d 1157, 1159 (S.D. Fla. 2004). *Cf. Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (holding that a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and that "[f]actual allegations must be enough to raise the right to relief above the speculative level, on the assumption that all the allegations in the complaint are true"); *South Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting that "conclusory allegations and unwarranted deductions of fact are not admitted as true

---

performed. Plaintiffs' "Analysis," is, on information and belief, simply the work of Peter Letterese himself, and their suggestion that it was professionally prepared, false.

in a motion to dismiss."). The purpose of this requirement is to place each defendant on notice of the claims against him.

Plaintiffs' allegations lack any particularity and instead are conclusory statements not tied to specific facts. *See, e.g.*, Compl., ¶ 193 ("pleading" a string citation of 18 U.S.C. § 201, § 659, § 1344, § 1503, § 1513, § 1951, § 1952, and § 1957 in a single sentence); ¶ 194 (alleging use of mail to send "contracts, instructions, correspondence and others" [*sic*] as predicate act violating 18 U.S.C. § 1341); ¶ 195 (alleging transmission of same by wire as predicate act violating 18 U.S.C. § 1343). This conspicuous lack of particularity is fatal to a RICO claim, as shown, *e.g.,* in Local Rule 12.1 of this district, which was modeled on § 41.54 of the Manual for Complex Litigation, Third (1995). *See* 1998 Committee Note to Local Rule 12.1.

Although Letterese and CDI pepper the Complaint with various allegations of acts by "the Syndicate" against them, none of these allegations are sufficient to support the bare assertions of criminal activity they set forth in ¶¶ 193-95. For example, with respect to their allegations of mail and wire fraud, the Eleventh Circuit has held that when a plaintiff brings a civil RICO claim predicated on mail or wire fraud, he must prove that he was the target of a defendant's scheme to defraud and that *he relied* to his detriment on the misrepresentations made in furtherance of that scheme. *See Sikes v. Teleline Inc.*, 281 F.3d 1360, 1360 (11th Cir. 2002); *Nicor Intern Corp. v. El Paso Corp.*, 318 F. Supp. 2d 1160, 1171 (S.D. Fla. 2004). Moreover, a plaintiff lacks standing to assert a mail or wire fraud claim based on misrepresentations directed toward another person or entity. *Byrne v. Nezhat*, 261 F.3d 1075, 1110 (11th Cir. 2001). Plaintiffs' allegations of mail and wire fraud clearly fail because Letterese and CDI do not allege that they themselves, or either of them, relied on any misrepresentations connected to a mailed or wired communication.

Particularly baseless is the only specific allegation that Plaintiffs actually label as "mail fraud" in ¶ 196, in which they contend that a letter that defendant Norman Taylor sent to the California Attorney General constituted mail fraud.  *Cf.* Compl., ¶¶ 154, 171, 166.  This allegation, as well as all the others in this Complaint, clearly fails to present a cognizable claim of either mail or wire fraud.[5]

Each of the other statutes cited by Plaintiffs in ¶¶ 193-95 are similarly unsupported by any factual allegation in the complaint.  Letterese and CDI fail to allege any facts to support Bribery of Public Officials and Witnesses under 18 U.S.C. § 201 (under this statute, bribery can only be committed by corruptly giving, offering or promising anything of value to influence *official* action); theft from interstate shipment under 18 U.S.C. § 659 (relating to unlawfully obtaining items from common carriers or from places of interstate shipment, such as  from "any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility"); or financial institution fraud under 18 U.S.C. § 1344; any crime under 18 U.S.C. § 1503 (improperly influencing or injuring an officer of the court or juror); or retaliating against a witness under 18 U.S.C. § 1513 (killing or causing bodily injury or property damage to a witness with retaliatory intent);[6] or interference with commerce by threat or violence under 18 U.S.C. § 1951; racketeering under 18 U.S.C. § 1952 (traveling or using the mails with the intent to distribute the

---

[5] The act of sending a complaint to a government agency is also subject to the California litigation privilege. *Passman v. Torkan*, 34 Cal. App. 4th 607, 616, 40 Cal. Rptr. 2d 291 (1995) (letter to district attorney accusing person of crimes absolutely privileged under Cal. Civil Code § 47(b)(3) as a publication in an official proceeding authorized by law).

[6] This is not the first time Plaintiffs have asserted witness tampering against these Defendants. As noted in the Eleventh Circuit's recent decision in *Peter Letterese & Assocs., Inc. v World Institute of Scientology Enterprises*, 533 F.3d 1287 (11th Cir., July 8, 2008), of which this Court can take judicial notice, Plaintiffs made similar unsupported allegations in that case.

proceeds of or promote in some other way gambling, narcotics or prostitution, extortion, bribery or arson or with the intent to commit a crime of violence); or engaging in a monetary transaction derived from specified   unlawful activity under 18 U.S.C. § 1957 (forbidding monetary transactions using proceeds derived from serious crimes such as drug trafficking, murder, kidnapping, robbery, extortion, arson, fraud against a foreign bank, bribery, stealing public funds, trafficking in persons, trafficking in munitions, etc.).

There are no facts in the Complaint to support an understanding that either CSI or Bridge violated any of the above statutes.  A comparison of the factual allegations in the Complaint with the above statutes that Plaintiffs claim CSI and Bridge violated demonstrates the frivolity of this pleading.  The only conclusion that can be drawn from it is that its drafter lacked any basis to believe that it could prevail on these charges and simply filed this complaint for purposes of publicity and harassment, or (or perhaps also) lacked even a basic understanding of the RICO Act.[7]  It is possible that CDI simply needed to create "assets" to justify the filing of a Chapter 11 case in which no other assets are listed.  *In re Creative Desperation, Inc.*, Case No. 08-19067-JKO  (Bankr. S.D. Fla.).

Finally, a major component of this pastiche of conclusory assertions of misconduct in the complaint concerns so-called "defamation."  Compl., ¶¶ 10, 31, 48, 54, 55, 56, 57, 59, 137, 139, 142, 145, 155, 157, 158, 159, 163, 172.  Indeed, the Complaint claims "the largest single covert defamation plot possibly in the history of the Internet."  Compl., ¶ 10.  Hyperbole aside, defamation is not mail or wire fraud, nor is it any other predicate act for civil claims under 18 U.S.C. § 1961 *et seq.  See In re American Express Company Shareholder Litig.*, 39 F.3d 395,

---

[7] It is telling that Letterese changed the titles of the above statutes in the complaint to mask their total inapplicability to this case (i.e. changing "Bribery of Public Officials and Witnesses" to "Bribery" and changing "Influencing or Injuring Officer or Juror" to "obstruction of justice").

399 n.2 (2d Cir. 1994); *Lathrop v. Juneau & Assocs., Inc.*, No. 03-CV-0194-DRH, 2005 WL 3797706, \*7 (S.D. Ill. April 25, 2005); *DIRECTV, Inc. v. Cavanaugh*, 321 F. Supp. 2d 825, 839 (E.D. Mich. 2003); *Chovanes v. Thoroughbred Racing Ass'n*, No. CIV. A. 99-185, 2001 WL 43780, \*9 (E.D. Pa. Jan. 18, 2001) (pointing out that defamation is not fraud); *Contes v. City of New York*, No. 99 Civ. 1597(SAS), 1999 WL 500140, \*8 (S.D.N.Y July 14, 1999).  The statutory list of offenses that may serve as predicate acts for civil RICO claims is exclusive, and Plaintiffs' attempts to allege additional offenses that do not fall within the RICO statute cannot save his claim.  *See Harvey v. Harvey*, 931 F. Supp. 127, 130 (D. Conn. 1996).

### D. Plaintiffs Fail to State a Claim Under the Other Provisions of RICO, 18 U.S.C. §§ 1962(a), (b) and (d).

RICO sections 1962 (a) and (b) are more rarely used provisions of the Act.  This is because to demonstrate a violation of either these sections, a plaintiff must show either that he was injured resulting specifically from the investment of income derived from racketeering activity or that he suffered injury arising specifically from a defendant's acquisition of an interest or control of an enterprise through a pattern of racketeering activity, respectively.  *See Smart Science Labs., Inc. v. Promotional Mktg*, No. 8:07-cv-1554-T-24 EAJ, 2008 WL 2790219, \*6 (M.D. Fla. July 18, 2008) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000)).  *See also, Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 584-90 (5th Cir. 1992); *Danielson v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990); *Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990); *Rose v. Bartle*, 871 F.2d 331, 357-58 (3d Cir. 1989); *Grider v. Texas Oil & Gas Co.*, 868 F.2d 1147, 1150-51 (10th Cir. 1989).

Plaintiffs' allegations in this case support neither of these two scenarios.  Compl., ¶ 203, 205 (alleging that each defendant has violated this subsection by "attempt[ing] collection based

upon fraudulent representations and a fraudulently obtained Judgments [*sic*] in the State of California and Florida" [*sic*]).  Because their allegations are insufficient to support a claim under either subsection, these claims must fail.

It follows, then, that Letterese and CDI cannot maintain a RICO conspiracy claim under 18 U.S.C. § 1962(d) because they have failed to allege any underlying wrongful predicate act. *See Nicor Intern Corp.*, 318 F. Supp. 2d at 1173.

### III. Plaintiffs' Claims Relating to the Defense of Previous Litigation Fail to State a Claim for Relief Because Defendants Were Privileged to Defend Themselves.

Plaintiffs have made various claims relating to the defense of the copyright litigation and other litigation they have initiated against the defendants.  These allegations fail to state a claim for relief because the defendants in those cases were privileged to defend themselves.  The Supreme Court of Florida has held:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639, So. 2d 606, 608 (Fla. 1994); *see also American Nat. Title and Escrow of Florida, Inc. v. Guarantee Title & Escrow of Florida*, 7489 So. 2d 1054, 1056 (Fla. 4th DCA 1999) ("The essence of *Levin* was its extension of absolute immunity to acts taken during the proceedings, not just statements made therein."); *Chapman v. Department of Health and Rehabilitative Servs.*,

517 So. 2d 104, 106 (Fla. 3d DCA 1987) ("We cannot hold that a litigant and a lawyer may be liable to their adversary for winning the case.").

Plaintiffs' claims are particularly inappropriate in light of the fact that they themselves initiated the litigations in question.

### IV. Plaintiffs' Additional State Law Claims Also Fail to State a Cause of Action and Should be Dismissed.

In light of the fact that the RICO claims fail, Plaintiffs' state law claims constitute state law claims for which a federal district court would not otherwise possess jurisdiction.  Under 28 U.S.C. § 1367, a district court may in its discretion retain or decline jurisdiction where the court has dismissed all claims over which it has original jurisdiction, such as the RICO claims in this case.  In the instant case, it would also be appropriate for this Court to exercise its supplemental jurisdiction to dismiss the state law claims with prejudice as well, since Plaintiffs have manifestly failed to state any claim under Florida law.

### A. Defamation and Conspiracy to Defame,

Under Florida Statutes § 95.11(4)(g), the statute of limitations for defamation is two years. None of the allegedly defamatory acts alleged by Plaintiffs occurred within two years of the filing of this action.  The defamation claim also fails for lack of specificity, in that most of the "defamatory statements" alleged fail to identify either the content of the statement, the purported speaker, or the time the statement was made.  In addition, in the instances where Plaintiffs have actually identified the content of the statement, such as in ¶ 59 in which they contend Peter Letterese was described as a "scumbag" in a posting on the internet, statements of opinion cannot give rise to a claim of defamation.  *DeMoya v. Walsh*, 441 So.2d 1120 (3d DCA 1983) (calling co-worker "raving maniac" and "raving idiot" in front of others was personally insulting, but was "pure opinion" and not defamation).

Because Plaintiffs' claim of defamation fails, their claim of conspiracy to defame must also fail.

### B. Independent Tort of Conspiracy.

Plaintiffs' claim for the independent tort of conspiracy cannot stand because they have failed to plead with specificity any "peculiar power" that would give state a claim for "conspiracy" without an underlying crime.   *See Liappas v. Augoustis*, 47 So.2d 582, 583 (Fla. 1950).   Indeed, the only cases in Florida where this type of action has been permitted to proceed is joint action by a group of employers to deny jobs to employees with specialized, relatively non-portable skills.   No such similar "power" has been alleged to exist between Bridge, CSI, the American Arbitration Association, Google, Yahoo!, etc.   Moreover, Plaintiffs have not pled that either was seeking and denied employment by any of the defendants.   Moreover, to the extent actions occurred solely in California, such as the lawsuits that Plaintiffs brought in Los Angeles Superior Court against Movants, they would be governed by California law.   California's supreme court has ruled that there is no independent tort of conspiracy.  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994).

### C. Breach of Contract.

By Plaintiffs' own admission in ¶ 54 of the complaint, the breach of contract claim was the subject of a previous lawsuit in 2004 in a court in California.[8]  Moreover, Letterese and CDI have failed to allege any factual allegations with respect to this claim. Perhaps most significantly, this claim is moot, considering that the Complaint alleges that the standstill agreement was dated February 24, 2004, and was for one year.  (¶ 53.)  Therefore, even if Plaintiffs had not failed altogether to state a claim, there would be no subject matter jurisdiction over it.  *See*

---

[8]  Notably, it is also the subject of two claims included in *Creative Desperation, Inc. v. Moxon*, Case No. 08-CV-60984-CIV-Ungaro-Simonton (S.D. Fla.), which was filed two weeks before the instant Complaint.

*International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 612 v. Deaton Truck Line, Inc.*, 307 F.2d 748, 749 (5th Cir. 1962) and cases cited therein (claim on an expired contract must be dismissed as it is moot and does not create a case or controversy). Consequently, this claim must fail.

### D. Abuse of Process

This claim cannot stand for multiple reasons. First, in support of it, Letterese and CDI claim that defendants "notwithstanding the fact that not all entities were put in the settlement agreement attempted to use the settlement agreement to obtain a judgment against Plaintiff, which was a fraud upon the court." Compl., ¶ 272. The Complaint goes on to allege that "the pursuit of legal process to enforce a fraudulent procured [*sic*] judgment is an abuse of process since the proceeding was performed for the ulterior motive of securing a financial advantage and not a proper legal proceeding in the Courts and acted as a fraud upon the Court." All bare allegations of fraud aside, in sum, Plaintiffs appear to be arguing that the defendants somehow were able to use the settlement agreement in a prior lawsuit to obtain a judgment against Letterese or CDI, and then subsequently attempted to use the courts to enforce that judgment.

There is no abuse of process when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or harassment or an ulterior purpose. *See Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. 3d DCA 1989); *Thomson McKinnon Securities, Inc. v. Light*, 534 So. 2d 757, 760 (Fla. 3d DCA 1988). The proper purpose of a lawsuit is to obtain a final judgment on a dispute. Plaintiffs' allegations thus fail to state a claim for abuse of process.

Additional reasons why the Complaint fails to state a claim for abuse of process include the failure to allege any facts in support of this argument, and the failure to allege any damages as a result of any abuse. For all these reasons, the allegation fails.

CASE NO. 08-CIV-61109

## CONCLUSION

Based on the foregoing, the Complaint has no basis in the law and accordingly be dismissed with prejudice.

**Dated August 26, 2008.**

Respectfully submitted,

*s/. Helena K. Kobrin*
Helena K. Kobrin (0259713)
HKKOBRIN@aol.com
**MOXON & KOBRIN**
3055 Wilshire Blvd., Suite 900
Los Angeles, California 90010
Telephone: (213) 487-4468
Facsimile: (213) 487-5385

*s/. Thomas Meeks*
Thomas Meeks
Fla. Bar No. 314323
Matthew Davidson
Fla. Bar No. 713821
Jessica Z. Wallace
Fla. Bar No. 956171
e-mail: tmeeks@carltonfields.com
e-mail: mdavidson@carltonfields.com
e-mail: jwallace@carltonfields.com
**CARLTON FIELDS, P.A.**
4000 International Place
100 S.E. Second Street
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Defendants Church of Scientology International and Bridge Publications*

CASE NO. 08-CIV-61109

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2008 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/. *Thomas Meeks*
Thomas Meeks

## SERVICE LIST
### CASE NO. 08-CIV-61109/ZLOCH-SNOW

Charles D. Franken
**Charles D. Franken, P.A.**
8181 W. Broward Boulevard
Suite # 360
Plantation, FL 33324
*Attorney for Plaintiffs*
(via Notice of Electronic Filing)