UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CIV-61109/ZLOCH-SNOW

PETER LETTERESE, individually and
CREATIVE DESPERATION, INC., (CDI)
a Florida corporation, f/k/a PETER
LETTERESE & ASSOCIATES, INC.,
(PL&A),

    Plaintiffs.

v.

THE CHURCH OF SCIENTOLOGY
INTERNATIONAL, INC. (CSI),
SCIENTOLOGY OFFICE OF SPECIAL
AFFAIRS INTERNATIONAL, 3200 DOE
SCIENTOLOGY COPYRIGHT CASE
DEFENDANTS, TOM CRUISE SIMEON
DANIEL BRIER, ROBERT BRUCE
AMIDON, JOHN ARRASTIA, EDWARDS
ANGELL PALMER & DODGE LLP, SCOTT
BRODY, DAVID CORNELL, DANIEL D.
DASHMAN, LISA DASHMAN, WILLIAM
HART, MIKE ELLIS, HOWARD FARRAN,
ANNE MARIE GRIFFIN, STEVEN
SAMILOW, WILLIAM RICHARD
HOWARD, EUGENE M. INGRAM, SCOTT
INKS, HELENA KEMPNER KOBRIN,
MOXON & KOBRIN, DAVID LUBOW a/k/a
DAVID LEBEAU, EUGENE INGRAM,
MICHAEL MAROON, IAN MCSHANE,
THOMAS MEEKS, DAVID MISCAVAGE,
MICHAEL NACHWALTER, MICHAEL
MIDDLETON, KENDRICK LICHTY
MOXON, AVA PAQUETTE, DOUGLAS
NESS, FLORA NESS, CRAIG J. RYAN,
MARC SCHWARTZ, NORMAN F.
TAYLOR, ANTOINETTE
THEODOSSAKOS, GARY WOODFIELD,
BRIDGE PUBLICATIONS, MARILYN
PISANI, CHURCH OF SCIENTOLOGY
FLAG SERVICE ORGANIZATION, INC.,

**MOTION OF DEFENDANTS CHURCH
OF SCIENTOLOGY INTERNATIONAL
AND BRIDGE PUBLICATIONS
FOR RULE 11 SANCTIONS
AND MEMORANDUM IN SUPPORT**

14012542.1

CHURCH OF SCIENTOLOGY
INTERNATIONAL, INC., CHURCH OF
SCIENTOLOGY, MISSION OF FORT
LAUDERDALE, INC., CHURCH OF
SCIENTOLOGY OF FLORIDA, INC,,
CHURCH OF SPIRITUAL TECHNOLOGY,
INC., DENTALTOWN.COM LLC,
ECONOMIC RESEARCH GROUP
FLORIDA, ECONOMIC RESEARCH
GROUP INC. NY, STEVEN SAMILOW,
DAVID SCHINDLER, JIM SCHULTZ,
GARY SOTER, AMERICAN
ARBITRATION ASSOCIATION, INSTANT
DATA RESEARCH, INC., SCIENTOLOGY
MISSIONS INTERNATIONAL, INC.,
WORLD INSTITUTE OF SCIENTOLOGY
ENTERPRISES INC., GOOGLE,
PROSKAUER ROSE, YAHOO,
ZUCKERMAN SPAEDER, LATHAM &
WATKINS, LLP.

      Defendants.
_____/

      Defendants Church of Scientology International ("CSI") and Bridge Publications, Inc. ("Bridge") move for the imposition of sanctions against plaintiffs Peter Letterese, his counsel Charles D. Franken, and Mr. Franken's former client Creative Desperation, Inc. under Rule 11 of the Federal Rules of Civil Procedure.

      In the long history of Rule 11 since its 1938 adoption, and especially since its emergence in 1983 as a useful tool for courts to control frivolous pleadings, few cases have doubtless flouted its provisions as much as the instant Complaint. The pleading is utterly without legal merit. It is presented for an improper purpose, it brings claims that are legally unwarranted, and its allegations and other factual contentions lack evidentiary support and are not likely to have any, all in violation of Rule 11.

14012542.1

Plaintiffs' counsel was served with the instant motion and memorandum[1] on August 26, 2008, along with a letter explaining the significance of the motion, the 21-day safe harbor provision and the opportunity to withdraw the Complaint to avoid the imposition of monetary sanctions. However, Plaintiffs and Mr. Franken have refused to withdraw the Complaint, necessitating the filing of this motion, and CSI and Bridge ("Movants") therefore seek monetary sanctions against Plaintiffs and Mr. Franken for their reasonable attorneys' fees and costs occasioned by the misconduct, plus such other sanctions as the Court may find are warranted under the circumstances.

## Prior Litigation

The history of court actions brought by Peter Letterese and his company against the Church of Scientology is important in this Rule 11 context. Whether the plaintiffs' actions are part of a pattern of activity, and whether they have engaged in similar conduct in other litigation, are meaningful concerns in the sanctions analysis that the rule requires. *See* Notes of Advisory Committee on 1993 Amendments to Rule 11.

The plaintiffs first asserted some of the claims they make in the instant case, those concerning their rights in a sales techniques book authored by Les Dane and alleged interference with those rights by Bridge, Moxon & Kobrin, Helena Kobrin, and others, in a lawsuit filed in 2000 in Los Angeles County Superior Court. (Exhibit 1.) As they now reassert in ¶ 50 of the instant complaint, plaintiffs claimed in California that there had been an attempt to interfere with Creative Desperation's[2] contract with the copyright holder. However, when a dispositive sanctions motion against plaintiffs was pending for failure to provide court-ordered discovery, the parties entered into an agreement for a one-year standstill of all litigation to allow for negotiation and resolution of all issues.

---

[1] The motion has been modified to take into account the appointment of a Chapter 7 trustee for the corporate plaintiff; no sanctions are sought against the trustee but only against the corporation, Mr. Letterese, and Mr. Franken.

[2] At the time, Peter Letterese & Associates was the plaintiff corporation's name, as it was in the copyright case before Judge Huck.

3

That standstill agreement was negotiated by defendant David Schindler of the defendant law firm Latham & Watkins.  Nevertheless, three months later a new lawsuit was filed in California against defendants Bridge, CSI, and World Institute of Scientology Enterprises founded on allegations similar to those in ¶¶ 53-54 of the instant complaint, attacking the standstill agreement to which plaintiffs had agreed. (Exhibit 2.)  Later, facing court orders that he and some of Les Dane's heirs appear for deposition, Peter Letterese dismissed that case rather than appear himself or allow the other deponents to testify.   Judgment was later entered for the defendants on their cross-complaints when Mr. Letterese refused to obey three court orders that he appear for deposition.  The court entered default as a sanction against the company and awarded CSI and Bridge $266,900.27 in fees and costs.

Another case was meanwhile filed in this district by the instant corporate plaintiff seeking relief under the Copyright Act and again echoing the claims of interference.  That case is styled *Peter Letterese & Associates, Inc. v. World Insitute of Scientology Enterprise, et al.* Case Number 04-61178-CIV-HUCK / O'SULLIVAN, and is briefly discussed below at page 6.  A summary judgment entered for the defendants was largely affirmed on appeal, although the corporate plaintiff is seeking a rehearing.

In their last filing before the present one, on June 27, 2008, the plaintiffs sued many of the same defendants in this Court, as well as four judges from Florida and California, in an action claiming, *inter alia,* that having to submit to arbitration under certain contract clauses violated their constitutional rights.  *Creative Desperation, Inc. et al.  v. Moxon et al.,* Case No. 08-CV-60984-UNGARO-SIMONTON.

Both plaintiffs recently filed bankruptcy actions in this district, Creative Desperation as a Chapter 11 proceeding [Case No. 08-19067-JKO] and Mr. Letterese individually under Chapter 13 [Case No. 08-19642-RBR].  Neither obtained leave of the bankruptcy court to retain counsel to prosecute this action.  The corporate Chapter 11 proceeding was converted by Judge Olson to a Chapter 7 proceeding, and a trustee was appointed, so that Mr. Franken no longer represents

the corporation. No sanctions are sought against the trustee, Marika Tolz, who had no part in presented the Complaint.

The pendency of the bankruptcy proceedings does not effect a stay of any kind on Rule 11 proceedings. *See Alpern v. Lieb,* 11 F.3d 689, 690 (7th Cir. 1993); *Berg v. Good Samaritan Hospital,* 198 B.R. 557, 561 (BAP 9th Cir. 1996).

### The Complaint is Presented for Improper Purposes

Rule 11(b)(1) prohibits pleadings and other papers which are "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The instant Complaint is clearly presented not for relief but to chill the Church of Scientology related defendants' choice of counsel by suing their attorneys without a legal or factual basis, to harass wholly uninvolved persons by naming them as defendants, and to raise a claim for intellectual property which the corporate plaintiff has already substantially lost in this Court in a separate proceeding before Judge Paul Huck.

Purpose of Chilling Choice of Counsel. Plaintiffs have chosen to add as defendants in the instant case law firms which represented CSI and Bridge and related entities in previous actions, including the abovementioned copyright action before Judge Huck. For example, with respect to the two firms sued solely for their work in that litigation, Kenny Nachwalter and Zuckerman Spaeder, the claims against them are made out of whole cloth. Essentially the claim against the attorneys boils down to convincing Judge Huck that a mediation might be productive, *see* ¶¶ 86-87, and that the lawyers "dedicatedly [sic] misled the Federal Court and further attempted to illegally influence the outcome of the Plaintiffs' copyright lawsuit," *see* ¶ 67(J). This is not enough even to serve as a pretext to sue counsel for an opposing party. The plaintiffs' purpose seems plainly to force the Church of Scientology entities to hire new counsel to represent them, thereby needlessly increasing their costs in violation of Rule 11(b)(1), or even to make it difficult or impossible to find new attorneys willing to undertake their defense, knowing that there exists a likelihood of being sued by the plaintiffs for doing so.

5

Harassment by Naming Uninvolved Defendants.  The complaint also violates Rule 11 by naming persons as defendants solely to obtain publicity regardless of their lack of contact with anything to do with the plaintiffs.  For this purpose the pleading names the actor Tom Cruise as a defendant, but states no claim against him.  Plainly, Mr. Cruise was named for the transparent reason that plaintiffs and their counsel perceived that suing their most famous parishioner would be a means of putting pressure on the Church of Scientology related defendants by generating adverse publicity.  What the complaint actually says about Mr. Cruise, apart from naming him as a defendant, is ludicrous:  it states that he is a "front" for the imaginary criminal syndicate that the complaint raves about (¶ 3) and that he contributes money to the Church of Scientology which was used in part to fund attacks on the plaintiffs (¶ 89).  Apart from the absurd allegation that he controlled the actions of every other defendant (¶ 47), this is all that is alleged against Mr. Cruise.

The plaintiffs' claims also bring into this case numerous parties and counsel who have prevailed against them in litigation elsewhere.  This is clearly for purposes of harassment, with the insubstantial glue of a meritless RICO allegation all that conceivably holds it together.  This presents an unmistakable violation of Rule 11 as a classic "shotgun" or "expeditionary" complaint.  *See, e.g., Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir. 1986); *Albright v. Upjohn Co,* 788 F.2d 1217, 1221 (6th Cir. 1986).

Plaintiffs' Already-Failed Royalty Claim.  The complaint contends that the alleged enterprise was motivated by a desire to avoid paying royalties for a book used by the Church of Scientology and others to teach sales techniques.  This claim for copyright royalties was earlier made against Bridge, CSI and other Church of Scientology related entities based on their use of a book by Les Dane which teaches sales techniques, in Case Number 04-61178-CIV-HUCK / O'SULLIVAN.  Judge Huck found that the Church's use of the book was a fair use within the

6

meaning of the Copyright Act, and this finding as to the Church was affirmed by the Eleventh Circuit on July 8, 2008 under Case No. 05-15129.[3]

Plaintiffs nevertheless contend that the corporate plaintiff's unsuccessful attempt to obtain royalties from the Church of Scientology failed, not because the plaintiff lost the case before Judge Huck, but because of a worldwide conspiracy to "rob" the plaintiffs of royalty payments.  *See* ¶¶ 48, 67(c), & 67(D).  This is not just a frivolous legal claim under Rule 11(b)(2), see below, or one that is has unsupportable factual contentions in violation of 11(b)(3), also discussed below, but one made for an improper purpose:  publicity and harassment.

### The Complaint Brings Unwarranted Legal Claims

The central theory of the Complaint—that a worldwide conspiracy including various Church of Scientology related entities, and even its lawyers, as well as a parcel of dentists (former clients of the corporate plaintiff) and their lawyers, too, have operated in tandem to destroy Mr. Letterese's livelihood—lacks legal support as a whole and in its component parts. The claims made are unwarranted by existing law or by any nonfrivolous argument for changing existing law, and thus violative of Rule 11(b)(2).  Multiple instances of such claims permeate the complaint:

> a.  Claims of entitlement to royalties from the Church of Scientology are meritless in view of the Eleventh Circuit's decision in *Peter Letterese And Associates, Inc. v. World Institute of Scientology Enterprises, et al.*, Case No . 05 – 15129 (11th Cir., July 8, 2008), which only left alive a limited claim against World Institute of Scientology Enterprises.  *See Patterson v. Aiken,* 841 F.2d 386, 387 (11th Cir. 1988).

---

[3] The opinion affirmed Judge Huck in almost all respects, but left open an issue regarding the first claim related to materials formerly sold by Defendant World Institute of Scientology Enterprises International.  In particular, the Eleventh Circuit affirmed summary judgment in favor of Church of Scientology International and Church of Spiritual Technology, holding that the Church materials that make use of the Dane book are protected by the principle of fair use. Bridge was also formerly a defendant in that lawsuit, but was dismissed by CDI in August 2005.

7

14012542.1

b.  Claims relating to the defense of the same underlying copyright litigation do not state a claim for relief, as the defendants in that case were privileged to defend themselves. As the Supreme Court of Florida has held:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994).  S*ee also American Nat. Title & Escrow of Florida, Inc. v. Guarantee Title & Escrow of Florida,* 748 So.2d 1054, 1056 (Fla. 4th DCA 1999) ("The essence of *Levin* was its extension of absolute immunity to acts taken during the proceeding, not just statements made therein."); *Chapman v. Department of Health & Rehabilitative Servs.,* 517 So. 2d 104, 106 (Fla. 3d DCA 1987) ("We cannot hold that a litigant and its lawyer may be liable to their adversary for winning the case.").

c.  Claims relying on "aggregate unpaid royalties going back 31 years," *see* p. 25 n.16, are barred by the three year statute of limitations for copyright infringement claims. *See* 17 U.S.C. § 507(b); *Aetna Cas. & Sur. Co. v. Fernandez,* 830 F.2d 952, 956 (8th Cir. 1987); *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists,* 802 F.2d 247, 255 (7th Cir. 1986) (sanctions imposed because any "competent attorney who made a reasonable inquiry into that state of the law when this suit was filed . . . should have known it was time-barred").

14012542.1

      d. Claims against counsel relating to the defense of the same action do not state a claim for relief, as counsel were privileged to represent their clients in the prior actions. *Levin, supra,* 639 So.2d at 208; *see also Chapman, supra.*

      e. Claims based on litigation initiated by Mr. Letterese or his company cannot state a claim for relief against parties and counsel who defended, and did not initiate, those cases. *Id.*

      f. A major component of the pastiche of assertions of misconduct in the complaint concerns defamation, indeed, the Complaint claims "the largest single covert defamation plot possibly in the history of the Internet." *See* ¶ 10. Hyperbole aside, allegations based on defamation as a predicate act for a claim under the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.,* are without merit, as defamation does not amount to mail or wire fraud and is not a predicate act under § 1961. *See In re American Express Company Shareholder Litigation,* 39 F.3d 395, 399 n.2 (2d Cir. 1994); *Lathrop v. Juneau & Associates, Inc.,* 2005 WL 3797706, *7 (S.D.Ill., April 25, 2005); *DIRECTV, Inc. v. Cavanaugh,* 321 F.Supp.2d 825, 839 (E.D.Mich. 2003); *Chovanes v. Thoroughbred Racing Ass'n*, 2001 WL 43780, *9 (E.D.Pa. 2001) (pointing out that defamation is not fraud); *Contes v. City of New York,* 1999 WL 500140, *8 (S.D.N.Y 1999).

      g. The other various alleged criminal violations which are claimed to be predicate acts for plaintiffs' racketeering allegation appear in the complaint as bare statements, not tied to facts. *See* ¶ 193 (string citation to 18 U.S.C. § 201, § 659, § 1344, § 1503, § 1513, § 1951, § 1952, and § 1957 in a single sentence); ¶ 194 (use of mail to send "contracts, instructions, correspondence and others" [*sic*] as a predicate act in alleged violation of 18 U.S.C. § 1341); ¶ 195 (transmission of same by wire as a predicate act in alleged violation of 18 U.S.C. § 1343). This conspicuous lack of particularity is fatal to a RICO claim, as shown, e.g., in Local Rule 12.1 of this district, which was modeled on § 41.54 of the Manual for Complex Litigation, Third (1995). *See* 1998 Committee Note to Local Rule 12.1.

   h. The essence of the fabulous conspiracy asserted in the complaint is a plot with three main aims by the Church of Scientology, all resting on the foundation of the failed intellectual property claims that were central to Judge Huck's case: to raise funds, to recruit staff, and to engage in marketing in order to obtain donations.  *See* ¶ 5.  This alleged conduct by a church or other nonprofit organization is constitutionally protected and clearly cannot provide a basis for any criminal claim, let alone for racketeering under RICO.

   i. The factual allegations of the complaint related to the copyright issues and the Les Dane book are all for acts supposedly committed prior to 2005.  They are thus barred by the statute of limitations, and are not revived by plaintiffs' attempt to bring them forward through their fatuous RICO claim.  *Aetna Cas. & Sur. Co. v. Fernandez, supra*; *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists,supra*.

Plaintiffs' counsel had a duty to ensure that the claims asserted in the complaint have legal support.  They do not, and consist of nothing more than a mishmash of conclusions without an underlying legal foundation and assertions already resolved against the plaintiffs elsewhere.

### The Complaint Lacks Evidentiary Support

 Baseless statements or deliberate misstatements may not be presented as statements of fact without exposure to Rule 11 sanctions.  *See, e.g., Frazier v. Cast,* 771 F.2d 259, 265 (7th Cir. 1985); *Levine v. FDIC,* 2 F.3d 476, 479 (2d Cir. 1993).  Misstatements about litigation between the same parties are particularly egregious.  *See Taylor v. Wagner,* 117 F.R.D. 121, 122-23 (N.D.Ill. 1987) (attempt to mislead court about statements of a prior judge was subject to sanctions).

 It would be impossible within the governing page limit to dissect plaintiffs' 80-page complaint and explain each misstatement therein.  A few do, however, deserve special mention.  One of these is the so-called "Forensic Probability Analysis" attached to the complaint as Exhibit A, which was purportedly prepared by "a professional Forensic Statistician" [*sic*].  *See* ¶¶ 12-14.

No such person is named, no letterhead appears on the document, and the alleged analysis piles inference upon inference in a way no real statistician would dare to present to a court, in order to come up with a ridiculous conclusion.[4]  In *Greenberg v. Hilton Int'l Co.,* 870 F.2d 926, 938-39 (2d Cir. 1989), *reh'g granted and remanded,* 875 F.2d 39 (2d Cir. 1989), sanctions against a plaintiff's attorney were approved where the attorney misrepresented that expert statisticians would analyze defense data, whereas in reality no experts were retained and no analysis performed.  The instant plaintiffs' preposterous calculation is, on information and belief, simply the work of Mr. Letterese himself, and the suggestion that it was professionally prepared is false.

In the same way, the attribution to normal litigation—seeking to enforce arbitration clauses, trying to collect judgments, and defending against claims brought by one or both of the plaintiffs—of ulterior and criminal motives is obviously contrived and without factual support. *See, e.g.*, ¶¶ 161, 173.   Likewise, ascribing an illicit motive to taking a deposition (¶ 149) or seeking a mediation (¶ 86) hardly states a claim for criminal activity.

The most particularly outrageous innuendo in this strange brew of a complaint appears in footnote 3 on page 9.  Here, the plaintiffs appear to suggest, with no factual support, that some or all of the defendants are responsible for the unfortunate death by suicide of a California judge.  In reality, the judge in question was no longer even assigned to a case between plaintiffs and any defendants at the time of his death.  The Court is apparently expected to conclude from this footnote that some or all of the defendants conspired to cause the judge to commit suicide. This is a classically sanctionable assertion, as well as a scandalous one subject to a motion to strike under Rule 12(f)(2) or a *sua sponte* order under Rule 12(f)(1).

---

[4] Moreover, this cascade of conclusions upon conclusions is plaintiffs' ultimate support for their casuistic assumption that every defendant operated in concert to conspire against the plaintiffs.

11

**CSI and Bridge Should be Granted Their Attorneys' Fees and Costs**

Rule 11(c) allows district courts broad discretion to impose appropriate sanctions if, after notice and a reasonable opportunity to respond, they determine that the rule has been violated:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Rule 11(c), Federal Rules of Civil Procedure. As has been observed by a recent commentator: "There are few limits on judicial creativity in fashioning an appropriate sanction." Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* 2-235 (2008).

Monetary sanctions may not be imposed upon a represented party for a violation of subdivision (b)(2) made by asserting frivolous legal argument, but only on its counsel. *See Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 222 F.3d 52, 57 (2d Cir. 2000). However, monetary and other sanctions can be imposed on represented parties for violations of other portions of Rule 11, including those outlined *supra* in which the instant plaintiffs have engaged. *See., e.g., Homico Constr. & Dev. Co. v. Ti-Bert Sys.,* 939 F.2d 392, 394 (6th Cir. 1991); *Joseph*, *supra,* at 2-67 (1993 amendments strengthened this principle). In the Eleventh Circuit, a factual finding of client involvement is first necessary. *See Byrne v. Nezhat,* 261 F.3d 1075, 1118-20 & nn. 87-88 (11th Cir. 2001).

The range of appropriate sanctions available to a district judge under Rule 11 is broad, including:

> a. Admonition, reprimand, or censure;
> b. Mandatory CLE;
> c. Mandatory pro bono service;
> d. Reference to the Bar or other grievance entity (such as the Southern District of Florida's Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance);
> e. Disqualification of counsel;
> f. Orders precluding issues or evidence;

12

14012542.1

      g. Dismissal of the action;
      h. Entry of a default judgment;
      i. Injunction against a party's future access to the courts;
      j. Suspension or disbarment from the district's Bar;
      k. Fines or penalties paid into the court; and
      l. An award of reasonable expenses, including fees, occasioned by the misconduct.

*See, e.g., Abdelhamid v. Altria Group, Inc.,* 2007 U.S. Dist. LEXIS 54888, at *8 (S.D.N.Y. July 27, 2007); *Carlton Group, Ltd. v. Tobin,* 2003 U.S. Dist. LEXIS 13332, at *7 & n.6 (S.D.N.Y. July 31, 2003); *Joseph*, *supra,* at 2-239.

      A court judges whether an adequate investigation into the facts has been made by the client, and into the law by its attorney, by a standard of objective reasonableness. The objective standard used to assess misconduct under Rule 11 is "reasonableness under the circumstances" and "what [it] was reasonable to believe at the time" the pleading was submitted. *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Rule 11 sanctions are warranted where a party fails to conduct a reasonable inquiry. *See Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir 1992); *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 n.88 (11th Cir. 1991). Indeed, Rule 11 "'stresses the need for some prefiling inquiry . . . .'" *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (*en banc*) (quoting Advisory Committee note).

      The fact that this motion is before the Court indicates that plaintiffs and their counsel have refused the opportunity provided to them by the 21-day safe harbor period, and have refused to withdraw or amend the Complaint. By so doing, plaintiffs have created the need for a ruling on whether the Complaint is an acceptable filing, or as CSI and Bridge contend, an unjustifiable act of harassment, full of illegitimate legal theories and unsupported facts.

      The sanction to be imposed, should the Court agree with this motion, is within its discretion. Bridge and CSI request that they be given an opportunity to proffer to the Court their fees and costs incurred with relation to the misconduct, including during the 21-day safe harbor period, and that they be awarded those fees, in conjunction with whatever other sanctions the Court finds appropriate to deter future misconduct by plaintiffs and their counsel.

13

## Conclusion

Rule 11 was amended to permit a plaintiff the ability to review the reasons his complaint lacked merit, and to impose a penalty only where the plaintiff is obstinate. The instant plaintiffs and their counsel have chosen the latter course, despite having had the instant motion for 21 days. CSI and Bridge submit that they should not have been required to file it, and having done so, should be awarded the reasonable attorneys' fees and costs thus far incurred in this action, in addition to such other sanctions as the Court finds appropriate under the circumstances.

| | |
|---|---|
| *s/. Helena K. Kobrin* | *s/. Thomas Meeks* |
| Helena K. Kobrin (0259713) | Thomas Meeks |
| HKKOBRIN@aol.com | Fla.. Bar No. 314323 |
| **MOXON & KOBRIN** | Matthew Davidson |
| 3055 Wilshire Blvd., Suite 900 | Fla. Bar No. 713821 |
| Los Angeles, California 90010 | e-mail: tmeeks@carltonfields.com |
| Telephone: (213) 487-4468 | e-mail: mdavidson@carltonfields.com |
| Facsimile: (213) 487-5385 | **CARLTON FIELDS, P.A.** |
| | 4000 International Place |
| | 100 S.E. Second Street |
| | Miami, Florida 33131-2114 |
| | Telephone: (305) 530-0050 |
| | Facsimile: (305) 530-0055 |

*Attorneys for Defendants Church of Scientology International and Bridge Publications*

14012542.1

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 23, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  *s/        Thomas Meeks*

14012542.1

**SERVICE LIST**
Case No. 08-61109/ZLOCH-SNOW

Charles D. Franken, Esq.
e-mail: frankencdf@aol.com
Law offices of Charles D. Franken
8181 West Broward Blvd., Suite 360
Plantation, FL 33324
Tel: 954-476-7200
Fax: 954-424-0297

John H. Genovese, Esq.
Email: jgenovese@gjb-law.com
Genovese Joblove & Battista
100 S.E. Second St., 44th Floor
Miami, Florida 33131-2158
Tel: (305) 372-2462
Fax: (305) 349-2310
*Counsel for CDI*

16

14012542.1