1  David L. Hoffman, Esq. SBN 143,474
   Law Offices of David L. Hoffman
   27023 McBean Parkway, Suite 422
2  Valencia, California 91355
   Telephone: (661) 775-0300
3  Facsimile: (661) 259-1255

4  Attorney for Plaintiff Peter Letterese
   & Associates, Inc.

ORIGINAL FILED
APR - 8 2004
LOS ANGELES
SUPERIOR COURT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

PETER LETTERESE AND ASSOCIATES,      )   Case No.  PC034730
INC., a Florida Corporation          )
                                     )
            Plaintiff,               )
                                     )   COMPLAINT FOR DECLARATORY
      vs.                            )   RELIEF
                                     )
Organization Does 1 through 700, and Does )
701-710                              )
                                     )
            Defendants.              )
_____)

COMES NOW plaintiff, PETER LETTERESE AND ASSOCIATES, INC., a foreign corporation, complaining against defendants, and each of them, as follows:

1.    Plaintiff, PETER LETTERESE AND ASSOCIATES, INC., a foreign corporation (hereinafter "PL&A"), is a Florida Corporation, duly organized under the laws of the State of Florida, and having a place of business at 4919 SW 148th Avenue, Davie, Florida 33330.

2.    Defendants, Organization DOES 1-700, the true names and capacities, whether individual, corporate, associate or otherwise of defendants Organization DOES 1 through 700, inclusive are unknown to Plaintiff PL&A, who therefore sues said defendants by such fictitious names and will seek leave of court, if necessary, to amend this complaint to show their true names and capacities when they have been ascertained. PL&A is informed and believes and on that basis alleges that each of said Organization DOES 1-700 is responsible in some manner for the events and happenings alleged in this complaint. Even though PL&A may know of the existence of at least some of these Organization Doe entities, PL&A is ignorant within the

1
PLAINTIFF'S COMPLAINT

EXHIBIT "2"

meaning of California Civil Code Section 474 at least in that PL&A lacks knowledge of any connection for each specific Organization DOE 1-700 with the subject matter of this lawsuit and in particular with any power to be bound by David Schindler as agent and/or in other capacity as explained below.

3. DOES 701-710, the true names and capacities, whether individual, corporate, associate or otherwise of DOES 701-710, inclusive are unknown to Plaintiff PL&A, who therefore sues said defendants by such fictitious names and will seek leave of court, if necessary, to amend this complaint to show their true names and capacities when they have been ascertained. PL&A is informed and believes and on that basis alleges that each of said DOES 701-710 is responsible in some manner for the events and happenings alleged in this complaint.

4. Some or all of the acts complained of herein took place in this judicial district or in Los Angeles. Some or all of the Defendants have a place of business, and/or principal place of business in this judicial district or in Los Angeles. The fictitiously named defendants, including the Organization Does 1-700 include all entities affiliated with a certain religious organization (the "Organization").

5. PL&A has disputes with the Organization which on information and belief include all entities affiliated with the Organization. Generally, this declaratory judgment action is being brought because PL&A does not know whether it entered into a binding agreement with some or all Defendants, and upon what Defendants (Organization Does 1-700), if any, that agreement is binding. In addition, certain terms, if binding, would require PL&A to refrain from bringing suit against certain entities and avoid publicly disclosing details of certain disputes for one year while the parties negotiate. Accordingly, in caution, PL&A is omitting the name of the Organization and any of its affiliates, and details of such disputes, from this public complaint and will be submitting un-redacted exhibits in camera.

///

## BACKGROUND

6. PL&A had a dispute with one entity affiliated with the Organization and which may be one of the Organization Does 1-700.

7. PL&A recently desired to enter into negotiations with all entities affiliated with the Organization concerning certain published, copyrighted works ("The Works"). PL&A has for ten years by contract, exclusively represented, managed and supervised the copyrights and trademarks associated with The Works. On information and belief, PL&A believes that all or virtually all, but at a minimum, a significant but as-yet-undetermined number of the entities affiliated with the Organization have used, have included in other copyrighted compilations and have even licensed to others one or more components of The Works, but without permission of the valid holders of the rights associated with The Works. In view of this belief, as yet untested by discovery, there exist a series of unresolved questions concerning possible past copyright and trademark infringement by the organization Does 1-700, the eventual answers to which impact upon as-yet-unnegotiated, but desired by The Organization future rights to use, include in course materials and/or actually publish under license The Works by these same Organization Does 1-700 perpetually into the future.

8. PL&A, through its legal counsel Richard Marcus, and some or all of the Organization Does 1-700, through legal counsel David Schindler, corresponded. In a letter dated January 27, 2004, Schindler indicated that he represented three Organization entities (which may be Organization Does).

9. On information and belief, PL&A and some or all Organization Does 1 to 700 appeared to reach an understanding through counsels Marcus and Schindler to negotiate the disputes. Counsels Marcus and Schindler apparently reached certain "points of our agreement" and apparently memorialized these in emails exchanged on February 25, 2004, a redacted copy of which is attached as Exhibit A. A full copy will be lodged with the Court in camera given that it is the desire of the parties to keep this writing confidential, in case this potential "settlement agreement" turns out by Court order to be indeed a valid, binding agreement.

10. In the February 25 emails, one of the terms, term no. 1, required cooperation of all entities affiliated with the Organization. See Exhibit A.

11.  Thereafter, counsels Marcus and Schindler signed a written instrument setting forth terms from the February 25 emails in more detail. One of the terms involved dismissal (without prejudice) of a lawsuit (the substance of which dealt with issues attendant to the aforementioned literary rights dispute) between PL&A and an Organization affiliated entity. This memorialization of terms was by letter dated February 27, 2004, a redacted copy of which is attached as Exhibit B. A full copy will be lodged with the Court in camera given that it is the desire of the parties to keep this writing confidential, in case the February 27 letter ("settlement agreement") turns out by Court order to be indeed a valid, binding agreement.

12.  The February 27 letter again required cooperation of all entities affiliated with the Organization to fulfill its obligations to PL&A. See Exhibit B, e.g., term nos. 2 and 5. PL&A expected, in accordance with voluminous California case law precedent with respect to "enforceability of agreements", that the Agreement would be signed by a sufficient number of certain "key" Organization affiliated entities, whose clear participation in the possible settlement and future negotiations would be indispensable to the full and final resolution of issues in dispute between the parties relative to the aforementioned literary rights. Their participation is vital to bind or control all entities affiliated with the Organization in accordance with the literary rights attendant to The Works. PL&A was and is concerned that one or more certain affiliated entities of the Organization believed to be capable of controlling all or virtually all entities affiliated with the Organization would need to be bound by the February 27 letter's terms in order to be assured that those terms would be fulfilled by all entities affiliated with the Organization.

13.  Because of PL&A's concerns, on or about March 2, 2004, PL&A's counsel Marcus wrote to Schindler requesting that Schindler obtain signatures on behalf of at least certain "key" Organization affiliated entities believed necessary by PL&A to comply with the February 27 letter's terms. A true and correct redacted copy of the March 2 letter is attached as Exhibit C. A full copy will be lodged with the Court in camera given that it is the desire of the parties to keep this writing confidential, in case the February 27 letter turns out by Court order to be indeed a valid, binding agreement.

14.  On or about March 15, 2004, Schindler wrote to PL&A's counsel stating that he

has "been authorized to conduct these negotiations, and to execute our February 27, 2004 agreement on behalf of entities affiliated with the [Organization]." A true and correct redacted copy of the March 15 letter is attached as Exhibit D. A full copy will be lodged with the Court in camera given that it is the desire of the parties to keep this writing confidential, in case the February 27 letter turns out by Court order to be indeed a valid, binding agreement.

15. PL&A still had concerns that at least the key Organization entities may not be bound by the February 27 letter at least in part because no signatures of any affiliated entities with the Organization were provided to PL&A, and because Schindler's earlier January 27 letter only named as clients three entities of the entities PL&A believes to be key. In addition, Organization Does 1-700 have not provided any written assurance as to what entities have the power to control all entities affiliated with the Organization. A true and correct redacted copy of the January 27 letter is attached as Exhibit E. A full copy will be lodged with the Court in camera given that it is the desire of the parties to keep this writing confidential, in case the February 27 letter turns out by Court order to be indeed a valid, binding agreement.

16. PL&A's counsel followed up with letters dated March 18, 2004 and March 22, 2004, requesting that the key entities sign on the February 27, 2004 letter for PL&A's assurance that any negotiations would be with the key entities, and the terms of the February 27 letter would be followed. True and correct redacted copies of the March 18 and 22 letters are attached as Exhibits F and G, respectively. Full copies will be lodged with the Court in camera given that it is the desire of the parties to keep these un-redacted writings confidential, in case the February 27 letter turns out by Court order to be indeed a valid, binding agreement.

17. To date, none of Organization Does 1-700 have provided any such signed letter.

18. On March 26, 2004, Schindler wrote to PL&A's counsel stating that "I have told you on several occasions that the entities affiliated with the [Organization] are prepared to abide by the stand-still agreement that you and I negotiated and executed and that I have been authorized to negotiate on their behalf." The March 26 letter also indicates that Schindler is ready and waiting for negotiations to begin pursuant to the terms of the February 27 letter. A true and correct redacted copy of the March 26 letter is attached as Exhibit H. A full copy will be lodged with the Court in camera given that it is the desire of the parties to keep the un-redacted

document confidential, in case the "settlement agreement" turns out by Court order to be indeed a valid binding agreement.

19. PL&A, however, is not ready to go forward with negotiations since PL&A does not know if it has a binding agreement with the Organization entities, or at least sixteen (16) key entities, at least in part because PL&A has not been assured of all the specific Organization DOES 1-700 bound by the February 27 letter, and the letter has not been signed by principals of any of the Organization DOES 1-700. PL&A would go forward if the February 27 letter is binding, the Organization DOES 1-700 are identified and their signatures are obtained, or the signatures of at least the key entities of Organization DOES 1-700, or other comparable assurance that the February 27 letter's terms is binding on Organization DOES 1-700 or at least the key Organization Does sufficient to control all entities affiliated with the Organization.

20. PL&A alleges, to the extent the February 27 letter is a binding agreement with only the three organizations named in Schindler's January 27 letter, or other than the key Organization Does, that PL&A is excused from performing under the agreement given that PL&A bargained for and expected an agreement where at least all sixteen (16) key, major Organizations would be bound by the agreement, and/or at least one or more Organization affiliated entities would be identified and verified as legally empowered, sufficient to control all entities affiliated with the Organization to be consistent with Schindler's assertions in his March 15 and March 26 letters that he was acting on behalf of all entities affiliated with the Organization.

## FIRST CAUSE OF ACTION BY PLAINTIFF AGAINST ALL DEFENDANTS FOR DECLARATORY JUDGMENT UNDER CCP §1060

21. The pleadings of paragraphs 1-20 are incorporated as if fully set forth herein.

22. An actual present controversy has arisen and now exists between PL&A and the Defendants regarding their respective rights and duties relative to the February 27 letter and specifically as to whether or not the February 27 letter with signatures constitutes an enforceable agreement.

23. There is an actual controversy as to whether or not Defendants must provide

written signatures of specific Organization related entities, which entities, and whether it must be at least the key entities, under the terms of the February 27 letter to the extent the February 27 letter constitutes an enforceable agreement.

24. There is an actual controversy as to whether or not Defendants are required to specify all such entities affiliated with the Organization, or at least the sixteen (16) key entities, and obtain their signatures pursuant to the February 27 letter, or other doctrine such as the requirement of good faith and fair dealing and/or the doctrine of written assurances to the extent the February 27 letter constitutes an enforceable agreement.

25. There is an actual controversy as to what extent PL&A has reached an enforceable agreement pursuant to which PL&A must enter into negotiations as stated therein, to the extent the February 27 letter is an enforceable agreement, because Schindler has represented that he is ready to have a first meeting pursuant to the February 27 letter.

26. There is an actual controversy as to whether or not under the February 27 letter, to the extent it is an enforceable agreement, and/or other doctrine, Defendants must identify each and every specific entity affiliated with the Organization that Schindler is an agent of or otherwise has the power to bind, and provide adequate assurance as to how such identified entities affiliated with the Organization are bound by the February 27 letter and how such identified entities affiliated with the Organization control all of the remaining entities affiliated with the Organization.

27. There is an actual controversy as to whether or not it is a breach by Defendants of the covenant of good faith and fair dealing of the February 27 letter, to the extent it is an enforceable agreement, for Defendants to fail to provide the written signatures of all the Organization affiliated entities that Schindler is an agent of, if any, and/or at least to specifically identify the Organization entities that are bound, and/or at least to specifically identify all of the Organization affiliated entities that Schindler is an agent of, if any.

28. There is an actual controversy as to whether or not it is an anticipatory breach or other breach of the February 27 letter, to the extent it is an enforceable agreement, by failure of Defendants, in spite of PL&A's requests for signatures and assurances, to provide signatures of the Organization affiliated entities that Schindler is an agent of or otherwise has the power to

bind to the February 27 letter, and/or at least to specifically identify all of the Organization affiliated entities that Schindler is an agent of or otherwise has the power to bind to the February 27 letter.

WHEREFORE, Plaintiff prays for judgment as follows:

1. For all appropriate declarations concerning validity and enforceability of the memorialized terms, including but not limited to whether or not the memorialized terms in the February 27 letter constitute a valid enforceable agreement, whether or not all terms are enforceable, as to what Organization DOES (Organization affiliated entities) are bound by the February 27 letter, if any, and each of the terms of the agreement, if enforceable, and whether all affiliated Organization entities or at least the sixteen (16) key Organization entities are bound by the February 27 letter to the extent it is enforceable, all according to the proof;

2. For an order indicating whether or not the February 27 letter is valid and enforceable against Plaintiff PL&A;

3. For an order requiring Defendants to identify themselves to PL&A;

4. For an order requiring Defendants to obtain the signatures of all or at least the sixteen (16) key entities affiliated with the Organization on the February 27 letter and provide the signed letter to PL&A;

5. For an order indicating whether or not PL&A must enter negotiations with any or all Defendants;

6. For costs of suit incurred herein; and

7. For such other and further relief as this Court deems just, proper and equitable.

Dated: April 8, 2004

LAW OFFICES OF DAVID L. HOFFMAN

David L. Hoffman, Esq.