UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CIV-61109/ZLOCH-SNOW

PETER LETTERESE, individually and
CREATIVE DESPERATION, INC., (CDI)
a Florida corporation, f/k/a PETER
LETTERESE & ASSOCIATES, INC.,
(PL&A),

    Plaintiffs.

v.

THE CHURCH OF SCIENTOLOGY
INTERNATIONAL, INC. (CSI),
SCIENTOLOGY OFFICE OF SPECIAL
AFFAIRS INTERNATIONAL, 3200 DOE
SCIENTOLOGY COPYRIGHT CASE
DEFENDANTS, TOM CRUISE SIMEON
DANIEL BRIER, ROBERT BRUCE
AMIDON, JOHN ARRASTIA, EDWARDS
ANGELL PALMER & DODGE LLP, SCOTT
BRODY, DAVID CORNELL, DANIEL D.
DASHMAN, LISA DASHMAN, WILLIAM
HART, MIKE ELLIS, HOWARD FARRAN,
ANNE MARIE GRIFFIN, STEVEN
SAMILOW, WILLIAM RICHARD
HOWARD, EUGENE M. INGRAM, SCOTT
INKS, HELENA KEMPNER KOBRIN,
MOXON & KOBRIN, DAVID LUBOW a/k/a
DAVID LEBEAU, EUGENE INGRAM,
MICHAEL MAROON, IAN MCSHANE,
THOMAS MEEKS, DAVID MISCAVAGE,
MICHAEL NACHWALTER, MICHAEL
MIDDLETON, KENDRICK LICHTY
MOXON, AVA PAQUETTE, DOUGLAS
NESS, FLORA NESS, CRAIG J. RYAN,
MARC SCHWARTZ, NORMAN F.
TAYLOR, ANTOINETTE
THEODOSSAKOS, GARY WOODFIELD,
BRIDGE PUBLICATIONS, MARILYN
PISANI, CHURCH OF SCIENTOLOGY
FLAG SERVICE ORGANIZATION, INC.,

**MOTION OF DEFENDANT GARY
SOTER TO DISMISS PLAINTIFFS'
COMPLAINT AND MEMORANDUM IN
SUPPORT**

14014198.1

CHURCH OF SCIENTOLOGY
INTERNATIONAL, INC., CHURCH OF
SCIENTOLOGY, MISSION OF FORT
LAUDERDALE, INC., CHURCH OF
SCIENTOLOGY OF FLORIDA, INC,,
CHURCH OF SPIRITUAL TECHNOLOGY,
INC., DENTALTOWN.COM LLC,
ECONOMIC RESEARCH GROUP
FLORIDA, ECONOMIC RESEARCH
GROUP INC. NY, STEVEN SAMILOW,
DAVID SCHINDLER, JIM SCHULTZ,
GARY SOTER, AMERICAN
ARBITRATION ASSOCIATION, INSTANT
DATA RESEARCH, INC., SCIENTOLOGY
MISSIONS INTERNATIONAL, INC.,
WORLD INSTITUTE OF SCIENTOLOGY
ENTERPRISES INC., GOOGLE,
PROSKAUER ROSE, YAHOO,
ZUCKERMAN SPAEDER, LATHAM &
WATKINS, LLP.

     Defendants.
_____/

## INTRODUCTION

Defendant Gary Soter moves to dismiss the Complaint filed by plaintiffs Peter Letterese ("Letterese") and Creative Desperation, Inc. ("CDI")[1] under Fed. R. Civ. P. 12(b)(1), (2), and (6).

Mr. Soter is a member of The State Bar of California and a full time resident and citizen of California. He is being sued by plaintiffs because he successfully represented defendant Bridge Publications, Inc. ("Bridge) in two vexatious lawsuits that plaintiffs brought <u>against</u> Bridge in the state of California. Mr. Soter has no contacts with the state of Florida and has not litigated against plaintiffs in this state. This Court therefore lacks personal jurisdiction over Mr. Soter under the Florida long-arm statute, and the Complaint against him should be dismissed on that basis alone.

---

[1] CDI changed its name on September 3, 2008 to Impeccable Strategies, Inc.

Mr. Soter also moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. He adopts the non-jurisdictional grounds to dismiss set forth in the Motion to Dismiss of Defendants Church of Scientology International and Bridge Publications, Inc. (D.E. 12) ("CSI and Bridge Motion"), and they are therefore incorporated herein so as not to burden the Court with an additional memorandum covering the same ground. Mr. Soter also submits that the Complaint should be dismissed because it is barred by the *Rooker-Feldman* doctrine. All of Mr. Soter's actions related to representation of a client in California state court. Stripped to its essence, with respect to Mr. Soter, the instant Complaint asks this Court to engage in judicial review of the default order and judgment in the California state court litigation. Complaint, ¶¶ 54, and Counts VIII and IX. *Rooker-Feldman* bars this Court from engaging in such review.

Thus, in the unlikely event that the Court does not dismiss this Complaint against Mr. Soter for lack of personal jurisdiction, he asks that it be dismissed on the additional grounds argued herein.

## THE COURT DOES NOT HAVE JURISDICTION OVER MR. SOTER

**A.  Mr. Soter's Only Conduct with Respect to Plaintiffs Was as a California Attorney in Two California Cases Brought by Plaintiffs.**

On May 19, 2003, Peter Letterese and CDI, known then as Peter Letterese & Associates, Inc., filed suit against Bridge (and "Does 1-10") in the Superior Court for Los Angeles County, California to enjoin Bridge from attempting to communicate with Letterese's copyright licensor, a South Carolina resident, for a sales book by one Les Dane. (Declaration of Gary Soter, ¶ 5 and Ex. 1, Complaint, Los Angeles Superior Court No. BC 295950.)[2] That complaint asserted that Bridge, the Moxon & Kobrin law firm, its partner, Helena Kobrin, and others were attempting to

---

[2] Bridge is a publishing house for Scientology churches, and Mr. Dane had written a book on sales techniques in the early 1970's that the churches use in training fundraisers. CDI acquired the exclusive license to the copyright in the book but withheld it from the market. Bridge desired to obtain copies of the book or rights to publish it. (Soter Dec., ¶5.)

3

interfere with CDI's (then PLA's) contract with the Dane heirs by approaching them with a proposal to assign their rights under a royalty agreement to Bridge. (*Id.* ¶ 6.) Bridge engaged Mr. Soter and his law firm to represent it in the lawsuit. Mr. Soter prepared an answer to the complaint and also filed a cross-complaint for declaratory relief against Letterese and CDI on behalf of Bridge on July 2, 2003. (Exs. 2 and 3.)

During the course of the litigation, Letterese willfully refused to comply with multiple court orders to appear for deposition in California and produce documents relevant to his claim. He filed several motions for reconsideration, all of which were denied. A week before the California court was scheduled to hear Bridge's motion for monetary, issue and/or terminating sanctions based on CDI's willful disobedience of court orders, the parties entered into an agreement for a one-year standstill on all litigation, during which time they would work in good faith to settle their dispute.[3]  A copy of that standstill agreement is Exhibit 14 to the Complaint herein. In reliance upon the validity of the agreement, Mr. Soter took the Bridge motion for sanctions off calendar and requested dismissal of the Bridge cross-complaint for declaratory relief. The Los Angeles Superior Court dismissed the entire action per the request of the parties pursuant to the terms of the standstill agreement. Soter Dec., ¶ 7.

Shortly after the dismissal, Letterese questioned the validity of the standstill agreement and demanded that some 710 "Scientology affiliated entities" physically sign it. When those signatures were not forthcoming, CDI violated the standstill agreement by filing a second lawsuit in Los Angeles Superior Court on April 8, 2004 against 710 "Doe" defendants (Churches of Scientology around the world), seeking a judicial determination whether it was a binding contract and an order requiring the 710 representatives of every church to sign it.[4]  (Ex. 6, Complaint, *Peter Letterese and Associates, Inc. v. Does 1-710*, Los Angeles Superior Court, No.

---

[3] Ex. 4, Memorandum Opinion, *Peter Letterese & Associates, Inc. v. Bridge Publications, Inc., et al.*, California Court of Appeal, No. B179442, pp. 2-4.
[4] Neither CSI nor any other related entity had threatened to violate the agreement, so there was no known basis for concern. Rather, it was Letterese and CDI that violated the agreement by filing two lawsuits during the standstill period. (Soter Dec., ¶ 8.)

PC034730)("Doe Case").  This second lawsuit did not allege that the supposedly unknown defendants, including Bridge Publications, breached or threatened to breach any of the terms of the standstill agreement.  Once again Mr. Soter represented Bridge (along with other attorneys named as defendants in this lawsuit).

Bridge and CSI responded with answers and separate cross-complaints against Letterese and CDI, alleging the lawsuit breached the litigation standstill agreement and that plaintiffs entered into the standstill agreement with no intention to perform. (Ex. 7, Cross-complaint, *Bridge Publications, Inc. v. Peter Letterese, et al.*; Ex. 8, *Church of Scientology International v. Peter Letterese, et al.*)  Letterese and CDI moved to strike the cross-complaints, contending they violated the California anti-SLAPP statute by chilling Letterese's First Amendment rights to petition in court.  Both motions were denied after evidentiary hearings when the Superior Court found that Bridge and CSI established a probability of prevailing on their causes of action for breach of contract and fraud.[5]  Letterese appealed that decision to the California Court of Appeal which affirmed in a written decision. Soter Dec., ¶ 11.[6]  After CSI obtained multiple orders from the court compelling Letterese to produce relevant documents and appear for depositions CDI dismissed its complaint instead of complying with the court orders.  Bridge and CSI sought and were awarded statutory costs.[7]

Letterese told the Superior Court that he would not comply with the discovery orders and expressly invited the court to strike his answer and enter a default based on disobedience of the court orders.  Thereafter, the California court entered a default sanction against CDI on Bridge's

---

[5] Ex. 4, Memorandum Opinion, *Peter Letterese & Associates, Inc. v. Bridge Publications, Inc., et al.*, California Court of Appeal, No. B179442, p. 5.

[6] Letterese has sued the Los Angeles Superior Court judge and the clerk of the California Court of Appeal in this district in a related case, alleging that the two engaged in a conspiracy to violate plaintiffs' due process rights.  In that action, *Creative Desperation, F/K/A Peter Letterese & Associates, Inc., a Florida Corporation D/B/A Galileo Systems International and Peter Letterese Individually v. Kendrick L. Moxon, et al.*, Case No. 08-CIV-60984/UNGARO-SIMONTON, the Court has now dismissed the judges and clerks from the lawsuit *sua sponte*.  (D.E. 36.)

[7] *Id.*, p. 5.

and CSI's cross-complaints. (Ex. 9.) In its decision, the court found that CDI had intentionally violated discovery orders, including a refusal to produce Letterese as the only knowledgeable corporate representative, had opposed motions without substantial justification, had prevented Bridge and CSI from obtaining necessary evidence, and had sought appellate review of various orders and lost in each instance. (*Id*., at 6.) It concluded:

> The Court further finds that monetary sanctions and even issue sanctions would be inadequate under the circumstances of this case. PLA [CDI][8] has filed numerous, repetitive and frivolous motions to reconsider the Court's discovery rulings, and it has refused to comply with the deposition orders, even though its counsel was warned several times that serious sanctions would result from such failure. Counsel for PLA has also suggested that default would be an appropriate resolution of the discovery orders, given that Mr. Letterese will not appear for deposition in compliance with the Court's Orders.
> The Court has considered the full range of potential sanctions. Given the repeated and intentional violations of the Court's unambiguous discovery rulings and the resulting substantial prejudice to the Cross-complainants, a terminating sanction is warranted. The Court finds that no lesser sanction than striking Cross-defendant's Answer would be either effective or appropriate.

*Id*., at 6-7. The court thereafter entered a default judgment in favor of CSI and Bridge against CDI in the amount of $266,900.27. A copy of the judgment, dated May 23, 2007, is Ex. 10 to the Declaration of Gary Soter. CDI has appealed the judgment in California and the appeal is fully briefed. *Id.*, ¶ 14.[9]

Mr. Soter has represented Bridge throughout these California proceedings, and solely within the state of California. Plaintiffs were represented by attorneys David Hoffman and Richard Marcus, who are both members of the California Bar and practice in Los Angeles County, California. All of Mr. Soter's communications concerning the cases were with these California counsel. *Id.*, ¶ 15.

---

[8] Now Impeccable Strategies; see note 1, *supra*.
[9] The appeal is stayed because of CDI's bankruptcy, addressed below.

14014198.1

**B.   Mr. Soter Has No Contacts With Florida**

Mr. Soter resides and practices law in Los Angeles County, California. His license to practice law was issued by the state of California. He does not practice in the state of Florida and has never been admitted *pro hac vice* to practice in a state or federal case in Florida. Mr. Soter has no business connections in Florida and does not own property in this state. Soter Declaration, ¶¶ 2-3.

The only actions that Mr. Soter has taken related to plaintiffs have occurred in the course of his defending Bridge in the two lawsuits discussed *supra* that plaintiffs filed in California, and his assertion of cross-complaints in them on Bridge's behalf. *Id*., ¶ 4.

Indeed, the Complaint alleges no conduct by Mr. Soter outside California, but instead concedes that "Defendant Gary Soter is a California attorney representing Bridge Publications" and attempts to hold him accountable here by claiming he is "subject to the laws of Florida by his conduct within the conspiracies against Plaintiffs in Florida." Complaint, ¶ 113.

Plaintiffs' inclusion of Mr. Soter in this Complaint is an all too excellent example of why this and other district courts require RICO plaintiffs to file a RICO case statement.[10] The RICO case statement that plaintiffs filed herein, via Mr. Franken, is incomprehensible gibberish and does not in any way support the assertion of a RICO claim. Beyond that, however, the RICO case statement only mentions Mr. Soter with respect to his taking a deposition in California, his being involved in a California contract (the standstill agreement), and other activities in the California courts, as well as the allegation that Mr. Soter attempted to collect the judgment against Letterese. Notably, these acts are all subject to the litigation privilege, as addressed below. But equally significant is that the only one of these activities that has been conducted in Florida is collection, and Mr. Soter has not represented Bridge in the collection action. Soter Dec., ¶ 16.

---

[10]   The Complaint was filed on behalf of plaintiffs by attorney Charles Franken. Both plaintiffs are currently in bankruptcy. CDI's case has been converted from Chapter 11, with debtor in possession, to Chapter 7, and a Chapter 7 Trustee has now been appointed. The Trustee, Marika Tolz, Esq., was not involved in the filing of the Complaint.

7

With respect to the Complaint itself, other than the attempt at a jurisdictional allegation in ¶ 113, it alleges only that Mr. Soter was involved in a settlement agreement (*i.e.,* the standstill agreement that settled the first California suit described *supra*) and other activities in court (¶¶ 67E, 100), and that he used a deposition in a lawsuit as part of a conspiracy with another attorney to make a report to the California Attorney General. (¶¶ 149, 153.)  Beyond that, the only allegation as to Mr. Soter is that he is part of a "Delta Enterprise" of attorneys and law firms that have "defamed prosecuted [sic] meritless claims and/or deliberately obscured facts as well manipulated court proceedings so as to deny the Plaintiffs due process or to expose it to unnecessary expense and/or public ridicule outside of the Court system and upon an abuse of process within the Court System." (¶ 182).  Translated into plain English, what plaintiffs are complaining about is nothing more than that Mr. Soter successfully represented their adversaries.

**C.    This Court Lacks Personal Jurisdiction Over Mr. Soter**

In determining whether it has personal jurisdiction over a defendant, a court conducts a two-part inquiry.  *Future Technology Today, Inc. v. OSF Healthcare Systems, Inc.*, 218 F.3d 1247, 1249 (11th Cir. 2000).  The first inquiry is a determination of "whether the applicable state statute governing personal jurisdiction is satisfied."  *Id.*  Should those requirements be satisfied, only then is the court required to address if that defendant has "sufficient 'minimum contacts' with the state of Florida and whether the exercise of this jurisdiction over defendant would offend 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**1.    There Is No Florida Long-Arm Jurisdiction Over Mr. Soter**

In this case, it is unnecessary to go past the first inquiry.  The Florida long-arm statute, Fla. St. § 48.193, provides that a person who is not a citizen or resident of Florida will only subject himself to Florida jurisdiction if he does one of the acts enumerated in the statute.  Most of those acts must actually take place in Florida, and it is undisputed that Mr. Soter has not

8

conducted any business or other activities here. Subsection 48.193(1)(f) permits long-arm jurisdiction where out-of-state activity has caused injury to a person within the state, but it requires that the defendant "was engaged in solicitation or service activities within [Florida]; or Products, materials, or things processed, serviced or manufactured by the defendant anywhere were used or consumed within Florida . . . ." Again, Mr. Soter has not engaged in any such solicitation or service activities in Florida, nor has he produced anything that was used or consumed in the state.

Florida courts have held that a person can commit a tortious act in Florida by means of communications into Florida that are themselves tortious, even though the person did not personally appear in the state. *Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So.2d 1013, 1016 (Fla. 4th DCA 2003). To create long-arm jurisdiction, the communications must be the underpinning for the claim asserted in order to satisfy the connexity requirement under section 48.193(1). *Id*. at 1016-1017. Here, Mr. Soter has not sent any letter or email to anyone in Florida, much less a tortious one to plaintiffs. Instead, all his communications were made within the state of California. Soter Dec., ¶ 15.

In *Van Horn v. McNabb*, 715 So.2d 380 (Fla. 4th DCA 1998), the court addressed a claim by an ex-husband against an out-of-state attorney who had represented the plaintiff's children in a custody proceeding in Wisconsin. He alleged that the attorney had made defamatory statements about him, had interfered with his custody, and had engaged in a civil conspiracy to do so. *Id*. at 381. The court found that it was "clear, from the face of the complaint, that Van Horn enjoys absolute immunity from any alleged defamation or other tortious act done in the course of the prior judicial proceeding." *Id*., citing *Levin, Middlebrooks, Mabie, Thomas, Mayes*

9

*& Mitchell, P.A. v. United States Fire Ins. Co.,* 639, So. 2d 606, 608 (Fla. 1994)  In that case, the Supreme Court of Florida held:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*See also American Nat. Title and Escrow of Florida, Inc. v. Guarantee Title & Escrow of Florida*, 7489 So. 2d 1054, 1056 (Fla. 4th DCA 1999) ("The essence of *Levin* was its extension of absolute immunity to acts taken during the proceedings, not just statements made therein."); *Chapman v. Department of Health and Rehabilitative Servs.*, 517 So. 2d 104, 106 (Fla. 3d DCA 1987) ("We cannot hold that a litigant and a lawyer may be liable to their adversary for winning the case.").

The appeals court ruled in *Van Horn* ruled that the defendant's litigation privilege barred it from exercising personal jurisdiction over him, and ordered dismissal.  715 So.2d at 381.  The same is true here.

The identical result is reached if this issue is analyzed under California law. "The California litigation privilege applies to any publication or broadcast made in any judicial proceeding. Cal.Civ.Code §47(b). The privilege is absolute in nature and 'is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution.'" *Lopez-Reyes v. Menosian & Riele LLP,* 525 F. Supp. 2d 1158, 1161 (N.D. Cal. 2007), quoting *Silberg v. Anderson,* 50 Cal.3d 205, 215, 266 Cal.Rptr. 638, 786 P.2d 365 (1990).

10

To the extent the Complaint alleges it was tortious to send a letter to the California attorney general, the act of sending a complaint to a government agency is subject to the California litigation privilege. *Passman v. Torkan*, 34 Cal. App.4th 607, 616, 40 Cal. Rptr. 2d 291 (1995)(letter to district attorney accusing person of crimes absolutely privileged under Cal. Civil Code § 47(b)(3) as a publication in an official proceeding authorized by law). Thus, it too cannot be an underpinning for jurisdiction over Mr. Soter.

**2. Under a Minimum Contacts Analysis, There Still Is No Jurisdiction**

Even if it were necessary to reach a minimum contacts analysis, jurisdiction would still be lacking. In *Fleming & Weiss, P.C. v. First American Title Ins. Co.*, 580 So.2d 646, 647 (Fla. 3d DCA 1991), the defendant New York law firm had been retained by a New York company to render an opinion to a Florida bank, on the legality of an agreement under New York law. The bank sent the documents to the defendant law firm in New York, and the defendant sent its opinion to the Florida bank and sent one additional letter to the bank. *Id*. The bank's insurer filed suit against the law firm, alleging the opinion letter was incorrect. *Id*.

In *Fleming*, because of the communications into the state, the court found the facts sufficient to constitute a tortious act injuring a Florida entity, and that the Florida long-arm statute was satisfied. *Id*. However, it then addressed the issue of minimum contacts and found that Fleming & Weiss did not have "the requisite minimum contacts with Florida necessary to subject it to the jurisdiction of a Florida court." *Id*. Stating that the "constitutional touchstone of minimum contacts analysis is whether defendant's conduct and connection with forum are such that he should reasonably anticipate being haled into Florida court," *id*. (citation omitted), the court ruled that:

> Fleming was a New York law firm retained by a New York client to render a legal opinion pursuant to New York law. Fleming did not solicit business in

11

14014198.1

> Florida, maintained no agent or property in Florida, and stated in its opinion letter that, because Fleming was not licensed to practice law in any other state, the opinion was based solely on New York law. Given these facts, we cannot conclude that Fleming could reasonably anticipate being haled into a Florida court should damages result. . . .  A contrary finding would subject out-of-state attorneys who are not even licensed to practice law in this state to actions for negligence in Florida.

*Id*. at 647-648 (citation omitted).

As in *Fleming*, Mr. Soter never left his home state of California in connection with the plaintiffs.  Beyond *Fleming*, he did not issue an opinion to a Florida entity or send a single communication into Florida.  He had no business, property, agent, or any other contact with Florida, other than the fact that a California corporation chose him to represent it in suits brought <u>in California</u> by a Florida corporation and citizen.  He had no reason to anticipate being haled in court in Florida arising from his practice of law in the only state in which he holds a license.

### THE CSI AND BRIDGE MOTION TO DISMISS SHOULD BE GRANTED AND MR. SOTER SHOULD BE DISMISSED ON THE SAME GROUNDS

The grounds for dismissal asserted in the CSI and Bridge motion include that:

(1) the Complaint is an improper shotgun pleading;

(2) the RICO claims fails to state a claim because it is barred by the statute of limitations, the plaintiffs do not have RICO standing, and no claims are properly stated under 18 U.S.C. § 1962(a), (b), (c), and (d);

(3) the claims are barred because the acts alleged by those defendants are subject to the litigation privilege;

(4) the defamation and conspiracy to defame claims do not state a claim because they are barred by the statute of limitations and consist of the statement of opinions;

(5) the independent tort of conspiracy does not specify any peculiar power that Mr. Soter possessed that could support conspiracy as an independent tort under Florida law, and there is no independent tort of conspiracy under California law[11];

(6) the breach of contract alleged by plaintiffs has previously been adjudicated and is moot besides; and

(7) there is no claim for abuse of process because the defendants did not use process for an improper purpose.

Each of these grounds is equally applicable to Mr. Soter, and he therefore adopts and incorporates by reference the CSI and Bridge motion. In addition, an analysis of the allegations against Mr. Soter, to the extent they can even be discerned from the Complaint and the RICO case statement, as addressed in the jurisdictional argument, *supra*, and the litigation privilege argument made therein, also support Mr. Soter's dismissal under Rule 12(b)(6).

## THE COMPLAINT IS BARRED UNDER THE *ROOKER-FELDMAN* DOCTRINE

The Complaint asks this Court to review actions taken by the California state court in entering a default judgment against Plaintiff CDI. (¶ 54, and Counts VIII and IX.)  As such, it is soliciting a federal district court's violation of *Rooker-Feldman*.  As explained by the Eleventh Circuit:

> Congress has vested the review of final judgments by a state's highest court within the sole jurisdiction of the U.S. Supreme Court.  28 U.S.C. § 1257.  The *Rooker-Feldman* doctrine acknowledges the Supreme Court's exclusive jurisdiction in this respect by "prevent[ing] lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'"

---

[11] Mr. Soter submits that California law ought to govern here as to the substantive law of specific claims, when the only acts in which he has engaged with respect to plaintiffs all occurred in California.

13

*Bates v. Harvey,* 518 F.3d 1233, 1240 (11th Cir. 2008) (citing *Lance v. Dennis*, 546 U.S. 459, 460, 126 S. Ct. 1198, 1199 (2006) (per curiam) (quoting in turn *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005)). *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923) (holding that lower federal courts could not entertain a proceeding to review substantive constitutional questions decided in a state court judgment); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303 (1983) (holding that Article III of the Constitution mandates that a claim of right denied by a judicial order of a state court may only be reviewed by the Supreme Court when federal questions are raised).

Letterese and CDI are unquestionably "state-court losers." The Complaint has many accusations about activities in state courts related to Mr. Soter, his client, and related entities and attorneys. (*See* ¶¶ 53, 54, 67D, 141, 149, 182, 193 (as to prosecution of claims that plaintiffs continue to allege were frivolous or meritless, even though Mr. Soter and his client won, and even though they were only asserted as cross-complaints after plaintiffs brought claims against Mr. Soter's client, and Counts VIII and IX.) By asking this Court to address these issues, plaintiffs seek federal district court review of state court rulings and pending proceedings. This is barred by the *Rooker-Feldman* doctrine. The sole reason this case has been filed is that Peter Letterese was unable to convince any state court trial judge or appellate judge of the reality or justiciability of the conspiracies he sees all around him, and his refusal without exception to comply with discovery orders designed to require him to elucidate these preposterous claims, as addressed in the discussion of the prior litigation above.

Notably, "the *Rooker-Feldman* doctrine pertains to the subject-matter jurisdiction of the federal courts …" *Bates*, 518 F.3d at 1240. This Court therefore lacks subject matter

14

jurisdiction over those issues under Rule 12(b)(1), Fed. R. Civ. P., and this is another reason why the Court should dismiss the Complaint in its entirety.

## CONCLUSION

Mr. Soter has engaged in no conduct within or into the state of Florida and has no contacts with this state, minimum or otherwise. He was hired by a California religious publishing company to defend two actions that the instant plaintiffs brought in that state. This Court has no jurisdiction over Mr. Soter under Fla. St. § 48.193 and Mr. Soter also does not have minimum contacts with Florida. The Court should dismiss him from the Complaint for that reason, or in the alternative, for all the reasons set forth in the CSI and Bridge Motion, or under the *Rooker-Feldman* doctrine.

Respectfully submitted,

*s/. Helena K. Kobrin*
Helena K. Kobrin (0259713)
HKKOBRIN@aol.com
**MOXON & KOBRIN**
3055 Wilshire Blvd., Suite 900
Los Angeles, California 90010
Telephone: (213) 487-4468
Facsimile: (213) 487-5385

*s/. Thomas Meeks*
Thomas Meeks (314323)
e-mail: tmeeks@carltonfields.com
Matthew Davidson (713821)
e-mail: mdavidson@carltonfields.com
**CARLTON FIELDS, P.A.**
4000 International Place
100 S.E. Second Street
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Defendants Church of Scientology International and Bridge Publications*

**CERTIFICATE OF SERVICE**

I hereby certify that on 23, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                          *s/      Thomas Meeks*
                                                                Thomas Meeks

14014198.1

## SERVICE LIST
Case No. 08-60984/UNGARO-SIMONTON

Charles D. Franken, Esq.
Law offices of Charles D. Franken
8181 West Broward Blvd., Suite 360
Plantation, FL 33324
Tel: 954-476-7200
Fax: 954-424-0297
Email: frankencdf@aol.com
*Counsel for Peter Letterese and*
  *former counsel for CDI*
(via Notice of Electronic Filing)

Simeon Daniel Brier, Esq.
Edwards Angell Palmer & Dodge LLP
One North Clematis Street, Suite 400
West Palm Beach, FL 33401-5552
Email: sbrier@eaplaw.com
*Attorney for Simeon Brier and Edwards Angell*
*Palmer & Dodge LLP*
(via Notice of Electronic Filing)

John H. Genovese, Esq.
Genovese Joblove & Battista
100 S.E. Second St., 44th Floor
Miami, Florida 33131-2158
Tel: (305) 372-2462
Fax: (305) 349-2310
Email: jgenovese@gjb-law.com
*Counsel for CDI*
(via Notice of Electronic Filing)

14014198.1